IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SANDRA CK VAN ORNUM, <br><br>                Plaintiff, <br><br> v. <br><br> AMERICAN MEDICAL ASSOCIATION, *et al.*, <br><br>                Defendants. | **REPORT AND RECOMMENDATION** <br><br> Case No.  2:14-cv-921-RJS-EJF <br><br> District Judge Robert J. Shelby <br><br> Magistrate Judge Evelyn J. Furse |

Each of the Defendants filed Motions to Dismiss raising the same defenses and arguments under Federal Rule of Civil Procedure 12(b).  The Defendants urge the Court to dismiss *pro se* Plaintiff Sandra C. K. Van Ornum's claims.  Based on the Motions, the undersigned[1] RECOMMENDS the Court dismiss Ms. Van Ornum's claims against the Defendants without prejudice because the Court appears to lack personal jurisdiction over any of the Defendants.  The Complaint fails to state facts sufficient to allege either general or specific personal jurisdiction over any of the Defendants.[2]  The undersigned LIFTS the stay in this case upon the filing of this Report and Recommendation.  (*See* ECF No. 62.)

## BACKGROUND

On December 22, 2014, Ms. Van Ornum filed a *pro se* complaint against the American Medical Association (AMA), American Dental Association (ADA), American Hospital Association (AHA), Monsanto Company (Monsanto), Eli Lily and Company (Eli Lily), Pfizer

---

[1] On January 5, 2015, District Judge Robert J. Shelby referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B).  (ECF No. 3.)
[2] Pursuant to DUCiv R 7-1(f), the undersigned finds oral argument unnecessary and will make its recommendation based on the Complaint and written memoranda.

Inc. (Pfizer), Abbott Laboratories (Abbott), Allergan Inc. (Allergan), Hawaii Pacific Health

System, Kuakini Health System, and Dr. William Goodhue.  (ECF No. 1.)  On March 24, 2015,

Ms. Van Ornum filed an Amended Complaint prior to service of any Defendant.  (ECF No. 4.)

A few days later, Ms. Van Ornum filed a Motion for Leave to File Amended Complaint, (ECF

No. 5), which the undersigned granted, (ECF No. 6.  Following that order, Ms. Van Ornum filed

the Amendment to Amended Complaint (hereinafter, "Complaint").  (ECF No. 7.)  The

undersigned deems this filing the operative Complaint.

       Ms. Van Ornum alleges that the Defendants collectively violated the First and Fourteenth

Amendments, along with the following statutes:  42 U.S.C. § 2000bb-1 (Religious Freedom

Restoration Act (RFRA));  42 U.S.C. §§ 1983 & 1985(3) (Civil Rights Act);  18 U.S.C. § 1595(a)

(Trafficking Victims Protection Act (TVPA));  18 U.S.C. § 3663A (Mandatory Victims

Restitution Act (MVRA));  15 U.S.C. §§ 1, 2 & 3 (Sherman Antitrust Act);  15 U.S.C. § 15(a)

(Clayton Act);  42 U.S.C. § 2000d, *et seq.* (Title VI of the Civil Rights Act); and  Hawaii Rev.

Stat. § 28-94 (remedies for elder abuse).  (*See* Compl. 49–50, ECF No. 7.)  The Complaint opens

with seven pages of abbreviations that Ms. Van Ornum uses as shorthand for terms, parties, and

concepts central to her case.  (Compl. 2–8, ECF No. 7.)  Unfortunately, Ms. Van Ornum's

copious use of these abbreviations makes her Complaint extremely difficult to understand.[3]

From what the undersigned can glean from the Complaint, Ms. Van Ornum appears to allege that

the Defendants – who Ms. Van Ornum abbreviates as "Ds" and defines as "M&D:  licensed

hospitals, et seq. physicians, surgeons, nurses & dieticians, assistance [sic], persons who hold the

authority & title of HCP" – have collectively interfered with her practice of "primitive nutritional

---

[3] To assist the Court and the parties in fully comprehending her claims, the undersigned suggests
Ms. Van Ornum use complete words and sentences instead of acronyms to articulate her
allegations in the future.

wisdom," abbreviated by Ms. Van Ornum as "PNW," through "science, education, welfare & human service in all State & US Territory [sic]." (*See id.* at 4, 7, 13–14.)

Ms. Van Ornum further defines "M&D" as "'Medical & its Dentistry' trade & commerce," and "HCP" as

> 'Health care provider' a person who have [sic] the knowledge of the science of DW&FC, REH; *(1)* C&B from DW&FC, REH; *(2)* provide their patients & caregivers w/ the knowledge of the SCI; *(3)* establish orchards, vineyard, & herbs grown in EWE; *(4)* quality distillers at any person's affordable means; *(5)* establish sufficient number of HCP or caregiver for public "health", education, welfare & human service[.]

(*Id.* at 4–6.)  Ms. Van Ornum defines "DW&FC" as "'Distilled water & FC': *(1)* distilled water; *(2)* a carbohydrate food w/in the MEL; *(3)* a protein food w/in the MEL; *(4)* a fat foods [sic] w/in the MEL; & *(5)* 'Microorganisms' chemically changing: *(a)* (SP2) to 'monosaccharide'; *(b)* (SP3) to , amino acids; *(c)* (SP4) to fatty acids." (*Id.* at 4.)  "FC" signifies "Food combining a meal w/in the metabolic enzyme limitation," and "MEL" means "'Metabolic enzyme limitation', DW&FC 'microorganism' chemically changing CC into its SC, part 1 of 'metabolism.'" (*Id.* at 4, 6.)  Ms. Van Ornum defines "REH" as "'Recognized emergency herbs', herbs grown in an EWE," with "EWE" signifying "Earthworm environment." (*Id.* at 7, 4.)  "C&B" means "'Choice & benefits': 'metabolism', NF, 'physiologic', PNW, LE," (*id.* at 3), and "SCI" refers to

> 'Substantive content of information': the knowledge of *(1)* patient's 'health keys'; *(2)* RDX& RX history: *(3)* NF; *(4)* the actions of Hg, AM against NF & AR; *(5)* 7ET; *(6)* the actions of IS against 'immunologic' response; *(7)* the science & art of DW&FC, REH, its C&B; *(7)* 'metabolism'; *(8)* the differences between: *(a)* TS from SC&MN; *(b)* LSN from MN; *(b)* REH from 'pharmaco' or surgical TP; *(c)* calcium carbonate from fluoride carbonate TBG; *(d)* EWE from CA: *(e)* MN composition ratio of  human from animal; *(f)* raw from cook food; *(g)* HCP from Ds; *(h)* et seq., respectively;

(*Id.* at 7–8.)  Ms. Van Ornum uses "SP" to signify "Subparagraph." (*Id.* at 8.)  "CC" means "'Complex compound' of either Protein food, Carbohydrate food, Fat food." (*Id.* at 3.)  "SC"

means "'Simpler compound' *(1)* monosaccharide; *(2)* amino acids, *(3)* fatty acid." (*Id.* at 7.) The definitions continue on and on.

