IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SANDRA C.K. VAN ORNUM,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN MEDICAL ASSOCIATION, *et al.*,<br><br>Defendants. | **REPORT AND RECOMMENDATION: WILLIAM GOODHUE MOTION TO DISMISS (ECF No. 100)**<br><br>Case No.  2:14-cv-921-RJS-EJF<br><br>District Judge Robert J. Shelby<br>Magistrate Judge Evelyn J. Furse |

Defendant William Goodhue, M.D., (Dr. Goodhue) filed the present Motion to Dismiss, requesting the Court to dismiss *pro se* Plaintiff Sandra C.K. Van Ornum's claims pursuant to Federal Rules of Civil Procedure ("Rules") 8(a) and (d), 12(b)(2) and (6).  (ECF No. 100.) Based on the allegations presented in the Amended Complaint, (Am. Compl., ECF No. 98), the undersigned finds the Amended Complaint fails to state a Racketeer Influenced and Corrupt Organizations (RICO) claim against Dr. Goodhue upon which the Court[1] can grant relief. Therefore the undersigned RECOMMENDS the Court dismiss the RICO claim pursuant to Rule 12(b)(6).  Further the undersigned finds no basis to exercise personal jurisdiction over Dr. Goodhue for the remaining claims.  Therefore the undersigned RECOMMENDS the Court dismiss these claims without prejudice pursuant to Rule 12(b)(2).[2]  Alternately, the District Judge could dismiss the Amended Complaint as untimely because Ms. Van Ornum submitted

---

1 On January 5, 2015, District Judge Robert J. Shelby referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B).  (ECF No. 3.)
2 Pursuant to D.U. Civ. R. 7-1(f), the undersigned finds oral argument unnecessary and will make its recommendation based on the Amended Complaint and written memoranda.

her Amended Complaint outside the thirty day refiling window granted in the District Judge's

Order.  (ECF No. 86.)  The undersigned LIFTS the stay, (ECF No. 177), as to Dr. Goodhue

upon the filing of this Report and Recommendation.

## BACKGROUND

On December 22, 2014, Ms. Van Ornum filed a *pro se* complaint against the American

Medical Association (AMA), American Dental Association (ADA), American Hospital

Association (AHA), Monsanto Company (Monsanto), Eli Lily and Company (Eli Lily), Pfizer

Inc. (Pfizer), Abbott Laboratories (Abbott), Allergan Inc. (Allergan), Hawaii Pacific Health

System (HPHS), Kuakini Health System (Kuakini), and Dr. William Goodhue (Dr. Goodhue).

(ECF No. 1.)  On March 24, 2015,  Ms. Van Ornum filed an Amended Complaint prior to

service of any Defendant.   (ECF No. 4.)  A few days later, Ms. Van Ornum filed a Motion for

Leave to File Amended Complaint, (ECF No. 5), which the undersigned granted.  (ECF No. 6.)

Following that order, Ms. Van Ornum filed the Amendment to Amended Complaint.  (ECF No.

7.)  Defendants then began filing Motions to Dismiss.  (Eli Lily and Pfizer, ECF No. 9; Hawaii

Pacific, ECF No. 14 & 39; AMA, ADA, and AHA, ECF No. 23; Allergan, ECF No. 29; Kuakini,

ECF No. 36; Abbott, ECF No. 45; Monsanto, ECF No. 46; Goodhue, ECF No. 66.)

Subsequently, the undersigned issued a Report and Recommendation as to all then

pending Motions to Dismiss, finding the Court lacked personal jurisdiction over all claims.

(Report & Recs., ECF No. 75.)  The District Judge granted each Motion to Dismiss for lack of

jurisdiction, with the exception of the antitrust claims, which the District Judge dismissed for

failure to comply with Rule 8(a) pleading standards.  (*See* Order, ECF 86.)

After dismissing all claims without prejudice, the District Judge offered Ms. Van Ornum

the opportunity to amend her Complaint.  *Id.*  Ms. Van Ornum filed the current operative

complaint (the "Amended Complaint") on May 4, 2016.  (Am. Compl., ECF No. 98.)  On May

13, 2016, Dr. Goodhue filed a Motion to Dismiss the Amended Complaint.  (ECF No. 100.)  On

June 2, 2016, the Court granted Ms. Van Ornum an extension until June 24, 2016 to respond to

the Motion.  (ECF No. 108.)  On June 8, 2016, Ms. Van Ornum responded to Dr. Goodhue's

Motion, (ECF No. 111), and on June 17, 2016, Dr. Goodhue filed his Reply, (ECF No. 113).  On

July 14, 2016 and August 3, 2016, Ms. Van Ornum filed additional memoranda in opposition

referring to this Motion as well as others.  (ECF Nos. 121, 129.)  The Rules permit one response

absent leave of the Court.  D.U. Civ. R. 7-1(b)(2)(A).  As Ms. Van Ornum did not have leave of

the Court to file these additional oppositions, the undersigned did not consider them.  Similarly,

the undersigned did not consider Dr. Goodhue's second reply, (ECF No. 123), to Ms. Van

Ornum's second response.

Ms. Van Ornum's Amended Complaint contains a potpourri of allegations.  From what

the undersigned can gather, Ms. Van Ornum alleges Dr. Goodhue, acting either independently or

as part of the larger (and indefinite) "Defendants' Class", violated numerous constitutional

protections and federal statutes.  Constitutional violations include:  the Privileges and Immunities

Clause (14th Amendment), the Due Process Clause (14th Amendment), the Equal Protection

Clause (14th Amendment), provisions against slavery and involuntary servitude (13th

Amendment), Freedom of Speech (1st Amendment), Freedom of Assembly (1st Amendment),

and Freedom of the Press (1st Amendment).