The majority of Ms. Van Ornum's allegations consist of chronological notations on Ms. Van Ornum's physical conditions and medical treatment, as well as those of her parents and her children. Starting in 1900 and continuing through 2013, Ms. Van Ornum recounts the alleged medical treatment (or mistreatment) she and her parents received in Hawaii, Guam, the Philippines, and Vietnam. (*See id.* at 18–48.) Starting in 1987, Ms. Van Ornum also recounts episodes of medical treatment in Provo, Utah and California. (*See id.* at 28–30.) In 2004, Ms. Van Ornum moved with her children to Provo, Utah, (*id.* at 36), but the vast majority of the alleged medical treatment, even after 2004, occurs in Hawaii, where Ms. Van Ornum was born and raised. (*See id.* at 18–48.) Ms. Van Ornum's parents have both died, (*see id.* at 27, 46), and Ms. Van Ornum attempts to bring claims on their behalf. (*See id.* at 49–50.) Though Ms. Van Ornum does connect some factual statements to specific Defendants at times,[4] Ms. Van Ornum directs the bulk of her allegations and claims for relief at the Defendants collectively. (*See, e.g.*, *id.* at 30, 38–42, 49–51.)

Essentially, Ms. Van Ornum alleges that the Defendants, as nationwide organizations engaged in commerce and state-based healthcare providers, have acted "under color of authority and color of the law" in interfering with Ms. Van Ornum's practice of primitive nutritional wisdom, part of her and her family's religion. (*See id.* at 13–14.) Furthermore, Ms. Van Ornum seems to allege that the Defendants have orchestrated her family's poor health outcomes and

---

[4] *See, e.g.*, Compl. 18 ("5. Ds #3 D/p: w/ ETYK;…"). Ms. Van Ornum uses these acronyms to refer to Defendant #3, the AHA, in a "doctor patient relationship, direct, indirect & consequential" with Ethel T. Y. Kurihara (ETYK), Ms. Van Ornum's mother. (*See* Compl. 4, 9, ECF No. 7.)

committed various crimes as a result, including kidnapping, elder and child abuse, exploitation, murder, human trafficking, and abuse of the law and legal process.  (*See id.*)

## DISCUSSION

Each Defendant moved to dismiss Ms. Van Ornum's Complaint.  The Defendants argue variations of five defenses:  (1) that Ms. Van Ornum fails to meet Rule 8(a)'s pleading requirements; (2) that the Court should dismiss Ms. Van Ornum's claims for lack of personal jurisdiction; (3) that Ms. Van Ornum failed to state any claim upon which the Court can grant relief; (4) that Ms. Van Ornum did not properly serve process; and (5) that venue is improper in Utah.  *See* Fed. R. Civ. P. 12(b)(2), (6), (5), & (3).

Defendants Eli Lilly and Pfizer filed the first Motion to Dismiss on April 30, 2015.  (ECF No. 9.)  On May 20, 2015, Ms. Van Ornum filed a "Motion with Particularity" that responded to the points in Eli Lilly and Pfizer's Motion.  (ECF No. 16.)  On June 8, 2015, Eli Lilly and Pfizer replied with a Notice to Submit and opposed all other relief Ms. Van Ornum sought in her Motion with Particularity.  (ECF No. 28.)  Eli Lilly and Pfizer also opposed Ms. Van Ornum's Motion directly.  (ECF No. 27.)  The undersigned regards the Motion with Particularity not as a motion but rather as a timely filed Opposition and finds Eli Lilly and Pfizer's Motion became fully briefed on June 8, 2015.  (*See* ECF No. 28.)

On May 15, 2015, Defendant Hawaii Pacific Health System ("Hawaii Pacific") filed the next Motion to Dismiss, arguing only that the Court should dismiss Ms. Van Ornum's claims for insufficient service and lack of personal jurisdiction.  (ECF No. 14.)  Ms. Van Ornum failed to respond to this Motion within the twenty-eight days provided by the local rules.  *See* DUCiv R 7-1(b)(3)(A) ("A memorandum opposing motions filed pursuant to Fed. R. Civ. P. 12(b) . . . must be filed within twenty-eight (28) days after service of the motion or within such time as allowed

by the court.")  Therefore, the undersigned finds that Ms. Van Ornum waived her opportunity to
contest Hawaii Pacific's arguments and RECOMMENDS granting Hawaii Pacific's Motion to
Dismiss (ECF No. 14) without prejudice.  *See* DUCiv R 7-1(d).

      The AMA, ADA, and AHA jointly moved to dismiss Ms. Van Ornum's claims on May
29, 2015.  (ECF No. 23.)  During June 2015, Allergan (ECF No. 29), Kuakini Health System
(ECF No. 36), Abbott (ECF No. 45), and Monsanto (ECF No. 46) also filed Motions to Dismiss.
Each Motion argued, among other things, for dismissal of the claims under Rule 12(b)(2)
because Ms. Van Ornum failed to plead sufficient facts to support personal jurisdiction over the
respective Defendants.  (*See* Eli Lily & Pfizer Mot. 6–7, ECF No. 9; AMA, ADA, & AHA Mot.
7–8, ECF No. 23; Allergan Mot. 5, ECF No. 29; Kuakini Health System Mot. 3–4, ECF No. 36;
Abbott Mot. 6–7, ECF No. 45; Monsanto Mot. 7–8, ECF No. 46.)  Each of the Defendants,
except for the AMA, ADA, and AHA, also argued that Utah is not the proper venue for this
action because the majority of the alleged events occurred in Hawaii.  (*See* Eli Lily & Pfizer
Mot. 7, ECF No. 9; Allergan Mot. 5, ECF No. 29; Kuakini Health System Mot. 4, ECF No. 36;
Abbott Mot. 7, ECF No. 45; Monsanto Mot. 8, ECF No. 46.)

      On July 1, 2015, Ms. Van Ornum responded to all of these Motions in one Opposition.
(Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Opp'n"), ECF No. 51.)  Ms. Van Ornum alleges that the
Defendants have conspired to restrain Ms. Van Ornum's free exercise of primitive nutritional
wisdom, and she attempts to supplement her Complaint with facts in her Opposition to
demonstrate that the Court has jurisdiction over the Defendants and that venue properly lies in
Utah.  (*See* Opp'n 3–18, 24–26, ECF No. 51.)  The AMA, ADA, AHA, Allergan, Kuakini Health
System, Abbott, Eli Lily, and Pfizer timely replied reiterating the same dismissal arguments.