Alleged statutory violations include:  18 U.S.C. § 1851 (peonage), 42 U.S.C. § 2000bb-1

(Religious Freedom Restoration Act), 15 U.S.C. § 45 (unfair or deceptive acts or practices (FTC

Act § 5a)), 15 U.S.C. § 1-3 (Sherman Antitrust Act), 15 U.S.C. § 15 (Clayton Antitrust Act), 18

U.S.C. § 1959 (violent crimes in aid of racketeering activity), 18 U.S.C. § 1961 (RICO), and 18 U.S.C. § 1958 (use of interstate facilities in murder for hire).

When this Court issued its first Report and Recommendation, it noted that "Ms. Van Ornum's copious use of … abbreviations makes her Complaint extremely difficult to understand." (Report & Recs. 2, ECF No. 75.)  The Court further struggled with Ms. Van Ornum's dense web of alleged facts, claims, and tangled narrative.  Ms. Van Ornum dedicated a large portion of the Complaint to her and her parent's medical histories, a chronology beginning in 1900 and continuing through 2013, touching on events in Hawaii, Guam, the Philippines, and Vietnam. (*Id.* at 4.)  Ms. Van Ornum directed most allegations of illegality at Defendants generally, as a broad and shadowy conspiratorial class. (*Id.*)  The Complaint made little effort to connect specific factual statements to specific Defendants. (*Id.*)

Ms. Van Ornum has made some improvements between the Complaint discussed in the first Report and Recommendation and the Amended Complaint at issue.  Notably, Ms. Van Ornum eliminated the abbreviations.  Unfortunately, the allegations remain difficult to follow.  Ms. Van Ornum still fails to connect specific facts and claims to specific Defendants, instead making grand assertions against "Defendants' class."

Essentially, Ms. Van Ornum objects to modern medicine, modern agriculture, and modern civilization to the extent these systems run contrary to her understanding of the "knowledge of our Creator's laws of health." (Am. Compl. 4, ECF No. 98.)  "Defendants' class" operates a monopolistic force behind these modern systems, maintaining and growing their power at the expense of "our body and its business department." (*Id.* at 3.)  Preservation of such a huge monopoly requires innumerable and unending acts, three highlights from Ms. Van Ornum's perspective include the creation of the United States Department of Health, Education

and Welfare in 1953, the passage of "the Obama health reform," and the "IRS penalty laws."
(Am. Compl. 8, 10, ECF No. 98.)  While Ms. Van Ornum's Amended Complaint only names
fourteen specific Defendants, the entire conspiracy consists of "all pharmaceutical and chemical
corporations, partnerships, associations, health care providers who are individuals, group of
individuals, facilities, hospital and clinics."  (Am. Compl. 3, ECF No. 98.)  Ms. Van Ornum
believes that if this group stopped providing/forcing things like fluoridated water, medical
surgeries, pharmaceuticals, and chemically-supported agriculture, and if people returned to the
practices of health and nutrition supported by her readings of the Old Testament and various
other spiritual texts, everyone would live for over 900 years.  (*Id.* at 3-6.)  According to Ms. Van
Ornum, Defendants' Class propagates its systems, prevents exercise of true health practices, and
in doing so robs people generally, and her parents and herself in particular, of good health and
ninety percent of their life expectancy.  (*Id.* at 3-4, 9.)

## DISCUSSION

Dr. Goodhue offers four grounds for dismissing Ms. Van Ornum's Amended Complaint:
(1) Ms. Van Ornum filed the Amended Complaint late, (2) the Amended Complaint fails to
include new allegations to support personal jurisdiction, (3) the Amended Complaint does not
meet Rule 8(a)'s pleading requirements, and (4) the Amended Complaint fails to state a claim
upon which the Court can grant relief.  (Mot. to Dismiss, ECF No. 100.)

### I.    Ms. Van Ornum Filed her Amended Complaint Late

Ms. Van Ornum's Amended Complaint arrived late, according to the time provided in the
District Judge's March 30, 2016 Order.  (Order 10, ECF No. 86 ("The court grants Ms. Van
Ornum leave to amend her complaint within thirty (30) days of this Order, in accordance with
the guidance provided above.  Failure to do so will result in the dismissal of this case with

prejudice.").)  The Order gave Ms. Van Ornum thirty days to file her Amended Complaint. Excluding the entry date of the Order, Fed. R. Civ. P. (6)(a)(1)(A), Ms. Van Ornum's Amended Complaint came due April 29, 2016.  Ms. Van Ornum hand delivered her Amended Complaint to the clerk's office on May 4, 2016.  (Am. Compl., ECF No. 98 (Certificate of Service).)  Thus, the Court could dismiss the Complaint with prejudice based on the prior Order, (ECF No. 86).

Ms. Van Ornum incorrectly argues that Rule 6(d) applies.  (Opp'n 5-6, ECF No. 114.) Rule 6(d) states that, "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail), …, 3 days are added after the period would otherwise expire under Rule 6(a)."  Fed. R. Civ. P. 6.  Rule 6(d) does not cover this situation, because the thirty day period unambiguously ran from the date of the Order, not "after being served."  If Rule 6(d) applied, Ms. Van Ornum nonetheless filed her Amended Complaint late. Thirty-three days from the date of the Order, ignoring the Order's entry date, would fall on May 3, 2016.  Ms. Van Ornum filed her Amended Complaint late on May 4, 2016.  Given Ms. Van Ornum's *pro se* status, the undersigned proceeds as if Ms. Van Ornum filed her Amended Complaint on time.

## II.   This Court has Personal Jurisdiction over Dr. Goodhue Pursuant to RICO

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."  *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83 (1998)).  Dr. Goodhue asserts that the Court lacks personal jurisdiction over him, therefore the Court must first address this argument before reaching the merits of Ms. Van Ornum's Amended Complaint.

As the Plaintiff, Ms. Van Ornum "bears the burden of establishing personal jurisdiction over the defendant[s]."   *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996) (quoting *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984)). To meet this burden on a motion to dismiss where the Court  receives only affidavits and written materials, Ms. Van Ornum need only make a prima facie showing of personal jurisdiction.  *Id.* "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant[s]."  *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).   The undersigned takes as true all "plausible, non-conclusory, and non-speculative" facts and resolves factual disputes in favor of Ms. Van Ornum.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-6 (2007)).