(*See* AMA, ADA, & AHA's Reply 3–4, ECF No. 52; Allergan's Reply 3, ECF No. 56; Kuakini Health System's Reply 4–5, ECF No. 57; Eli Lily, Abbott, & Pfizer's Reply 4–5, ECF No. 61.)

On July 17, 2015, Ms. Van Ornum filed a surreply, entitled "Memorandum in Opposition to Defendants [sic] Motion to be Dissmiss [sic]."  (ECF No. 59.)  However, the Rules do not provide for surreplies, absent the Court's permission.  DUCiv R 7-1(b)(2)(A).  Ms. Van Ornum failed to seek leave of the court to file a surreply; therefore, the undersigned disregards this filing.

On July 20, 2015, the undersigned entered a stay to allow the undersigned to address the outstanding Motions.  (ECF No. 62.)  After the stay, Ms. Van Ornum served the final Defendant, Dr. William Goodhue.  (ECF No. 65.)  On August 20, 2015, Dr. Goodhue filed a Motion to Dismiss on the same bases as the other Defendants.  (ECF No. 66.)  Ms. Van Ornum has not had an opportunity to oppose that Motion, but the ruling on the fully briefed Motions to Dismiss applies with equal force to Dr. Goodhue's Motion.  Ms. Van Ornum will have the opportunity to raise any novel issues regarding Dr. Goodhue in any Objection she may file to this Report and Recommendation.

**I.    Personal Jurisdiction**

"Because a court without jurisdiction over the parties cannot render a valid judgment, [the Court] must address Defendants' personal jurisdiction argument before reaching the merits of the case."  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998).

Ms. Van Ornum proceeds *pro se*; thus, the Court must liberally construe her pleadings. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1073 & n.7 (10th Cir. 2008). However, the Court cannot act as an advocate for a *pro se* litigant, who must comply with the

fundamental requirements of the Federal Rules of Civil Procedure. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

As the Plaintiff, Ms. Van Ornum "bears the burden of establishing personal jurisdiction over the defendant[s]." *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996) (quotation omitted). To meet this burden on a motion to dismiss where the Court receives only affidavits and written materials, Ms. Van Ornum need only make a prima facie showing of personal jurisdiction. *Id.* (citation omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant[s]." *OMI Holdings*, 149 F.3d at 1091. The undersigned takes as true all "plausible, non-conclusory, and non-speculative" facts and resolves factual disputes in favor of Ms. Van Ornum. *Dudnikov*, 514 F.3d at 1070 (citation omitted).

A federal court considering whether it has personal jurisdiction over a defendant must determine "'(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process.'" *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). As discussed above, Ms. Van Ornum pleads causes of action under the First and Fourteenth Amendments of the United States Constitution as well as a number of federal laws – including RFRA, the Civil Rights Acts, TVPA, MVPA – and a claim under Hawaii Rev. Stat. § 28-94. None of these statutes confers nationwide service of process in this context. *See Trujillo*, 465 F.3d at 1217 (noting that § 1983 does not provide for nationwide service of process); 42 U.S.C. §§ 2000bb to 2000bb-4; 42 U.S.C. §§ 2000d to 2000d-4a; 18 U.S.C. §§ 1589–1594; 18 U.S.C. § 3663A;

Hawaii Rev. Stat. § 28-94; *Marsh v. Kitchen*, 480 F.2d 1270, 1271–73 (2d Cir. 1973) (noting no nationwide service where not explicitly set forth, including *Bivens*-type actions).

However, Ms. Van Ornum also seeks relief from all of the Defendants under the Sherman and Clayton Acts, for which 15 U.S.C. § 22 confers nationwide service of process and thus potentially personal jurisdiction upon federal district courts to adjudicate antitrust claims. (Compl. 50–51, ECF No. 7; 15 U.S.C. § 22.)  Therefore, the undersigned will first analyze personal jurisdiction arising from Ms. Van Ornum's antitrust claims.

## A.  The Sherman and Clayton Acts

Ms. Van Ornum seeks treble damages under the antitrust laws for injuries she sustained in her "business" and "property."  (*See* Compl. 49–50, ECF No. 7.)  15 U.S.C. § 15(a) provides:

> [a]ny person . . . injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages . . . sustained, and the cost of suit, including a reasonable attorney's fee.

To facilitate enforcement of the federal antitrust laws, 15 U.S.C. § 22 authorizes expansive venue and service of process on a corporate defendant:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

Thus, the Clayton Act provides for nationwide service of process against defendant corporations in private civil antitrust suits.  *See, e.g.*, *Phone Directories Co. v. Contel Corp.*, 786 F. Supp. 930, 942 (D. Utah 1992) ("[S]ervice of process is authorized by the nationwide service of process provision at § 12 of the Clayton Act."); *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 293 (3d Cir. 2004) ("It is undisputed that the second clause authorizes nationwide,

indeed worldwide, service of process on a defendant corporation in federal antitrust litigation.");
*Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 422 (2d Cir. 2005); *GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000); *Go–Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1413 (9th Cir. 1989).

However, 15 U.S.C. § 22 only applies to corporations, not individual defendants or "other entities that simply share common attributes with corporations," such as unincorporated or voluntary associations.  *World Skating Fed'n v. Int'l Skating Union*, 357 F. Supp. 2d 661, 664 (S.D.N.Y. 2005); *see California Clippers, Inc. v. U.S. Soccer Football Ass'n*, 314 F. Supp. 1057, 1061, 1065 (N.D. Cal. 1970) (interpreting earlier version of statute noting that the Clayton Act's service of process provision does not apply to unincorporated associations); *McManus v. Tato*, 184 F. Supp. 958, 959 (S.D.N.Y. 1959) (interpreting earlier version of statute finding the Clayton Act's "specificity necessarily excludes individuals and voluntary associations from those amenable to extraterritorial service").  Therefore, the Court cannot obtain jurisdiction over Dr. Goodhue, an individual, through the antitrust nationwide service provision.