Ms. Van Ornum appears *pro se*; thus, the Court must liberally construe her pleadings.  *See id.* at 1073 (acknowledging "solicitous construction due a pro se  filing").  However, the Court cannot act as an advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) ("[T]his court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.") (quoting *Garrett v. Selby, Connor, Maddux & Janer,* 425 F.3d 836, 840 (10th Cir. 2005)).

A federal court considering whether it has personal jurisdiction over a defendant must decide "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due

process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)).

The possibility of nationwide service of process exists as to Ms. Van Ornum's RICO allegations. *See Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229 (10th Cir. 2006) (holding 18 U.S.C. § 1965(b) provides for nationwide service of process in RICO actions). Section 1965(b) allows a plaintiff who can attain personal jurisdiction over one defendant in an alleged RICO conspiracy to serve summonses "nationwide on other defendants if required by the ends of justice." *Cory*, 468 F.3d at 1231 (determining the relationship between 18 U.S.C. § 1965(a) and § 1965(b)). Because the RICO allegations present the largest possible scope of personal jurisdiction, their analysis precedes discussion of personal jurisdiction on other bases.[3] If the Court has personal jurisdiction over the nationwide service of process claims, pendant jurisdiction would confer personal jurisdiction over the other claims to the extent they arise from the same case or controversy. *See Klein v. Cornelius*, 786 F.3d 1310, 1319 (10th Cir. 2015) (acknowledging that pendant jurisdiction allows court to "exercise personal jurisdiction over that same defendant for a supplemental state-law claim") (citing *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002)).

Whether Ms. Van Ornum may properly hale Dr. Goodhue into the District of Utah through RICO's nationwide service of process provision depends on two findings. First, "personal jurisdiction based on minimum contacts [must be] established as to at least one defendant." *Cory*, 468 F.3d at 1230 (quoting *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998)). Second, the plaintiff may serve summons on other defendants outside the district if required by the "ends of justice." *Id.* Once the Court makes these findings,

---

[3] The antitrust claims have very similar personal jurisdiction provisions. *Cory,* 468 F.3d at 1232.

it must proceed with an inquiry under the Fifth Amendment to determine whether exercise of jurisdiction over Dr. Goodhue "comports with Fifth Amendment due process." *See Cory*, 468 F.3d at 1229, 1233 (noting statutory nationwide service of process confers personal jurisdiction, but exercise of that jurisdiction must still meet Fifth Amendment due process requirements).

As to the first finding, Dr. Goodhue argues the Amended Complaint lacks allegations showing minimum contacts with any Defendant.  (Mot. 8, ECF No. 100; Reply 2, ECF No. 113.) Ms. Van Ornum argues that Intermountain Health Care, Inc. does have minimum contacts with Utah.  (Resp. to Dr. Goodhue's Mot. to Dismiss (Resp.) 4, ECF No. 111.)  Indeed, the Amended Complaint alleges Intermountain Health Care, Inc., the fourteenth named Defendant and a partner in the RICO conspiracy according to the allegations, is a Utah-based company with its primary place of business and headquarters in Salt Lake City, Utah.  (Am. Compl. 17, ECF No. 98.)  Therefore, the Court finds minimum contacts exist between at least one Defendant and the District of Utah.

Dr. Goodhue further argues that even if minimum contacts exist as to one Defendant, Ms. Van Ornum has not sufficiently pled a RICO claim against Dr. Goodhue.  (Mot. 8, ECF No. 100; Reply 2, ECF No. 113.)  This argument properly addresses the Motion to Dismiss for failure to state a claim under Rule 12(b)(6) not the Motion to Dismiss for lack of jurisdiction under Rule 12(b)(2).  The undersigned will address this argument under that section of this Report and Recommendation.

Lastly, Dr. Goodhue argues that even if personal jurisdiction exists over another Defendant, the RICO statute only authorizes nationwide service of process on Dr. Goodhue if the ends of justice so require, and Ms. Van Ornum has failed to meet her burden on this front.  (Mot. 8, ECF No. 100; Reply 2, ECF No. 113.)  Ms. Van Ornum argues her Amended Complaint meets

the "ends of justice" standard because many Defendants are domiciled in Utah and the remaining Defendants are in other states, making consolidation in one action necessary to meet the ends of justice. (Resp. 5, ECF No. 111.) In making this argument, Ms. Van Ornum cites *Waldner v. N. Am. Truck & Trailer, Inc.*, 277 F.R.D. 401 (D.S.D. 2011).

The Tenth Circuit has offered some guidance on what satisfies the "ends of justice" standard. "Ends of justice" constitutes "a flexible concept uniquely tailored to the facts of each case." *Cory,* 468 F.3d at 1232. Additionally, courts should "liberally construe [ ] [RICO] to effectuate its remedial purposes." *Id.* (quoting H.R. Rep. No. 91-1549 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4036). That a plaintiff sustained damages and litigation costs in a proposed forum, without more, does not independently satisfy the ends of justice standard. *Id.* On the other end of the spectrum, simply because another district exists where the plaintiff could hale all defendants into court does not disqualify a plaintiff's proposed district under the ends of justice analysis. *Id.* at 1231-32; *see also Hart v. Salois,* 605 F. App'x 694, 699 (10th Cir. 2015) (unpublished), cert. denied, 136 S. Ct. 544 (2015), (holding that neither a "confluence of defendants within a single judicial district" nor a lack of confluence controls the ends of justice analysis). The Tenth Circuit explicitly hypothesized that:

> While [the latter] construction of the "ends of justice" might promote judicial economy, it might also mean that some RICO violations would go unpunished whenever organized criminals operate within the same locale and cause harm in a distant state. Insulating such a criminal enterprise from liability, when, for instance, the victim is unable to finance long-distance litigation, is not consistent with RICO's purpose.

*Cory,* 468 F.3d at 1232. In reading the cases interpreting the "ends of justice" standard and the statute providing the standard, the undersigned derives the intention that courts conduct the ends of justice analysis with respect to the defendants as a whole, not in consideration of the defendants individually. *See* 18 U.S.C. § 1965 (addressing parties in the plural); *Hart,* 605 F.