Of the remaining Defendants, Monsanto, Eli Lilly, Pfizer, Allergan, Abbott, and Kuakini Health System are domestic corporations amenable to service of process under this provision. (*See* Monsanto Mot. 2, ECF No. 46; Eli Lilly & Pfizer Mot. 7, ECF No. 9; Allergan Mot. 5, ECF No. 29; Abbott Mot. 6, ECF No. 45; Kuakini Health System Mot. 4, ECF No. 36.)  However, the corporate status of the AMA, ADA, and AHA do not appear on the face of the pleadings or written memoranda.  In her Complaint, Ms. Van Ornum describes the AMA, ADA, and AHA as representing all licensed providers in their respective professions (medicine, dentistry, and hospitals and healthcare networks) and alleges that each has its headquarters in Chicago, IL. (*See* Compl. 9, ECF No. 7.)  In her Opposition, Ms. Van Ornum further characterizes the AMA,

ADA, and AHA as lobbying organizations and membership associations.  (*See* Opp'n 9–11, ECF No. 51.)  Meanwhile, the AMA, ADA, and AHA identify themselves as professional membership organizations in their Motion to Dismiss and state that neither the AMA, ADA, nor AHA is incorporated in Utah or has its principle places of business in Utah.  (*See* AMA, ADA, & AHA Mot. 5, 8, ECF No. 23.)  In making all inferences in favor of the Plaintiff, Ms. Van Ornum, the undersigned will assume the AMA, ADA, and AHA are corporations and will continue the jurisdictional analysis under the nationwide service of process provision as to them as well as Monsanto, Eli Lilly, Pfizer, Allergan, Abbott, and Kuakini Health System (the "corporate Defendants").

The federal antitrust laws allow a plaintiff to serve process in any district a defendant corporation inhabits or may be found.  *See* 15 U.S.C. § 22.  Currently, a circuit split exists regarding how to interpret section 22.  *See* 1B Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 271d (4th ed. 2013) (discussing circuit split); Robert L. Haig, Bus. & Commercial Litig. in Fed. Cts. § 67:57 (3d ed. 2011) (same).  The D.C., Second, and Seventh Circuits have taken the position that because the venue clause in section 22 comes before the service of process clause, a court must read the nationwide service of process clause as limited to those actions having proper venue as defined by section 22.  *GTE New Media Servs.*, 199 F.3d at 1351; *Daniel*, 428 F.3d at 423–24; *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 730 (7th Cir. 2013).  The Third and Ninth Circuits hold that venue and jurisdiction represent two separate inquiries that Congress did not intend to merge and therefore read the nationwide service of process clause as a stand-alone proposition.  *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 294–97 (3d Cir. 2004); *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1178–80 (9th Cir. 2004).  The Tenth Circuit has not weighed in on this debate.

Rather than attempt to determine which interpretation of section 22 the Tenth Circuit would adopt, the undersigned will proceed to the jurisdictional analysis as if Ms. Van Ornum had pled venue sufficiently, making the remainder of the analysis the same under either interpretation.

Even assuming nationwide service of process over the corporate Defendants, the Court must determine whether suing the Defendants in Utah "accords with the minimal constitutional requirements of due process" under the Fifth Amendment. *Klein v. Cornelius*, 786 F.3d 1310, 1318 (10th Cir. 2015). Where a plaintiff brings a federal question under a statute providing nationwide service of process,

> "the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant." To defeat federal jurisdiction, a *defendant* must establish that the "chosen forum will make litigation ... gravely difficult and inconvenient" or, in other words, the forum district burdens the defendant with "constitutionally significant inconvenience." We look to non-exclusive factors in considering whether defendants have met this burden, such as (1) the extent of contact with the forum state, (2) the inconvenience of having to litigate in a foreign jurisdiction, (3) judicial economy, (4) the probable situs of the discovery proceedings, and (5) the nature of the defendant's activities and its impact beyond his state's borders.

*Id.* (quoting *Peay*, 205 F.3d at 1212) (emphasis added). In this case, the corporate Defendants have simply asserted a lack of jurisdiction without addressing these factors. In fact, no Defendant even mentioned the issue of jurisdiction under the antitrust laws. The Defendants may have neglected this analysis because of their assessment of the merits of the antitrust claims and/or the case generally. (*See* Eli Lily & Pfizer Mot. 4–5, ECF No. 9; AMA, ADA, & AHA Mot. 4–6, ECF No. 23; Allergan Mot. 3, ECF No. 29; Kuakini Health System Mot. 3, ECF No. 36; Abbott Mot. 5–6, ECF No. 45; Monsanto Mot. 4, ECF No. 46.) However, the Court must address jurisdiction before reaching the merits of a claim even in cases where the Court could more easily resolve the merits question. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

Based on the undersigned's limited understanding of Ms. Van Ornum's claims and the memoranda submitted, litigating this case in Utah would appear to burden the corporate Defendants with "constitutionally significant inconvenience."  Neither the Complaint nor the Opposition alleges meaningful contact with Utah by the corporate Defendants.  Discovery will likely occur primarily in Hawaii or perhaps in districts where the corporate Defendants have their headquarters, none of which includes Utah.  Because the corporate Defendants do not have their headquarters or base of operations in Utah according to the Complaint, they will have to find counsel from Utah to litigate on their behalves, having had no alleged prior dealings in the state. If the corporate Defendants wish to participate or attend the judicial proceedings, they will need to send people from Illinois, Washington, D.C., Missouri, Indiana, New York, Texas, New Jersey, and Hawaii.  (Opp'n at 9–16, ECF No. 51.)  As to judicial economy, Ms. Van Ornum attempts to tie all of these Defendants and claims together and bring them in one district. However, the unification of all of these Defendants and claims seems to create further problems for the Court in understanding who did what to whom when and with what consequences.  Thus, the unification appears to diminish judicial economy.  With the exception of Kuakini Health System, all of the other corporate Defendants engage in activities with impacts throughout the United States.  Nonetheless, without more understanding of how each Defendant connects to Ms. Van Ornum and Utah, the undersigned doubts the existence of personal jurisdiction.  Thus, the undersigned finds that exercising antitrust jurisdiction on this record likely does not comport with the Fifth Amendment Due Process Clause.

### B.  Utah's Long Arm Statute

Additionally, the Court could have jurisdiction under the other federal statutes pled that do not, by themselves, confer nationwide service of process, pursuant to Federal Rule of Civil

Procedure 4(k)(1)(A) and Utah's long-arm statute.  *See Dudnikov*, 514 F.3d at 1070 (noting

where federal statutes at issue do not provide nationwide service of process, the court considers

the law of the forum state).  Because Utah's long-arm statute confers the maximum jurisdiction

allowed by due process of law, Utah Code Ann. § 78B-3-201(3), "the first, statutory, inquiry

effectively collapses into the second, constitutional, analysis." *Dudnikov*, 514 F.3d at 1070.

Thus, whether the Court has personal jurisdiction over any of the Defendants turns on whether

the exercise of jurisdiction over each Defendant comports with the Fourteenth Amendment's

Due Process Clause.  *See Klein*, 786 F.3d at 1318 (distinguishing 14th Amendment analysis from

5th Amendment analysis).