App'x at 699 (conducting analysis as to defendants as a whole, never addressing them individually); Waldner, 277 F.R.D. at 412 (same); David v. Signal Int'l, LLC, 588 F. Supp. 2d 718, 724 (E.D. La. 2008) (same).

Ms. Van Ornum's argument that the ends of justice authorize nationwide service of process because some Defendants are domiciled in Utah and the majority of other Defendants are in other states collapses.  (Resp. 5, ECF No. 111.)  The Amended Complaint only alleges one Defendant has its principle place of business and headquarters in Utah, Intermountain Health Care; all other Defendants have their principle places of business, headquarters, and residences in other states.  (Am. Compl. ¶¶ 57-70, ECF No. 98.)  The case Ms. Van Ornum cites to support her proposition found the ends of justice served by nationwide service of process for a suit in South Dakota where "[m]any defendants are domiciled in South Dakota and the majority of the remaining defendants are located in either Iowa or Minnesota."  Waldner, 277 F.R.D. at 412. This case by contrast has only one of fourteen Defendants with its principle place of business and headquarters in Utah, and the majority of the remaining Defendants have their residences in non-neighboring states.  The non-Utah Defendants reside in Hawaii, California, Illinois, New York, Connecticut, Indiana, Missouri, and Washington, D.C.  Without more, the mere scattering of Defendants across the country does not compel personal jurisdiction in the District of Utah to meet the ends of justice, but it provides some weight in favor of jurisdiction.

The Tenth Circuit has also held that accrued damages and litigation costs in a proposed forum do not independently meet the ends of justice standard.  Cory, 468 F.3d at 1232.  Under that precedent, Ms. Van Ornum's allegations that damage has occurred in Utah and that Dr. Goodhue continues to inflict damage in Utah by refusing service, do not justify nationwide service of process alone.  Nonetheless, the undersigned acknowledges that the only living

Plaintiff, Ms. Van Ornum, resides in Utah and thus feels her damages in this District.

The undersigned further assesses and liberally construes the other allegations Ms. Van Ornum makes to determine whether in combination they meet the ends of justice standard.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (requiring courts to hold *pro se* pleadings "to a less stringent standard than formal pleadings drafted by lawyers").  Construing Ms. Van Ornum's Amended Complaint liberally, her strongest argument as to why justice supports jurisdiction in Utah is that her financial resources compared to those of the Defendants are minimal, and she, as *pro se* Plaintiff, cannot file documents electronically, and therefore must travel to and from the courthouse to file documents in a timely manner.  (*See* Am. Compl. ¶ 78(3), (5), (7), ECF No. 98.)

Certainly, Utah would provide the most convenient and inexpensive forum in which Ms. Van Ornum, a resident of Provo, could litigate the RICO claim against all Defendants.  No doubt, Congress had in mind creating a statutory scheme that would facilitate an individual's ability to take on a nationwide conspiracy when it provided for nationwide service of process. *Cory,* 468 F.3d at 1232.  The Tenth Circuit also clearly contemplated that the plaintiff's financial means could form part of the ends of justice inquiry.  *Id.*  The Court will construe the factual allegations of the Amended Complaint in Ms. Van Ornum's favor and find her financial means lacking by comparison to the Defendants, generally large corporations and associations.  When the Tenth Circuit hypothesized about a situation where reduced financial resources would permit the exercise of nationwide service of process, they anticipated the defendants, while not in the forum, had specifically intended to cause harm in that forum.  *Cory,* 468 F.3d at 1232.  Again construing the Amended Complaint liberally, the Defendants have purposefully conspired to harm the health of all people nationwide, including those people in Utah.  Taking these

allegations as true, the ends of justice tip in favor of Ms. Van Ornum's ability to sue the Defendants in one suit in her home district.  Based on the factual allegations, the liberal construction accorded RICO, and the flexible interpretation of the ends of justice provided by the Tenth Circuit in *Cory*, 468 F.3d at 1232, the undersigned finds that the ends of justice permit Ms. Van Ornum to employ nationwide service of process against the Defendants.

Having made the determination that Ms. Van Ornum may use nationwide service of process, the undersigned must consider whether the Fifth Amendment Due Process Clause permits the Court to exercise personal jurisdiction over Dr. Goodhue specifically.  In *Cory*, 468 F.3d at 1229, the Tenth Circuit endorsed the Fifth Amendment due process analysis set forth in *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000).  *Cory*, 468 F.3d at 1229.  *Peay* shifts the burden to defendants to prove that nationwide service of process, otherwise authorized under statute, does not comport with due process.  *Peay*, 205 F.3d at 1212 (applying Fifth Amendment due process analysis after nationwide service of process under Employee Retirement Income Security Act).  The *Peay* test includes a five-factor analysis used to determine whether a defendant has successfully argued a "constitutionally significant inconvenience" that would result from personal jurisdiction derived from nationwide service of process.  *Id.*  Specifically, *Peay* considers,

> non-exclusive factors in considering whether defendants have met this burden, such as (1) the extent of contact with the forum state, (2) the inconvenience of having to litigate in a foreign jurisdiction, (3) judicial economy, (4) the probable situs of the discovery proceedings, and (5) the nature of the defendant's activities and its impact beyond his state's borders.

*Id.*

Dr. Goodhue does not address the Fifth Amendment due process analysis in his Motion. He does address the failings of the Amended Complaint, arguing Ms. Van Ornum failed to allege his contacts with Utah.  (Mot. 7, ECF No. 100.)  However, at this stage, Dr. Goodhue bears the

burden to argue why his appearing in Utah would present a "constitutionally significant inconvenience" as to him.  *See Peay*, 205 F.3d at 1212 (quoting *Republic of Panama v. BCCI Holdings,* 119 F.3d 935, 946 (11th Cir. 1997)) (setting forth defendant's burden).  Dr. Goodhue makes no effort to explain why appearing in Utah would cause him constitutional harm, making no affirmative assertions about his contacts with Utah, the burden to him of litigating in Utah, the nature of his actions, and any impact they may have beyond Hawaii.  (*See* Mot. 7, ECF No. 100.) Furthermore, Dr. Goodhue never addresses judicial economy or the situs of discovery.  *(Id.)* Absent such a defense, Dr. Goodhue fails to meet his burden to contest personal jurisdiction, and the undersigned RECCOMENDS finding personal jurisdiction exists over the RICO claims against Dr. Goodhue and pendant jurisdiction thus extends to all remaining claims.