     For jurisdiction over a nonresident defendant to comport with due process, "minimum

contacts between the defendant and the forum State" must exist.  *Trujillo*, 465 F.3d at 1217–18

(quoting *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir.

2000)).  "Because a state's sovereignty is territorial in nature, a defendant's contacts with the

forum state must be sufficient such that, notwithstanding its lack of physical presence in the

state, the state's exercise of sovereignty over it can be described as fair and just." *Dudnikov*, 514

F.3d at 1070.  A plaintiff can show the case meets the Fourteenth Amendment minimum contacts

standard in either of two ways:

> First, a court may exercise *specific* jurisdiction if a defendant has purposefully
> directed his activities at residents of the forum . . . *and* the litigation results from
> alleged injuries that arise out of or relate to those activities.  Second, a court
> may exercise *general* jurisdiction where the defendant's contacts, while not
> rising to the level of the traditional notion of presence in the forum state, are
> nonetheless continuous and systematic.

*Kuenzle*, 102 F.3d at 455 (emphasis in original) (citations and quotations omitted).  If the Court

finds it has either specific or general jurisdiction over a Defendant, the case against that

Defendant satisfies the "minimum contacts" standard.  *See OMI Holdings*, 149 F.3d at 1091.  Yet

even where a court finds that the defendant meets the minimum contacts standard, the court must still inquire as to whether the exercise of personal jurisdiction over the defendant comports with "'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987)).

### 1. Specific Jurisdiction

A court may assert specific jurisdiction over a defendant where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotations omitted). In deciding whether a defendant has minimum contacts sufficient to create specific jurisdiction, courts apply a two-part test. "[F]irst . . . the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second . . . the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov*, 514 F.3d at 1071 (citing *Burger King*, 471 U.S. at 472). In analyzing a defendant's "purposefully directed" activities, the Court looks for allegations showing (a) an intentional action by the defendant, (b) expressly aimed at Utah, (c) with the defendant's knowledge that the brunt of the injury would be felt in Utah. *Id.* at 1072; *see accord Walden v. Fiore*, 571 U.S. ___, 134 S. Ct. 1115, 1122 (2014). In addition, a plaintiff's allegations must demonstrate that the alleged injuries "arise out of" the defendant's forum-related activities by showing a causal link between the defendant's contacts and the injuries at issue. *Dudnikov*, 514 F.3d at 1078–79.

Here, Ms. Van Ornum has not alleged any facts in the Complaint or her Opposition suggesting that any one of the Defendants has expressly aimed actions at Utah or that such intentional actions caused Ms. Van Ornum's alleged injuries.

As to the associations, Ms. Van Ornum alleges that the AMA "represent[s] all license doctor [sic] of medicine & surgeon (MD), osteopathic doctor (DO), optometrist, nurses, dietitian, et seq." (Compl. 9, ECF No. 7.)  In her Opposition, Ms. Van Ornum adds that the AMA represents members licensed in Utah "to delivery [sic] health and human services," publishes a weekly journal, and maintains a website with contact information accessible from Utah.  (Opp'n 9, 25, ECF No. 51.)  Next, Ms. Van Ornum alleges that the ADA "represent[s] all doctor [sic] of dental surgeons (DDS), et seq.," and that during 2006, in either Hawaii or Utah, the ADA "removes most of the amalgam & substantive amount of enamel, dentin, pulp, physically restraining SCK [Ms. Van Ornum] to dentistry reconstruction."  (Compl. 9, 37, ECF No. 7.)  Ms. Van Ornum elaborates in her Opposition that the ADA maintains a website with contact information accessible from Utah.  (Opp'n 25, ECF No. 51.)  Finally, Ms. Van Ornum alleges that the AHA "represents defendants' hospitals, health care networks."  (Compl. 9, ECF No. 7.)  In her Opposition, Ms. Van Ornum states that the AHA "communicates with state hospital associations" and that the AHA maintains a website with contact information accessible from Utah.  (Opp'n 11, 25, ECF No. 51.)

Ms. Van Ornum also claims, "AMA, ADA, AHA members or partnership with Intermountain Health Care Inc, have events to demonstrate in section H, among the other times, in consequential of the accident effecting the State of Utah."  (Opp'n 19, ECF No. 51; *see* Compl. 28–29, 36–37, ECF No. 7.)  Ms. Van Ornum's Opposition claims the "accident" occurred in Utah.  (Opp'n 18 ("The accident effected the State of Utah in 1953;"), ECF No. 51.)  The Complaint never describes the alleged accident, and instead the Opposition refers the Court back to the Complaint paragraphs describing medical events allegedly occurring in Utah.  (Opp'n

19, ECF No. 51.)  Neither the Complaint nor the Opposition says who or what the accident involved or how Ms. Van Ornum's claims arise from any actions in Utah by the Defendants.

These allegations do not provide grounds for finding that the AMA, ADA, or AHA purposefully directed activities toward Utah related to the alleged injuries in this case.  Nor does the AMA, ADA, and AHA's maintenance of their respective websites with contact information accessible in Utah constitute action expressly aimed at Utah.  While the existence of a website can confer jurisdiction over a defendant, "[c]ourts analyze the level and type of activity conducted on the website in question to determine jurisdiction."  *iAccess, Inc. v. WEBcard Techs., Inc.*, 182 F. Supp. 2d 1183, 1186 (D. Utah 2002).  "A passive website that does no more than make information available cannot by itself form the basis of jurisdiction."  *Id.* at 1187.  Rather, "[c]ourts require 'something more' than a website's existence that indicates the defendant purposefully directed its activities in a substantial way toward the forum state," such as entering into contracts with residents in the forum.  *Id.*; *see Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1299 (10th Cir. 1999) (finding a passive website does not demonstrate purposeful availment).  Here, Ms. Van Ornum simply states that people can access the websites in Utah and that the websites contain contact information for the AMA, ADA, and AHA.  Without any further evidence as to the activities conducted through the websites, let alone any allegations that connect the AMA, ADA, or AHA's internet activity to the claims in this case, the allegations fail to establish specific jurisdiction over the AMA, ADA, or AHA.  Ms. Van Ornum has not alleged the websites provide anything more than passive information.  *Soma*, 196 F.3d at 1299.