## III.    THE AMENDED COMPLAINT FAILS TO STATE A RICO CLAIM UNDER RULE 12(b)(6).

If the District Judge adopts the undersigned's analysis of personal jurisdiction arising from RICO, the undersigned nonetheless recommends dismissal of the RICO claim under Rule 12(b)(6) for failure to state a claim.

The Court construes *pro se* pleadings liberally and holds them to a "less stringent standard."  *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation omitted)). A *pro se* plaintiff's claims should survive a 12(b)(6) motion, "despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  *Id.* (quoting *Hall v. Belmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  Regardless, even a *pro se* plaintiff must "'set forth plausible claims' animating the elements of her causes of action."  *See Burnett v. Mortg. Elec. Registration*

*Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Whether a plaintiff's claims rise to the threshold of plausible depends on the factual allegations presented within the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall*, 935 F.2d at 1110. The Court will disregard legal allegations masquerading as factual allegations. *Twombly*, 550 U.S at 554–56 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). If a *pro se* party has not alleged sufficient facts to support a legal theory, courts will not fill in the factual gaps. *Smith*, 561 F.3d at 1096 (citing *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997)).

Should a plaintiff's original complaint miss "important element[s] that may not have occurred to him," the court will grant leave to amend. *Hall*, 935 F.2d at 1110. After providing an opportunity to amend, a court may properly dismiss with prejudice only upon concluding that further opportunity to amend would prove "futile." *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010).

Ms. Van Ornum does not allege facts sufficient to create any plausible RICO claim. The Amended Complaint's RICO allegations assert that Dr. Goodhue, acting in concert with the broad class of Defendants, "commit[ ] continuous and systematic serious injuries and damages to our body and its business department in aid of racketeering activities." (Am. Compl. ¶ 8, ECF No. 98.) Defendants' class tricks the public into believing modern agriculture, modern medicine, and chlorination, among other ingenuities, aid health, when in reality these devices take centuries

15

off our natural life span.  (*Id.* at ¶¶ 9-12.)  By purposefully withholding "knowledge of our Creator's laws of health," Defendants force humanity into "peonage."  (*Id.* at ¶ 15.)  The RICO enterprise stoops to the depths of "murder in aid of racketeering activities and use interstate commerce facilities to commission murder-for-hire."  (*Id.* at ¶ 7.)

Ms. Van Ornum's Amended Complaint relies on a broad and ill-defined "class" of Defendants.  The group involved in the suspected enterprise includes "all pharmaceutical and chemical corporations, partnerships, associations, health care providers who are individuals, group of individuals, facilities, hospital and clinics."  (*Id.* at ¶ 8.)  This fact alone provides grounds to dismiss the RICO claims.  While alleging the existence of an "enterprise" is necessary to state a civil RICO claim, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495–97 (1985) ("A violation of § 1962(c)… requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."); *Boyle v. United States*, 556 U.S. 938, 943–45 (2009) (defining "enterprise"), Ms. Van Ornum sets an impossible task for herself.  No imaginable set of facts exists that Ms. Van Ornum can allege (and Ms. Van Ornum alleges few facts) that would tie together every pharmaceutical company, every chemical company, and every single health care provider into a single enterprise.

Worse still, Ms. Van Ornum makes no effort to explain how Dr. Goodhue connects to this enterprise.  The Amended Complaint alleges that as the medical examiner, Dr. Goodhue performed an unauthorized autopsy on Ms. Van Ornum's mother and did not properly document the evidence of her mother's murder.  (Am. Compl. ¶ 176, ECF No. 98.)  No allegations connect Dr. Goodhue to the larger RICO enterprise Ms. Van Ornum envisions, aside from the innocuous fact that as a doctor, Dr. Goodhue is part of modern medicine.  Without plausible allegations supporting existence of an enterprise, Ms. Van Ornum's RICO claims against Dr. Goodhue fail.

Additionally, Ms. Van Ornum's allegations pertaining to Dr. Goodhue fail to establish Dr. Goodhue's involvement in any qualifying racketeering activity, let alone a pattern of such activity. *Sedima*, 473 U.S. at 495–97 (identifying "a pattern…of racketeering activity" as necessary civil RICO elements); *see also* 18 U.S.C. § 1962(c).

Ms. Van Ornum's impossibly large set of guilty parties only throws into sharper relief the failings of the Amended Complaint under Rule 8(a). The Order dismissing the Complaint made clear that, "where there are multiple claims and multiple defendants, Ms. Van Ornum must state her claims in a manner that provides individual defendants fair notice of the claims asserted against them and the grounds upon which those claims rest." (Order 9, ECF No. 86.) The Amended Complaint fails to follow these instructions. The undersigned suspects that Ms. Van Ornum cannot reduce her conspiracy theory to the format necessary to survive a Rule 12(b)(6) motion.

Even the relief Ms. Van Ornum seeks lacks plausibility: "restore back to the people our Creator's laws of health, privilege or immunities, life, liberty and property, nationwide, for the wellbeing of this promised land." (Am. Compl. ¶ 185, ECF No. 98.) The undersigned must acknowledge the extreme implausibility that anyone is actively engaged in a conspiracy to reduce human life expectancy from 900 or more years to 100 or fewer years, let alone in a conspiracy this vast. To assist the Court, a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and that statement must be plausible. *Twombly*, 550 U.S at 570. Ms. Van Ornum has had two opportunities to frame her issues in this manner and has twice failed to conform to the Rules. Therefore, the undersigned RECOMMENDS dismissing all RICO and racketeering claims against Dr. Goodhue for failure to state a claim.