While Ms. Van Ornum does not specifically connect allegations in the Complaint to Monsanto, Eli Lilly, Pfizer, Allergan, or Abbott, Ms. Van Ornum does make general

observations in her Opposition about those companies' national presence and specific businesses. (*See, e.g.*, Opp'n 12 (alleging "[Monsanto] products are used in hospitals, et seq., the only produce available in food stores, including health food stores, farms, et seq;"), 13 (alleging "[Eli Lilly] products are used in hospitals, et seq., physicians offices or prescribe [sic] and provided by the members of the American Pharmacist Association;"), 14 (alleging Pfizer sells numerous medications as "one of the world's largest pharmaceutical companies"), 15 (alleging Allergan, another pharmaceutical company, "promote [sic] their product on Cable by fraud and provide AAA members business;"), ECF No. 7.)  These broad allegations, lacking a direct tie to Utah, fail to show that Monsanto, Eli Lilly, Pfizer, Allergan, or Abbott purposefully directed any activities relevant to this case toward Utah.

Ms. Van Ornum further alleges that Kuakini Health System (Kuakini) is a "health care provider" in Honolulu, Hawaii.  (Compl. 9, ECF No. 7.)  At various points in her Complaint, Ms. Van Ornum alleges Kuakini gave her and her family medical treatment (or mistreatment), though all of Kuakini's actions appear to have occurred in Hawaii.  For example, Ms. Van Ornum recounts medical treatment by Kuakini in 1984 in Oahu, Hawaii, referring to Kuakini as "D10," herself as "SCK," and her parents as "RYK" and "ETYK," (*see* Compl. 8, 7, 4 (defining acronyms), ECF No. 7):

> *(24)* RX: emergency medical services transport RYK to D10 & follow D10-ER-RX instructions: *(25)* Mar 31st, Ds D/p w/ ETYK & RYK; RDX: OA; Diagnostic tests; *(26)* D10-RX: blood transfusion, cytosar 20mg; *(27)* Apr 1st D10-RX: cytosar 20mg discontinue; *(28)* D10-RX: Decadron at high doses IV, IP; 010-RDX: code-2 status; *(29)* Apr2nd Ds JSS cause RYK's intra cerebral hemorrhages; acute mycloblastic, leukemia; severe thrombocytopenia death; *(30)* DPEP denied for RYK; ETYK, her parents, SCK & posterity's "serious harm" continues;

(Compl. 25–27, ECF No. 7.)  In 2010, Ms. Van Ornum recounts further treatment by Kuakini in Oahu, Hawaii:

> *(17)* May15th ETYK's "anxiety" become SCK's concern; *(a)* SCK, ETYK &
> siblings go to D10 w/ SCK's DGPOA to obtain the knowledge of ETYK's SCI:
> *(b)* D10 refuse; *(c)* After D10 learns that ETYK & SCK had stopped OO-M&D &
> is complying w/ "metabolism" & restoring NF; *(d)* D10-RDX: low LSN sodium;
> *(e)* RX: create a hostile environment against SCK's w/ held consent to RX: *(f)*
> D10-RX: from 2:08 am to 6:45 am, HIPAA-IV-RX; *(g)* refused to stop; *(h)*
> disclose ETYK's "healthy key" after HIPAA-IV-RX; *(18)* 2012 D10 release
> medical records w/o the knowledge of ETYK's "health keys", justification of
> their conduct . . .
>
> . . . .
>
> . . . *(24)* May 19th D10 report to APS & diagnose "DW&FC, REH, C&B" is a
> neglect treatment/maltreatment;

(Compl. 42–44.)[5] Ms. Van Ornum also alleges Kuakini caused her paternal grandfather's stroke

in 1944 in Hawaii. (Compl. 18, ECF No. 7.) These allegations do not provide any basis for

finding Kuakini purposefully directed activity toward Utah, or even that any of Kuakini's alleged

treatment occurred in Utah.

Ms. Van Ornum alleges that Dr. Goodhue, D #11 or D #12, is "a citizen & resident of

Honolulu Hawaii, defendants' medical examiner, contracted with the City and County of

Honolulu, Hawaii." (Compl. 1, 10, ECF No. 7.) In her Opposition, Ms. Van Ornum states

further allegations as to Dr. Goodhue that occurred in Hawaii:

> *(1)* in 2011 [Dr. Goodhue] was a contracted deputy chief medical examiner for the
> Department of Medical Examiner, *(A)* acting under authority and under color of
> the HRS §841-3, §842-14 laws, until 2015, *(B)* fully aware that her 2010 medical
> records is where to find the cause of Nov. 6th, 2010th [sic] fall and 2011th [sic]
> death; *(C)* fully aware of the constitution, nature and usage of HPH, KHS,
> paramedics (Nov. 6th, 2010, Jan. 6th, 2011) HIPAA treatments or procedures, from
> May 10, 2010 (Section H, paragraphs 74 and 75, subparagraph (A)(16);

(Opp'n 17, ECF No. 51.) The allegations as to Dr. Goodhue's position as a medical examiner in

Hawaii and action under Hawaiian law fail to show that Dr. Goodhue purposefully directed any

activities toward Utah.

---

[5] The undersigned notes that these excerpts typify Ms. Van Ornum's allegations, both against
individual Defendants, such as Kuakini, as well as against the Defendants generally.

Finally, Ms. Van Ornum notes that Monsanto, Eli Lilly, Pfizer, Allergan, Abbott, Kuakini

Health System, and Dr. Goodhue each maintain their respective websites with contact

information accessible from Utah.  (Opp'n 25, ECF No. 51.)  However, as discussed above, Ms.

Van Ornum has not pled any facts showing that the websites provide anything more than passive

information.  *Soma*, 196 F.3d at 1299.

Overall, Ms. Van Ornum's Complaint contains vague and often confusing or

unintelligible allegations of actions and medical statuses.  (*See, e.g.*, Compl. 18–49, ECF No. 7.)

Most of the actions appear to have occurred in Hawaii, not Utah, over the course of many

decades, and Ms. Van Ornum does not tie the factual allegations to any actions by the

Defendants directed at Utah.  Rather, Ms. Van Ornum speaks of the disparate corporate and

individual Defendants as a whole, using the abbreviation "Ds" to make general allegations of

conduct as to all of the Defendants at once.  (*See, e.g.*, Compl. 13–14, ECF No. 7.)  Ms. Van

Ornum recounts some healthcare-related events that occurred in Utah in her Complaint at pages

28 to 29 and 36 to 37, in paragraphs 41 to 43, 47, 66, and 69.  These allegations do not clearly

relate to any actions by the Defendants purposefully directed at Utah.