To the extent Ms. Van Ornum seeks wholesale changes to modern medicine, modern agriculture, and broader society, Ms. Van Ornum may have more success outside the courthouse.

**IV.    The Court Lacks Personal Jurisdiction over Dr. Goodhue for the Remaining Claims.**

If this Court dismisses Ms. Van Ornum's RICO claim, the continued existence of pendant jurisdiction becomes suspect.  The Tenth Circuit found abuse of discretion where a district court retained pendant jurisdiction after dismissing the anchor claim prior to trial.  *United States v. Botefuhr*, 309 F.3d 1263, 1274 (10th Cir. 2002).  Here, dismissal of the anchor claim, the RICO claim, would occur prior to discovery even beginning.  Therefore, absent another basis for personal jurisdiction, the Court should follow the prudent course and dismiss the pendant claims without prejudice for lack of jurisdiction.  As discussed below, no other basis exists for this Court to exercise personal jurisdiction over Dr. Goodhue.

**A. The Sherman and Clayton Acts Do Not Convey Personal Jurisdiction Over Dr. Goodhue.**

Ms. Van Ornum seeks relief under both the Sherman and the Clayton Acts.  (Am. Compl. 18, ECF No. 98.)  In Ms. Van Ornum's Amended Complaint she continues to seek treble damages under the antitrust laws for injuries she sustained in her "business" and "property." (*See* Am. Compl. 10, ECF No. 98.)  15 U.S.C. § 15(a) provides:

> [a]ny person . . . injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

To facilitate enforcement of the federal antitrust laws, 15 U.S.C. § 22 authorizes expansive venue and service of process on corporate defendants:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases

may be served in the district of which it is an inhabitant, or wherever it may be found.

Thus, the Clayton Act provides for nationwide service of process against defendant corporations in private civil antitrust suits.  *See, e.g., Phone Directories Co. v. Contel Corp.*, 786 F. Supp. 930, 942 (D. Utah 1992) ("[S]ervice of process is authorized by the nationwide service of process provision at § 12 of the Clayton Act."); *In re Auto. Refinishing Paint Antitrust Litig.,* 358 F.3d 288, 293 (3d Cir. 2004) ("It is undisputed that the second clause authorizes nationwide, indeed worldwide, service of process on a defendant corporation in federal antitrust litigation."); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 422 (2d Cir. 2005); *GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000); *Go–Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1413 (9th Cir. 1989).

However, 15 U.S.C. § 22 only applies to corporations, not individual defendants or "other entities that simply share common attributes with corporations," such as unincorporated or voluntary associations.  *World Skating Fed'n v. Int'l Skating Union*, 357 F. Supp. 2d 661, 664 (S.D.N.Y. 2005); *see California Clippers, Inc. v. U.S. Soccer Football Ass'n*, 314 F. Supp. 1057, 1061, 1065 (N.D. Cal. 1970) (interpreting earlier version of statute noting that the Clayton Act's service of process provision does not apply to unincorporated associations); *McManus v. Tato*, 184 F. Supp. 958, 959 (S.D.N.Y. 1959) (interpreting earlier version of statute finding the Clayton Act's "specificity necessarily excludes individuals and voluntary associations from those amenable to extraterritorial service"); *see also* Daniel J. Capra, Selecting an Appropriate Federal Court in an International Antitrust Case:  Personal Jurisdiction and Venue, 9 FORDHAM INT'L L.J. 401, 407-408 (1986).  As an individual, Dr. Goodhue falls outside the nationwide service of process provision of the federal antitrust laws.  Therefore, the antitrust nationwide service provision does not provide jurisdiction over Dr. Goodhue.

### B. Utah's Long-Arm Statute Does Not Convey Jurisdiction over Dr. Goodhue.

Whether the Court holds personal jurisdiction over Dr. Goodhue absent nationwide service of process, depends on Federal Rule of Civil Procedure (Rule) 4(k)(1)(A) and Utah's long-arm statute.  *See Dudnikov*, 514 F.3d at 1070 (noting where federal statutes at issue do not provide nationwide service of process, the court considers the law of the forum state).  Utah's long-arm statute extends to the limits allowed by due process of law, Utah Code Ann. § 78B-3-201(3); *see Dudnikov*, 514 F.3d at 1070 (noting similar Colorado statute confers maximum jurisdiction permitted by due process), and the inquiry turns on whether the exercise of jurisdiction over Dr. Goodhue comports with the Fourteenth Amendment's Due Process Clause. *See Klein*, 786 F.3d at 1318 (distinguishing 14th Amendment analysis from 5th Amendment analysis).

Due process requires that, for a court to hold jurisdiction over a nonresident, "minimum contacts between the defendant and the forum State" must exist.  *Trujillo*, 465 F.3d at 1217–18 (quoting *Intercon, Inc. v. Bell Atl. Internet Sol., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)). "Because a state's sovereignty is territorial in nature, a defendant's contacts with the forum state must be sufficient such that, notwithstanding its lack of physical presence in the state, the state's exercise of sovereignty over it can be described as fair and just."  *Dudnikov*, 514 F.3d at 1070.

> A plaintiff may demonstrate Fourteenth Amendment minimum contacts in two ways: First, a court may exercise *specific* jurisdiction if a "defendant has 'purposefully directed' his activities at residents of the forum . . . *and* the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (citations omitted) (emphasis added).  Second, a court may exercise *general* jurisdiction where the defendant's contacts, while not rising to the level of the traditional notion of presence in the forum state, are nonetheless "continuous and systematic." *Trierweiler [v. Croxton & Trench Holing Corp.],* 90 F.3d [1523], 1533 [(10th Cir. 1996)] (quoting *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 416 (1984)).