Again, an example of Ms. Van Ornum's allegations illustrates the problem the Court

faces in understanding Ms. Van Ornum's claims:

> 41.  PROVO, UTAH – *(a)* July, 1987 "nurses" & PCP D/p w/ BC; *(1)* "nurses"
> RX: immunization, IS; *(2)* PCP-RDX: fever, ear infection; *(3)* RX: AM; *(4)* SCK:
> MM also;
>
> 42.  1988 *(P42-45)*, Provo, UTAH, *(a)* "nurses" & PCP D/p w/ BC; *(1)* "nurses"
> RX: immunization, IS; *(2)* PCP-RDX: fever, ear infection; *(3)* SCK: MM also; *(4)*
> continues regularly according to immunization schedule;
>
> 43.  Provo, UTAH, Ds D/p w/ SCK-1975-1D, AD; *(a)* PCP-RDX: 7ET at stage 4
> between neck and chest; *(1)* RX: AM cream; RDX: harmful NF spread up &
> down from its origin; *(2)* SCK stops AM application; *(3)* apply a REH plaster on

the infected site; PN eliminate harmful NF out through the skin; repair damaged
skin membrane:

. . . .

47.  PROVO, UTAH *(a)* Ds D/p w/ BC:  *(1)* "nurses"-RX: mandatory
immunization-IS; *(2)* SCK: MM also; *(3)* PCP-RDX: fever/ear infection; *(4)* PCP-
RX: AM; *(5)* SCK: MM also; *(6)* SCK: BC stop breathing while sleeping, turn
blue; *(7)* SCK: called 911, SCK is instructed to press BC tummy slightly; BC
begins breathing again;

48.  Paramedic transport SCK/BC to UV; *(a)* UV D/p w/ BC *(SP(1)-(3)*:  RX:
anti-epilepsy pharmaco; *(1)* SCK withhold consent; *(2)* UV-ER report SCK of
child abuse; neighbor stops investigation; *(3)* SCK:  MM; *(4)* "Nurses"-RX:
immunization-IS *(SP(4)-(15))*; *(5)* PCP-RDX:  fever ear infection; *(6)* RX:  AM;
*(7)* SCK:  MM also; *(8)* RDX: seizure: *(9)* SCK:  MM; *(10)* "Nurses"-RX:
immunization-IS; *(11)* D1-RDX:  fever-ear infection; *(13)* SCK:  stop AM: *(13)*
SCK:  REH & MM; *(14)* SCK:  provide SC & PN remove infection; *(15)* After
"nurses" learn of BC immunization history, stop immunization; *(16)* SCK:
immunization stops, ear infection stops; *(17)* AM cream cost $30+, herbal root is
less than .89 cents; herbal syrup less than $10; *(18)* Today the price of herbs have
double in price & "pharmaco" is a free;

(Compl. 28–29, ECF No. 7.)  Even when the Court "translates" just one of the above paragraphs,

the allegations prove no more comprehensible:

41. PROVO, UTAH – *(a)* July, 1987 "nurses"[6] & {"primary care "physician"}
{Doctor patient relationship, direct, indirect & consequential} w/ {"Biological
child"}; *(1)* "nurses" {immunization, ["Immuno-suppression" "suppression of
immunologic"[7]], [Anti-microorganism (ex. Chemotherapy, Penicillin, Antibiotic,
TS, immunization, herbicide, pesticide, et seq.):  as to the science & art of
disrupting or destroying ("Normal flora", a population of "microorganisms"
(microbe, germs) that normally grows on & within our body.  We live in balance
with these <normal flora>.  <Normal flora> is beneficial, because it crowds out &
prevent [sic] the growth of other harmful varieties or "organism".
"Microorganism" that are normally harmless becoming "pathogenic" when the
<normal flora> is disrupted or destroyed.  "Organism" means anything having
"life".  Mircro [sic] means small life, cells.  "Microorganism" manufacture micro-

---

[6]  Ms. Van Ornum defines "Nurse" as "a graduate person who has the knowledge of SCI, are
supervised by a 'physician', concerning public 'health', welfare, education[.]"  (Compl. 6, ECF
No. 7.)
[7]  Ms. Van Ornum defines "Immunologic" as "the response of white blood cells destroying &
engulfing 'pathogen'," with "pathogen" meaning "a 'microorganism' normally harmless
becoming 'pathogenic'" and "pathogenic" referring to "a parasite[.]"  (Compl. 5, 7, ECF No. 7.)

nutrients w/ the <"Atomic energy", the source of potential energy carrying the electrical charge, "vitality"> called SC&MN[8])], [Laboratory synthesized nutrition (ex. mineral, vitamin, hormone, etc) w/o the (atomic energy)] or surgical ["Treatment or Procedure"], diagnostic procedures}: immunization, {"Immuno-suppression" "suppression of immunologic"}; *(2)* {"primary care "physician"}-{Identify early sign(s) or symptom(s) of ["Disease" & "Disorder", 2 set of parallel "physio-pathologic"[9] syn.], "health keys";[10]}:  fever, ear infection; *(3)* {immunization, ["Immuno-suppression" "suppression of immunologic"], [Anti-microorganism (ex. Chemotherapy, Penicillin, Antibiotic, TS, immunization, herbicide, pesticide, et seq.):  as to the science & art of disrupting or destroying (Normal flora)], [Laboratory synthesized nutrition (ex. mineral, vitamin, hormone, etc) w/o the (atomic energy)] or surgical ["Treatment or Procedure"], diagnostic procedures}: {Anti-microorganism (ex. Chemotherapy, Penicillin, Antibiotic, TS, immunization, herbicide, pesticide, et seq.):  as to the science & art of disrupting or destroying [Normal flora]}; *(4)* {Sandra CK Van Ornum, plaintiff, surviving "victims"}: {"Mother's milk"} also;

(*See* Compl. 3–8 for definitions of acronyms, ECF No. 7 (lacking a definition of TS).)  While these events may have occurred in Utah, the undersigned cannot determine how they relate to any of Ms. Van Ornum's claims.

Ms. Van Ornum's allegations of an accident in Utah also lack any context or description and do not show that any of the Defendants purposefully directed activities at Utah or that Ms. Van Ornum's injuries arise from that accident.  (*See* Opp'n 18–19, ECF No. 51.)  Thus, Ms. Van Ornum's Opposition does not assist the Court in finding specific jurisdiction over the Defendants.

In addition, Ms. Van Ornum mistakenly states that the Court will have personal jurisdiction over the Defendants when she serves them with a copy of the Complaint and waiver

---

[8]  Ms. Van Ornum defines "SC" as "'Simpler compound' *(1)* monosaccharide; *(2)* amino acids, *(3)* fatty acid;; [sic]" and "MN" as "'Micro-nutrition', 2nd stage of 'metabolism'," with "metabolism" defined at length and with further abbreviations in the Complaint.  (Compl. 6, 7, ECF No. 7.)
[9]  Ms. Van Ornum defines "Physio-pathologic" as "altered bodily function in disease, 'immunologic'[.]"  (Compl. 7, ECF No. 7.)
[10]  Ms. Van Ornum defines "health keys" as "*(1)* metabolism, *(2)* acid-balance, *(3)* calcium-phosphorous ratio[.]"  (Compl. 5, ECF No. 7.)

of service.  (*See* Compl. 11, ECF No. 7.)  A defendant's waiver of service of a summons does not

waive any objection to personal jurisdiction or venue by that defendant.  Fed. R. Civ. P. 4(d)(5).