*Kuenzle*, 102 F.3d at 455.  If the Court finds it has either specific or general jurisdiction over a defendant, the case against that defendant satisfies the "minimum contacts" standard.  *See OMI Holdings*, 149 F.3d at 1090-91.  After a successful finding of minimum contacts, a court must next analyze whether the exercise of personal jurisdiction over the defendant comports with "traditional notions of fair play and substantial justice." *Id.* (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Ct.*, 480 U.S. 102, 113 (1987)).

### 1. Specific Jurisdiction

A court may assert specific jurisdiction over a defendant where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotations omitted).  When determining whether a defendant has minimum contacts sufficient to create specific jurisdiction, courts apply a two-part test.  "[F]irst, [ ] the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, [ ] the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov*, 514 F.3d at 1071 (citing *Burger King*, 471 U.S. at 472).  In analyzing a defendant's "purposefully directed" activities, courts look for allegations showing (a) "an intentional action" by the defendant, (b) "expressly aimed at the forum state", (c) with the defendant's "knowledge that the brunt of the injury would be felt in the forum state." *Id.* at 1072; *see accord Walden v. Fiore*, 571 U.S. ____, 134 S. Ct. 1115, 1122 (2014).  Specific jurisdiction must arise from "actions by the defendant and not [from] events that are the result of unilateral actions taken by someone else." *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004).  In addition, a plaintiff's allegations must demonstrate that the alleged injuries "arise out of" the defendant's forum-related activities by showing a causal link between the defendant's

contacts and the injuries at issue.  *Dudnikov*, 514 F.3d at 1078–79.

The undersigned's original Report and Recommendation found that Ms. Van Ornum failed to allege any facts capable of suggesting that Dr. Goodhue had purposefully directed actions towards Utah or that a causal link existed between any such actions and Ms. Van Ornum's alleged injuries.  (Report & Recs. 15-20, ECF No. 75.)  Ms. Van Ornum's Amended Complaint again fails to make sufficient allegations for specific jurisdiction to attach.

In her argument for specific jurisdiction, Ms. Van Ornum argues that Dr. Goodhue's "pattern of practice goes beyond the borders of Hawaii and purposefully direct his activities at Ms. Van Ornum in her forum of her choice."  (Am. Compl. 54, ECF No. 98.)  In support of this claim, Ms. Van Ornum makes the following statements about Dr. Goodhue:

1) He refuses USPS certified return receipt delivery to the Honolulu, Hawaii Department of Medical Examiner on April 13, 2015;
2) He refuses to waive service of process which is mailed and dated May 19, 2015;
3) He refuses to answer on June 16, 2015:
4) He is professional service on July 29, 2015:
5) He refuses to answer on August 19, 2015, within twenty-one days (Federal Rules of Civil Procedure 12(a)(1)(A)(i):
6) He continues to motion to dismiss, for lack of personal jurisdiction fully aware that his waived his opportunity to contest Ms Van Ornums arguments, fully aware that he accrue to "failure to waive" expenses under Federal Rules of Civil Procedure Rule 4(d)(2)(A)(B);

(Am. Compl. ¶ 178, ECF No. 98.)  Nothing in the allegations indicates Dr. Goodhue expressly directed an intentional action at Utah, or that Dr. Goodhue had knowledge that Ms. Van Ornum would feel the brunt of an injury in Utah.  These actions of Dr. Goodhue reflect responses (or the lack of response) to Ms. Van Ornum's unilateral action of initiating this proceeding in Utah.  A plaintiff cannot create jurisdiction over a defendant by suing him in a particular forum.  *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the

forum State.").  Dr. Goodhue has the right to assert this Court's lack of jurisdiction without risking subjecting himself to such jurisdiction by his actions.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 n. 10 (1980) (allowing petitioners to make limited appearance to challenge jurisdiction); *Dudnikov*, 514 F.3d at 1069 (same).

The Amended Complaint therefore fails to set forth facts alleging that Dr. Goodue purposefully directed actions towards Utah, as well as how those actions connect to Ms. Van Ornum's alleged injuries.  Ms. Van Ornum fails to make a prima facie showing of specific jurisdiction over Dr. Goodhue.

### 2. General Jurisdiction

Without specific jurisdiction, the Court proceeds to analyze the possibility of general jurisdiction.  However, "[b]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)) (quoting *Helicopteros Nacionales  v.* Hall, 466 U.S. 408, 416 (1984)). Therefore, Ms. Van Ornum must provide facts capable of establishing contacts more widespread than those necessary for specific jurisdiction.  *See, Kuenzle*, 102 F.3d at 458 (quoting *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 146 (10th Cir. 1992)).

The Supreme Court's holding in *Daimler AG v. Bauman* clarified the parameters of general jurisdiction.  571 U.S.___, 134 S. Ct. 746 (2014); *see Parlant Tech. v. Bd. of Educ.*, No. 2:12-CV-417-BCW, 2014 WL 4851881, at *4 (D. Utah Sept. 29, 2014) (unpublished).  The Supreme Court  noted that courts exercise general ("all-purpose") jurisdiction paradigmatically in those forums where a court would fairly regard an individual or corporate defendant as "at

home," such as an  individual's state of domicile or a corporation's state of incorporation or principal place of business. *Daimler*, 134 S. Ct. at 760 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).  Beyond these "paradigm bases" for general jurisdiction, a court can find general jurisdiction over an out-of-state corporate defendant when the corporation maintains affiliations with the forum state "so continuous and systematic as to render [the corporation] essentially at home in the forum State." *Id.* at 761 (citing *Goodyear*, 564 U.S. at 919).  Courts appropriately require significantly more contacts before finding general jurisdiction than specific because general jurisdiction allows any plaintiff to sue a defendant in that forum for all claims where subject matter jurisdiction exists. *See id.* at 751 (noting "a court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" (quoting *Goodyear*, 564 U.S. at 919)).

In considering whether a defendant's contacts with the forum suffice to create general jurisdiction where the defendant does not reside, the Tenth Circuit, prior to *Daimler*, considered the following factors:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Kuenzle*, 102 F.3d at 457 (quoting *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996)).  This list is non-exhaustive. *See Trierweiler*, 90 F.3d at 1533 ("In assessing contacts with a forum, courts have considered *such factors as* . . .") (emphasis added) (citation omitted); *Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1193 (D. Colo. 1999) (citation

omitted) ("[T]he *Trierweiler* factors are neither exhaustive nor necessarily determinative of the general personal jurisdiction inquiry.").

The Amended Complaint argues that "from April 13, 2015 Dr. Goodhue continuous and systematic pattern of practice goes beyond the borders of Hawaii and purposefully direct his activities at Ms Van Ornum in her forum of her choice" and "this court may exercise general jurisdiction where his contacts, while not rising to the level of traditional notion of presence in the form state are nonetheless has been continuous and systematic." (Am. Compl. 54, ECF No. 98.) Mere recitation of legal standards does not equate to factual allegations and does not entitle Ms. Van Ornum to any presumptions.

The Amended Complaint includes only sparse reasons to support its assertion that Dr. Goodhue's contacts are "continuous and systematic." In fact, the strongest argument Ms. Van Ornum presents as to why jurisdiction lies in Utah appears in her inverted application of the five-factor *Peay* test. The *Peay* Test, as discussed above, considers five factors to determine whether a defendant has successfully argued a "constitutionally significant inconvenience" that would result from personal jurisdiction derived from nationwide service of process. *Peay*, 205 F.3d at 1212.

Ms. Van Ornum applies these factors to argue why jurisdiction lies in Utah rather than another location such as Hawaii. Specifically Ms. Van Ornum writes:

> 79. Ms Van Ornum, Mr Kurihara and Mrs Kurihara allege that personal jurisdiction and venue accords with Fifth Amendment minimal constitutional requirement (28 USC §1331) and constitutional significant inconvenience for both Ms Van Ornum and Defendants' class in that:
>> 1)  Any other forum is gravely difficult and inconvenient for Ms Van Ornum because she has no contact with other forum, other than consequential;
>> 2)  It has been futile under the circumstantial comparisons;
>> 3)  judicial economy is practical in this forum concerning the events thus far in that to timely file, she needs to travel to the Courthouse to file;

4) Discovery will probably likely occur primarily in Utah where the association and corporate defendants do substantive, continuous and systematic business affairs herein, therefore they will have access to the laboratory tests et seq. for burden of demonstration since Utah defendants destroyed our medical and dental records knowing, willful and purposefully (18 USC §1592), to obstruct enforcement of Sherman and Clayton Acts and Racketeering Influence and Corrupt Organization Act violations (15 USC §§1, 2, 3(a)(b), 15(a); 18 USC §1964(c));

5) Hawaii is furtherance and expensive compare to Utah; and

6) Hawaii defendants denied due process with equal protection of the law, when Ms Van Ornum was a resident and a non resident in 2012;

7) Any defendants' gross income and tax liabilities make traveling and attorney's fee a drop in the bucket compare to Ms Van Ornum's gross income and tax liabilities[.]

(Am. Compl. ¶79, ECF No. 98.)

Although litigation in other venues may well burden Ms. Van Ornum, in terms of time and expense, she misses the point of the minimum contacts due process analysis. For the Court to exercise personal jurisdiction over Dr. Goodhue, doing so must be "fair and just" to Dr. Goodhue, not Ms. Van Ornum. *See Dudnikov*, 514 F.3d at 1070 (explaining due process consideration focuses on fairness to the defendant). Because Ms. Van Ornum, as Plaintiff, chooses the forum, the Court can assume its fairness as to her.

Ms. Van Ornum also argues Dr. Goodhue's specific contacts connected to this lawsuit, discussed above in the context of specific jurisdiction, as support for Dr. Goodhue having continuous and systematic contacts with Utah. (Am. Compl. ¶ 178, ECF No. 98.) However, establishing general jurisdiction requires significantly more contacts than establishing specific jurisdiction. Therefore, allegations regarding Dr. Goodhue's refusal to accept service fail to garner general jurisdiction over Dr. Goodhue. Responding or not responding to service with a legal case does not indicate that a defendant acts as if the forum state is his home. Indeed, Dr. Goodhue's actions suggest just the opposite as he has continuously resisted this Court's assertion

of jurisdiction.  (*See* Mot. to Dismiss Compl., ECF No. 66; Mot. to Dismiss Am. Compl. ECF No. 1*00.*)

Ms. Van Ornum fails to alleged facts sufficient for the Court to find general jurisdiction over Dr. Goodhue.  Absent any showing of activities "so constant and pervasive" as to make Dr. Goodhue "at home" in Utah, the undersigned cannot find general jurisdiction.  *See Daimler*, 134 S. Ct. at 751 (quoting standard).

In conclusion, for the Court to have personal jurisdiction over Dr. Goodhue under Utah's Long-Arm Statute, the Amended Complaint must provide some grounds for a finding of minimum contacts with Utah.  *See OMI Holdings*, 149 F.3d at 1091 (requiring minimum contacts for exercise of personal jurisdiction).  The Amended Complaint fails to allege Dr. Goodhue has minimum contacts with Utah.  Therefore, the undersigned RECOMMENDS the District Judge dismiss the remaining claims against Dr. Goodhue for lack of personal jurisdiction.

## RECOMMENDATION

For the reasons stated above, the undersigned RECOMMENDS the Court dismiss Ms. Van Ornum's RICO claim against Dr. Goodhue for failure to state a claim, dismiss Ms. Van Ornum's remaining claims for lack of personal jurisdiction, and grant Defendant's Motion to Dismiss (ECF No. 1*00*).

The Court will send copies of this Report and Recommendation to the parties who the Court hereby notifies of their right to object to the same.  The Court further notifies the parties that they must file any objection to this Report and Recommendation with the clerk of the court, pursuant to 28 U.S.C. § 636(b) and Rule 72(b), within fourteen (14) days of service  thereof. Failure to file objections may constitute waiver of objections upon subsequent review.

DATED this 13th day of March, 2017.


BY THE COURT:


EVELYN J. FURSE
United States Magistrate Judge