Therefore, mere service does not necessarily establish personal jurisdiction.

      Because Ms. Van Ornum does not set forth facts alleging how each Defendant

purposefully directed its actions at Utah and how those actions connect to her alleged injuries,

Ms. Van Ornum fails to make a prima facie showing of specific jurisdiction over the Defendants.

      2.    *General Jurisdiction*

      In the absence of specific jurisdiction, a plaintiff can attempt to assert general jurisdiction

over an out-of-state defendant; however, the court must find greater contacts with the forum state

than those required for specific jurisdiction.  *Kuenzle*, 102 F.3d at 458 (citation omitted).

"[B]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a

more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's

'continuous and systematic general business contacts.'"  *OMI Holdings*, 149 F.3d at 1091

(quoting *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996))

(internal quotation marks omitted); *see Helicopteros Nacionales de Colombia v. Hall*, 466 U.S.

408, 416 (1984).

      The Supreme Court's recent holding in *Daimler AG v. Bauman* clarified the parameters

of general jurisdiction.  571 U.S. ___, 134 S. Ct. 746 (2014); *see Parlant Tech. v. Bd. of Educ.*,

No. 2:12-CV-417-BCW, 2014 WL 4851881, at *4 (D. Utah Sept. 29, 2014).  The Supreme Court

noted that courts exercise general ("all-purpose") jurisdiction paradigmatically in those forums

where a court would fairly regard an individual or corporate defendant as "at home," such as an

individual's state of domicile or a corporation's state of incorporation or principal place of

business.  *Daimler*, 134 S. Ct. at 760 (quotations omitted).  Beyond the "paradigm bases" for

general jurisdiction, the Court clarified that to assert general jurisdiction over an out-of-state

corporate defendant, the corporation must have affiliations with the forum state "so

continuous[ly] and systematic[ly] as to render [the corporation] essentially at home in the forum

State." *Id.* at 761 (quotations omitted).  Courts appropriately require significantly more contacts

before finding general jurisdiction than specific because general jurisdiction allows any plaintiff

to sue a defendant in that forum for all claims where subject matter jurisdiction exists.  *See id.* at

751 (noting "a court may assert jurisdiction over a foreign corporation 'to hear any and all claims

against [it]' only when the corporation's affiliations with the State in which suit is brought are so

constant and pervasive 'as to render [it] essentially at home in the forum State.'" (quoting

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ___, 131 S. Ct. 2846, 2851

(2011))).

> In considering whether a defendant's contacts with the forum suffice to create general

jurisdiction where the defendant does not reside, the Tenth Circuit, prior to *Daimler*, considered

the following factors:

> "(1) whether the corporation solicits business in the state through a local office or
> agents; (2) whether the corporation sends agents into the state on a regular basis to
> solicit business; (3) the extent to which the corporation holds itself out as doing
> business in the forum state, through advertisements, listings or bank accounts; and
> (4) the volume of business conducted in the state by the corporation."

*Kuenzle*, 102 F.3d at 457 (quoting *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d

1523, 1533 (10th Cir. 1996)).  This list is non-exhaustive.  *See Trierweiler*, 90 F.3d at 1533 ("In

assessing contacts with a forum, courts have considered *such factors as* . . .") (emphasis added)

(citation omitted); *Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1193 (D. Colo. 1999) (citation

omitted) ("[T]he *Trierweiler* factors are neither exhaustive nor necessarily determinative of the

general personal jurisdiction inquiry.").

Ms. Van Ornum has not alleged the paradigm bases of general jurisdiction.  Dr. Goodhue

lives in Hawaii, not Utah.  Meanwhile, none of the corporate defendants is incorporated in Utah

or has its principle place of business in Utah.  Nor has Ms. Van Ornum presented factual

allegations suggesting that any of the Defendants' affiliations with Utah qualify as "so

continuous or systematic" as to render the Defendants "at home" in Utah.  *See Daimler*, 134 S.

Ct. at 761 n. 19 ("It is one thing to hold a corporation answerable for operations in the forum

State . . . quite another to expose it to suit on claims having no connection whatever to the forum

State.").

In her Opposition, Ms. Van Ornum states that the "Court has general, general personal,

specific, long-arm or personal jurisdiction" over each of the Defendants, (Opp'n 9–17, ECF No.

51), and attempts to add more jurisdictional facts to her pleadings, such as including the websites

of each Defendant and alleging that people can access the websites from Utah.  (*Id.* at 25.)

These details do not suggest business activities "so constant and pervasive" as to make the

corporations "at home" in Utah.  *See Daimler*, 134 S. Ct. at 751 (quoting standard).  Thus, on

this record, the undersigned cannot conclude this Court has general jurisdiction over any of these

Defendants.

In sum, Ms. Van Ornum has failed to plead facts establishing that the Court could

exercise either specific or general personal jurisdiction over any of the Defendants.  Finding no

basis to exercise personal jurisdiction, the undersigned need not address the potential for

supplemental jurisdiction over the Hawaii statutory claim.

## RECOMMENDATION

For the reasons stated above, the undersigned RECOMMENDS the Court dismiss Ms.

Van Ornum's claims against the Defendants without prejudice, granting Defendants' Motions

(ECF Nos. 9, 14, 23, 29, 36, 45, 46, 66).  Based on Ms. Van Ornum's pleadings and supporting materials, the Court lacks personal jurisdiction over the Defendants in this case.  The undersigned further RECOMMENDS that the Court find as moot Defendant Hawaii Pacific's second Motion to Dismiss, (ECF No. 39), due to the undersigned's prior recommendation that the Court grant Hawaii Pacific's first Motion to Dismiss, (ECF No. 14).  The undersigned also RECOMMENDS that the Court terminate Ms. Van Ornum's Motion for Particularity because it functions as an Opposition and not a Motion.  (ECF No. 16.)

The Court will send copies of this Report and Recommendation to the parties who the Court hereby notifies of their right to object to the same.  The Court further notifies the parties that they must file any objection to this Report and Recommendation with the clerk of the court, pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), within fourteen (14) days of service thereof.  Failure to file objections may constitute waiver of objections upon subsequent review.

DATED this _28th__ day of January, 2016.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge