IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SANDRA C.K. VAN ORNUM,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN MEDICAL ASSOCIATION, *et al.*,<br><br>Defendants. | **REPORT AND RECOMMENDATION: AMERICAN MEDICAL ASSOCIATION, AMERICAN DENTAL ASSOCIATION, AMERICAN HOSPITAL ASSOCIATION MOTION TO DISMISS (ECF No. 101)**<br><br>Case No.  2:14-cv-921-RJS-EJF<br><br>District Judge Robert J. Shelby<br>Magistrate Judge Evelyn J. Furse |

Defendants American Medical Association, American Dental Association, and American Hospital Association (the Associations) collectively filed their Motion to Dismiss, requesting the Court to dismiss *pro se* Plaintiff Sandra C.K. Van Ornum's claims pursuant to Federal Rules of Civil Procedure (Rules) 8(a), 12(b)(2), (5), and (6).  (ECF No. 101.)  Based on the allegations presented in the Amended Complaint, (Am. Compl., ECF No. 98), the undersigned finds personal jurisdiction over the Associations based on Ms. Van Ornum's Racketeer Influenced and Corrupt Organizations (RICO) and antitrust claims.  However, Ms. Van Ornum fails to state either claim plausibly and the undersigned RECOMMENDS the Court[1] dismiss the RICO and antitrust claims pursuant to Rule 12(b)(6).  The undersigned finds no basis to exercise personal jurisdiction over the Associations for the remaining claims.  Therefore, the undersigned RECOMMENDS the Court dismiss these claims without prejudice pursuant to Rule 12(b)(2).[2]  Alternately, the District Judge could dismiss the Amended Complaint as untimely because Ms. Van Ornum submitted her

---

[1] On January 5, 2015, District Judge Robert J. Shelby referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B).  (ECF No. 3.)

2 Pursuant to D.U. Civ. R. 7-1(f), the undersigned finds oral argument unnecessary and will make its recommendation based on the Amended Complaint and written memoranda.

1

Amended Complaint outside the thirty-day refiling window granted in the District Judge's Order. (ECF No. 86.)  The undersigned LIFTS the stay, (ECF No. 177), as to the Associations upon the filing of this Report and Recommendation.

## BACKGROUND

On December 22, 2014, Ms. Van Ornum filed a *pro se* Complaint against the American Medical Association (AMA), American Dental Association (ADA), American Hospital Association (AHA), Monsanto Company (Monsanto), Eli Lily and Company (Eli Lily), Pfizer Inc. (Pfizer), Abbott Laboratories (Abbott), Allergan Inc. (Allergan), Hawaii Pacific Health System (Hawaii Pacific), Kuakini Health System (Kuakini), and Dr. William Goodhue (Dr. Goodhue).  (ECF No. 1.)  On March 24, 2015,  Ms. Van Ornum filed an Amended Complaint prior to service of any Defendant.  (ECF No. 4.)    A few days later, Ms. Van Ornum filed a Motion for Leave to File Amended Complaint, (ECF No. 5), which the undersigned granted. (ECF No. 6.)  Following that order, Ms. Van Ornum filed the Amendment to Amended Complaint.  (ECF No. 7.)  Defendants then began filing Motions to Dismiss.  (Eli Lily and Pfizer, ECF No. 9; Hawaii Pacific, ECF No. 14 & 39; AMA, ADA, and AHA, ECF No. 23; Allergan, ECF No. 29; Kuakini, ECF No. 36; Abbott, ECF No. 45; Monsanto, ECF No. 46; Dr. Goodhue, ECF No. 66.)

Subsequently, the undersigned issued a Report and Recommendation as to all then pending Motions to Dismiss, finding the Court lacked personal jurisdiction over all claims. (Report & Recs., ECF No. 75.)  The District Judge granted each Motion to Dismiss for lack of jurisdiction, with the exception of the antitrust claims, which the District Judge dismissed for failure to comply with Rule 8(a) pleading standards.  (*See* Order, ECF 86.)

After dismissing all claims without prejudice, the District Judge offered Ms. Van Ornum

the opportunity to amend her Complaint.  (*Id.*)  Ms. Van Ornum filed the current operative

Complaint (the Amended Complaint) on May 4, 2016.  (Am. Compl., ECF No. 98.)  On May 18,

2016, the Associations filed a Motion to Dismiss the Amended Complaint.  (ECF No. 101.)  On

June 2, 2016, the Court granted Ms. Van Ornum an extension until June 29, 2016 to respond to

the Motion.  (ECF No. 109.)  On June 29, 2016, Ms. Van Ornum responded to the Associations'

Motion, (Opp'ns to ECF Nos. 100, 101, Mot. to Strike; Extend Time to Oppose DKT No. 102,

ET SEQ. Mots. to Dismiss (Opp'n), ECF No. 114), and on July 28, 2016, the Associations filed

their Reply, (ECF No. 127).  On July 14, 2016, August 3, 2016, and September 12, 2016, Ms.

Van Ornum filed additional memoranda in opposition referring to this Motion as well as others.

(ECF Nos. 121, 129, 168.)  The Rules permit one opposition absent leave of the Court.  DU Civ.

R. 7-1(b)(2)(A).  As Ms. Van Ornum did not have leave of the Court to file these additional

oppositions, the undersigned did not consider them.

   Ms. Van Ornum's Amended Complaint contains a potpourri of allegations.  From what

the undersigned can gather, Ms. Van Ornum alleges Dr. Goodhue, acting either independently or

as part of the larger (and indefinite) "Defendants' Class", violated numerous constitutional

protections and federal statutes.  Constitutional violations include:  the Privileges and Immunities

Clause (14th Amendment), the Due Process Clause (14th Amendment), the Equal Protection

Clause (14th Amendment), provisions against slavery and involuntary servitude (13th

Amendment), Freedom of Speech (1st Amendment), Freedom of Assembly (1st Amendment),

and Freedom of the Press (1st Amendment).

   Alleged statutory violations include:  18 U.S.C. § 1851 (peonage), 42 U.S.C. § 2000bb-1

(Religious Freedom Restoration Act), 15 U.S.C. § 45 (unfair or deceptive acts or practices (FTC

Act § 5a)), 15 U.S.C. § 1-3 (Sherman Antitrust Act), 15 U.S.C. § 15 (Clayton Antitrust Act), 18

U.S.C. § 1959 (violent crimes in aid of racketeering activity), 18 U.S.C. § 1961 (RICO), and 18 U.S.C. § 1958 (use of interstate facilities in murder for hire).

When this Court issued its first Report and Recommendation, it noted, "Ms. Van Ornum's copious use of … abbreviations makes her Complaint extremely difficult to understand." (Report & Recs. 2, ECF No. 75.) The Court further struggled with Ms. Van Ornum's dense web of alleged facts, claims, and tangled narrative. Ms. Van Ornum dedicated a large portion of the Complaint to her and her parent's medical histories, a chronology beginning in 1900 and continuing through 2013, touching on events in Hawaii, Guam, the Philippines, and Vietnam. (*Id.* at 4.) Ms. Van Ornum directed most allegations of illegality at Defendants generally, as a broad and shadowy conspiratorial class. (*Id.*) The Complaint made little effort to connect specific factual statements to specific Defendants. (*Id.*)

Ms. Van Ornum has made some improvements between the Complaint discussed in the first Report and Recommendation and the Amended Complaint at issue. Notably, Ms. Van Ornum eliminated the abbreviations. Unfortunately, the allegations remain difficult to follow. Ms. Van Ornum still fails to connect specific facts and claims to specific Defendants, instead making grand assertions against "Defendants' class."

Essentially, Ms. Van Ornum objects to modern medicine, modern agriculture, and modern civilization to the extent these systems run contrary to her "knowledge of our Creator's laws of health." (Am. Compl. 4, ECF No. 98.) "Defendants' class" operates a monopolistic force behind these modern systems, maintaining and growing their power at the expense of "our body and its business department." (*Id.* at 3.) Preservation of such a huge monopoly requires innumerable and unending acts; three highlights from Ms. Van Ornum's perspective include the creation of the United States Department of Health, Education, and Welfare in 1953, the passage

of "the Obama health reform," and the "IRS penalty laws."  (Am. Compl. 8, 10, ECF No. 98.)
While Ms. Van Ornum's Amended Complaint only names fourteen specific Defendants, the
entire conspiracy consists of "all pharmaceutical and chemical corporations, partnerships,
associations, health care providers who are individuals, group of individuals, facilities, hospital
and clinics."  (Am. Compl. 3, ECF No. 98.)  Ms. Van Ornum believes that if this group stopped
providing/forcing things like fluoridated water, medical surgeries, pharmaceuticals, and
chemically supported agriculture, and if people returned to the practices of health and nutrition
supported by her readings of the Old Testament and various other spiritual texts, everyone would
live for over 900 years.  (*Id.* at 3-6.)  According to Ms. Van Ornum, Defendants' Class
propagates its systems, prevents exercise of true health practices, and in doing so robs people
generally, and her parents and herself in particular, of good health and ninety percent of their life
expectancy.  (*Id.* at 3-4, 9.)

## DISCUSSION

The Associations offer four grounds for dismissing Ms. Van Ornum's Amended
Complaint: (1) Ms. Van Ornum filed the Amended Complaint late and failed to comply with the
Court's pleading instructions, (2) the Court lacks subject matter jurisdiction, (3) the Court lacks
personal jurisdiction, and (4) the Amended Complaint fails to state a claim upon which the Court
can grant relief.  (Mot. to Dismiss 2-9, ECF No. 101.)

### I.  MS. VAN ORNUM FILED HER AMENDED COMPLAINT LATE

Ms. Van Ornum's Amended Complaint arrived late, according to the time provided in the
District Judge's March 30, 2016 Order.  (Order 10, ECF No. 86 ("The court grants Ms. Van
Ornum leave to amend her complaint within thirty (30) days of this Order, in accordance with
the guidance provided above.  Failure to do so will result in the dismissal of this case with

prejudice.").)  The Order gave Ms. Van Ornum thirty days to file her Amended Complaint.

Excluding the entry date of the Order, Fed. R. Civ. P. (6)(a)(1)(A), Ms. Van Ornum's Amended

Complaint came due April 29, 2016.  Ms. Van Ornum hand delivered her Amended Complaint to

the clerk's office on May 4, 2016.  (Am. Compl., ECF No. 98 (Certificate of Service).)  Thus, the

Court could dismiss the Complaint with prejudice based on the prior Order, (ECF No. 86).

Ms. Van Ornum incorrectly argues that Rule 6(d) applies.  (Opp'n 5-6, ECF No. 114.)

Rule 6(d) states that, "[w]hen a party may or must act within a specified time after being served

and service is made under Rule 5(b)(2)(C) (mail), …, 3 days are added after the period would

otherwise expire under Rule 6(a)."  Fed. R. Civ. P. 6.  Rule 6(d) does not cover this situation,

because the thirty-day period unambiguously ran from the date of the Order, not "after being

served."  Even if Rule 6(d) applied, Ms. Van Ornum nonetheless filed her Amended Complaint

late.  Thirty-three days from the date of the Order, ignoring the Order's entry date, would fall on

May 2, 2016.  Ms. Van Ornum filed her Amended Complaint late on May 4, 2016.  Given Ms.

Van Ornum's *pro se* status, the undersigned proceeds as if Ms. Van Ornum filed her Amended

Complaint on time.

The Associations assert that the Court lacks personal jurisdiction over them and subject

matter jurisdiction over Ms. Van Ornum's claims, therefore the Court must first address these

arguments before reaching the merits of Ms. Van Ornum's Amended Complaint.  After

explaining the undersigned's conclusion that jurisdiction exists over Ms. Van Ornum's RICO

and antitrust claims, this Report will explain why neither successfully states a claim upon which

the Court may grant relief.  Finally, the Report will discuss why the Court lacks personal

jurisdiction over the remainder of Ms. Van Ornum's claims.

## II.  THIS COURT HOLDS SUBJECT MATTER JURISDICTION OVER MS. VAN ORNUM'S CLAIMS

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83 (1998)).  The Associations dispute the Court's jurisdiction; therefore, the undersigned must decide these issues before turning to the merits of Ms. Van Ornum's Amended Complaint.

The Associations argue that the Court lacks subject matter jurisdiction because of the insubstantiality of Ms. Van Ornum's federal claims.  (Mot. 5-6, ECF No. 101.)  In 1974, the Supreme Court provided:

> Over the years this Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are "so attenuated and unsubstantial as to be absolutely devoid of merit," *Newburyport Water Co. v. Newburyport*, 193 U.S. 561… (1904); "wholly insubstantial," *Bailey v. Patterson*, 369 U.S. 31, 33… (1962); "obviously frivolous," *Hannis Distilling Co. v. Baltimore*, 216 U.S. 285, 288 … (1910); "plainly unsubstantial," *Levering & Garrigues Co. v. Morrin*, 289 U.S. 103, 105 … (1933); or "no longer open to discussion," *McGilvra v. Ross*, 215 U.S. 70, 80 … (1909).

*Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974); *see also Wiley v. Nat'l Collegiate Athletic Ass'n*, 612 F.2d 473, 476–77 (10th Cir. 1979) (applying *Hagans* to determine plaintiff's alleged personal interest was not substantial enough to merit federal jurisdiction).  The Associations do not contest that private causes of action rooted in the federal antitrust statutes, RICO, 42 U.S.C. § 1983, and the like garner federal question jurisdiction.  Rather, the Associations point to the Amended Complaint's more far-reaching assertions, for example that Defendants' Class created the U.S. Department of Health and Welfare in furtherance of the modern medicinal conspiracy, as evidence of "bizarre conspiracy theories" best dismissed sua sponte.  (Mot. 6. ECF No. 101

7

(citing *Watson v. United States*, No. 09–0268, 2009 WL 377136, *1 (D.D.C. Feb. 13, 2009)).

However, this Circuit has a history of reading federal claims generously.  *See Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1240 (10th Cir. 2001) (reviewing liberal definitions of what constitutes "colorable federal claims"); *see also Coando v. Coastal Oil & Gas Corp.*, 44 F. App'x 389, 395–96 (10th Cir. 2002) (unpublished).  This generosity expands for *pro se* litigants, "who may lack the legal training necessary to allege any more than facts sufficient to describe his or her alleged injury."  *Coando*, 44 F. App'x at 395–96; *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1073 (10th Cir. 2008) (discussing "the solicitous construction due a *pro se* filing").  "[M]ere allegations as to the presence of an unspecified federal question is generally insufficient to meet this burden."  *Coando*, 44 F. App'x at 396.  The Amended Complaint, in contrast, specifically identifies the federal questions by name.

Based on this Circuit's liberal reading of "colorable" when determining whether a federal claim exists and the expansive reading afforded to *pro se* filings, the undersigned RECOMMENDS the District Judge find subject matter jurisdiction over Ms. Van Ornum's claims.

## II.   WHILE THIS COURT HOLDS PERSONAL JURISDICTION OVER MS. VAN ORNUM'S ANTITRUST CLAIMS, THE ANTITRUST CLAIMS FAIL TO STATE A CLAIM UNDER RULE 12(b)(6)

### A.  Personal Jurisdiction Exists Over the Antitrust Claims

As the Plaintiff, Ms. Van Ornum "bears the burden of establishing personal jurisdiction over the defendant[s]."  *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996) (quoting *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984)).  To meet this burden on a motion to dismiss where the Court receives only affidavits and written materials, Ms. Van Ornum need only make a prima facie showing of personal jurisdiction.  *Id.*

"The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant[s]." *OMI Holdings, Inc. v. Royal Ins. Co*., 149 F.3d 1086, 1091 (10th Cir. 1998).  The undersigned takes as true all "plausible, non-conclusory, and non-speculative" facts and resolves factual disputes in favor of Ms. Van Ornum.  *Dudnikov*, 514 F.3d at 1070 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-6 (2007)).

Ms. Van Ornum appears *pro se*; thus, the Court must liberally construe her pleadings.  *See id.* at 1073 (acknowledging "solicitous construction due a pro se filing").  However, the Court cannot act as an advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) ("[T]his court has repeatedly insisted that *pro se* parties follow the same rules of procedure that govern other litigants.") (quoting *Garrett v. Selby, Connor, Maddux & Janer,* 425 F.3d 836, 840 (10th Cir. 2005)).

A federal court considering whether it has personal jurisdiction over a defendant must decide "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."  *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)).

Ms. Van Ornum alleges that Defendants' class injured her "business and property" and seeks "tremble damages, costs, fees and simple interest" under the Clayton Antitrust Act.  (*See* Am. Compl. 43, ECF No. 98.)  15 U.S.C. § 15(a) provides:

> [a]ny person . . . injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United

States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

To facilitate enforcement of the federal antitrust laws, 15 U.S.C. § 22 authorizes expansive venue and service of process on a corporate defendant:

Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

Thus, the Clayton Act provides for nationwide service of process against defendant corporations in private civil antitrust suits.  *See, e.g., Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 422 (2d Cir. 2005) (reading § 22 to permit worldwide service of process); *In re Auto. Refinishing Paint Antitrust Litig.*, 358  F.3d 288, 293 (3d Cir. 2004) ("It is undisputed that the second clause authorizes nationwide, indeed worldwide, service of process on a defendant corporation in federal antitrust litigation."); *Phone Directories Co. v. Contel Corp.*, 786 F. Supp. 930, 942 (D. Utah 1992) ("[S]ervice of process is authorized by the nationwide service of process provision at § 12 of the Clayton Act.").  Ms. Van Ornum alleges the Associations are corporations.  (Am. Compl. ¶¶ 57-59, ECF No. 98.)  Ms. Van Ornum makes these allegations under oath.  (Decl. under Penalty of Perjury, ECF No. 99.)  The Associations submit no contradictory evidence and make an ambiguous assertion that one could read as either the Associations are not incorporated or that they are not incorporated in Utah.  (Mot. 7, ECF No. 101; Reply 5, ECF No. 127.)  To contest Ms. Van Ornum's sworn allegations, "a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"  *See OMI*, 149 F.3d at 1091 (explaining jurisdictional contest on a motion to dismiss) (quoting *Burger King*, 471 U.S. at 477).  An ambiguous assertion without more, fails to

present a compelling case.  The undersigned takes Ms. Van Ornum's allegation about

incorporation as true.

A circuit split continues as to when 15 U.S.C. § 22 authorizes nationwide service of

process.  *See* 1B Phillip E. Areeda & Herbert Hovenkamp,  Antitrust Law ¶ 271d (4th ed. 2013)

(discussing circuit split); Robert L. Haig, Bus. &  Commercial Litig. in Fed. Cts. § 67:57 (3d ed.

2011) (same).  Under an "integrated whole" reading of § 22, the D.C., Second, and Seventh

Circuits contend venue must be proper before nationwide service of process may proceed.  *KM*

*Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 725-30 (7th Cir. 2013); *GTE New Media*

*Services Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000); *Daniel*, 428 F.3d at 423–

24.  The alternate or "independent" reading of the provision, adopted by the Third and Ninth

Circuits, allows nationwide service of process without requiring proper venue under § 22.  *In re*

*Auto.*, 358 F.3d at 294–97; *Action Embroidery Corp. v. Atl. Embroidery, Inc.*,  368 F.3d 1174,

1178–80 (9th Cir. 2004).  Under this "independent" interpretation, the second clause of § 22

refers back to the first clause ("all process in such cases may be served…"), but not the entirety of

the first clause – "such cases" indicates "[a]ny suit, action, or proceeding under the antitrust laws

against a corporation," not "any suit, action or proceeding…[brought in the proper district]."  *See*

*Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1412 (9th Cir. 1989) ("'[S]uch' is always

presumed to refer back to that noun as it appeared previously in the text; 'such' does not modify

other clauses or nouns.") (discussing *Gen. Elec. Co. v. Bucyrus-Erie Co.*, 550 F. Supp. 1037,

1042 n. 7 (S.D.N.Y. 1982)).

Furthermore, an independent reading of § 22 accords more readily with the longstanding

distinction between personal jurisdiction and venue.  *See Leroy v. Great W. United Corp.*, 443

U.S. 173, 180 (1979) ("The question of personal jurisdiction, which goes to the court's power to

exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum."); *Action Embroidery Corp.*, 368 F.3d at 1178–79 ("It has long been recognized that the question of a federal court's competence to exercise personal jurisdiction over a defendant is distinct from the question of whether venue is proper."). The Ninth Circuit articulated this reasoning in *Action Embroidery Corp.*, "[t]he juxtaposition of the venue and service of process provisions … without more, does not convince us that Congress intended to make these concepts analytically interdependent, rendering a court's exercise of personal jurisdiction over an antitrust defendant dependent on the propriety of venue." 368 F.3d at 1179.

The undersigned finds the latter interpretation of § 22 persuasive. The second clause of 15 U.S.C. § 22 authorizes nationwide service of process, regardless of venue requirements of the first clause.

Having determined that 15 U.S.C. § 22 authorizes nationwide service of process, the Court turns to the final step of personal jurisdiction analysis, "'whether exercise of jurisdiction comports with due process.'" *Trujillo*, 465 F.3d at 1217 (quoting *Peay*, 205 F.3d at 1209 (10th Cir. 2000)). Where a plaintiff brings a federal question under a statute providing nationwide service of process,

> "the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant." To defeat federal jurisdiction, a *defendant* must establish that the "chosen forum will make litigation ... gravely difficult and inconvenient" or, in other words, the forum district burdens the defendant with "constitutionally significant inconvenience." We look to non-exclusive factors in considering whether defendants have met this burden, such as (1) the extent of contact with the forum state, (2) the inconvenience of having to litigate in a foreign jurisdiction, (3) judicial economy, (4) the probable situs of the discovery proceedings, and (5) the nature of the defendant's activities and its impact beyond his state's borders.

*Klein v. Cornelius*, 786 F.3d 1310,  1318 (10th Cir. 2015) (quoting *Peay*, 205 F.3d at 1212)

(emphasis added).

The AMA, ADA, and AHA failed to address personal jurisdiction under the antitrust laws in their original Motions to Dismiss, (Report & Recs. 12, ECF No. 75), and they again fail to address the issue in their response to Ms. Van Ornum's Amended Complaint. (Mot. to Dismiss 5-7, ECF No. 101.) The AMA, ADA, and AHA have not addressed why personal jurisdiction over Ms. Van Ornum's antitrust claims infringes their interests, and the Court will not *sua sponte* relieve Defendants of the burden of showing "constitutionally significant inconvenience." (*See* Order 7, ECF No. 86); *Peay*, 205 F.3d at 1212 (discussing a defendant's burden).

Section 22 authorizes nationwide service of process, regardless of the venue's propriety. Additionally, in the absence of an affirmative showing of "constitutionally significant inconvenience," personal jurisdiction comports with due process. Therefore, the undersigned RECOMMENDS finding personal jurisdiction exists over the Associations based on 15 U.S.C. § 22.

## B. Ms. Van Ornum Fails to State a Cognizable Antitrust Claim Under Rule 12(b)(6)

If the District Judge adopts the undersigned's analysis of personal jurisdiction arising from the antitrust statutes, the undersigned nonetheless recommends dismissal of the antitrust claims under Rule 12(b)(6) for failure to state a claim.

The Court construes *pro se* pleadings liberally and holds them to a "less stringent standard." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation omitted)). A *pro se* plaintiff's claims should survive a 12(b)(6) motion, "despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence

construction, or his unfamiliarity with pleading requirements." *Id.* (quoting *Hall v. Belmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  Regardless, even a *pro se* plaintiff must "'set forth plausible claims' animating the elements of her causes of action." *See Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Whether a plaintiff's claims rise to the threshold of plausible depends on the factual allegations presented within the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").  "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall*, 935 F.2d at 1110.  The Court will disregard legal allegations masquerading as factual allegations. *Twombly*, 550 U.S. at 554–56 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  If a *pro se* party has not alleged sufficient facts to support a legal theory, courts will not fill in the factual gaps. *Smith*, 561 F.3d at 1096 (citing *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997)).

Should a plaintiff's original complaint miss "important element[s] that may not have occurred to him," the court will grant leave to amend. *Hall*, 935 F.2d at 1110.  After providing an opportunity to amend, a court may properly dismiss with prejudice only upon concluding that further opportunity to amend would prove "futile." *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010).

The District Judge dismissed all antitrust claims in Ms. Van Ornum's Complaint without prejudice under Rule 12(b)(6) because Ms. Van Ornum's claims failed to comply with Rule 8(a)(2):  "a short and plain statement of the claim showing that the pleader is entitled to relief."

(Order 7-9, ECF No. 86.)  Ms. Van Ornum's Amended Complaint fails to solve this problem.

Put in the best possible light, Ms. Van Ornum alleges the Associations belong to a class of Defendants, who conspire to withhold knowledge of the true nature of our bodies, provide harmful food, drink, pharmaceuticals, products, and medical and dental procedures, and lobby to pass laws with the intent of preventing Ms. Van Ornum and her parents from spreading their message of a much longer life possible through alternative means.  (*See* Am. Compl. 8-10, ECF No. 98.)  Through this conspiracy, the Defendants force the general public, including Ms. Van Ornum, to buy unhealthy food, submit to unhealthy medical procedures, take unhealthy medications, and drink unhealthy water that leads to a reduce life expectancy and financially benefits the Defendants.  *Id.*

Ms. Van Ornum fails to allege the facts necessary to support antitrust claims.  The keystone of any 15 U.S.C. § 1 claim lies in the demonstration of "an agreement, tacit or express." *Twombly*, 550 U.S. at 553–54 (2007) (quoting *Theatre Enter., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 542 (1954)).  Independent parallel business behavior may provide admissible circumstantial evidence but standing alone fails to establish an agreement.  *Id.*  Ms. Van Ornum asserts that the AMA and ADA lobby for, protect, produce, and license the medical professionals who propagate the conspiracy of modern medicine and dental hygiene.  (Am. Compl. 15, ECF No. 98.)  The AHA, on the other hand, "produce et. seq., territorial-base interstate commerce facilities."  (*Id.*)  Ms. Van Ornum includes few direct references to the Associations in the Amended Complaint.  From what the undersigned can gather, the Associations have some hand in the medical standards and concepts that suppress Ms. Van Ornum's alternate theories.  Therefore, to the extent Ms. Van Ornum alleges an agreement, she alleges an agreement exists between the Associations and every associated medical professional

or facility.  This vast network of entities has agreed upon every point of modern medicine that contradicts Ms. Van Ornum's alternate approach and does so for the express purpose of keeping humanity in a condition of suffering and "peonage."  (Am. Compl. 4, ECF No. 98.)  The undersigned concludes that Ms. Van Ornum has not provided the basic factual allegations necessary to establish evidence of an agreement under 15 U.S.C. § 1.  The allegations Ms. Van Ornum includes require such suspension of incredulity as not to deserve assumption of truth, even at the Motion to Dismiss stage of litigation.  *See Dudnikov,* 514 F.3d at 1070 (noting need to take *plausible* factual allegations as true.)  The antitrust claims fail under 15 U.S. C. § 1.[3]

A 15 U.S.C. § 2 claim requires allegations of:  (1) the monopoly, (2) the relevant market, (3) the misconduct, and (4) a connection between the misconduct and harm to competition in the relevant market.  *Duty Free Americas, Inc. v. Estee Lauder Co., Inc.*, 797 F.3d 1248, 1262–64 (11th Cir. 2015) (explaining in detail the allegations necessary to state a claim for attempted monopolization under § 2).  Ms. Van Ornum's allegations do not, and cannot, map onto this basic framework as to the Associations.  The Complaint alleges a monopoly between anyone with a hand in modern medicine, agriculture, or health generally, the relevant market includes the whole world, and the harm results from the monopolists depriving all people of their natural life expectancy of 900 years.  (Am. Compl. ¶¶ 8, 12-13, ECF No. 98.)  Again, the extreme implausibility of these claims – the notion of collusion on an impossibly large scale, the assertion that without modern antibiotics, surgery and nutrition we would live centuries longer – does not allow for a 15 U.S.C. § 2 claim.

A *pro se* plaintiff must "'set forth plausible claims' animating the elements of her causes

---

[3] 15 U.S.C. § 3 effectively applies 15 U.S.C. § 1 to the District of Columbia and the United States territories.  Thus to the extent Ms. Van Ornum asserts claims under this statute, they suffer from the same plausibility defects as the 15 U.S.C. § 1 antitrust claims discussed above.

of action." *See Burnett*, 706 F.3d at 1236 (quoting *Iqbal*, 556 U.S. at 678). Ms. Van Ornum falls short of this burden and for the above reasons the undersigned RECOMMENDS the District Judge dismiss Ms. Van Ornum's antitrust claims pursuant to Rule 12(b)(6).

### III. WHILE PERSONAL JURISDICTION OVER THE ASSOCIATIONS EXISTS BASED ON MS. VAN ORNUM'S RICO CLAIM, THE RICO CLAIM FAILS TO STATE A CLAIM ON WHICH THE COURT CAN GRANT RELIEF

#### A. Personal Jurisdiction Exists Over the RICO Claims

Similar to the antitrust laws, RICO contains a nationwide service of process provision. 18 U.S.C. § 1965(b). Whether Ms. Van Ornum may properly hale the Associations into the District of Utah through RICO's nationwide service of process provision depends on three findings. First, "personal jurisdiction based on minimum contacts [must be] established as to at least one defendant." *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1230-31 (10th Cir. 2006) (quoting *PT United Can Co. v. Crown Cork & Seal Co*., 138 F.3d 65, 71 (2d Cir. 1998)). Second, the plaintiff may serve summons on other defendants outside the district if required by the "ends of justice." *Id.* Once the Court makes these findings, it must proceed with an inquiry under the Fifth Amendment to determine whether exercise of jurisdiction over the Associations "comports with Fifth Amendment due process." *See Cory*, 468 F.3d at 1229, 1233 (noting statutory nationwide service of process confers personal jurisdiction, but exercise of that jurisdiction must still meet Fifth Amendment due process requirements).

As to the first finding, the Amended Complaint alleges Intermountain Health Care, Inc., the fourteenth named Defendant and a partner in the RICO conspiracy according to the allegations, is a Utah-based company with its primary place of business and headquarters in Salt Lake City, Utah. (Am. Compl. 17, ECF No. 98.) Therefore, the Court finds minimum contacts exist between at least one Defendant and the District of Utah.

Even with apparent personal jurisdiction over Intermountain Health Care, the RICO

statute will only authorize nationwide service of process upon the Associations if the ends of justice so require.  18 U.S.C. § 1965(b).  The undersigned conducted this analysis as to Defendants collectively in its Report and Recommendation to Dismiss Dr. Goodhue.  (Report & Recs. re ECF No. 100 9-13, ECF No. 208.)  In doing so, it found the ends of justice require nationwide service of process.  (*Id.* at 13.)

Having made the determination that Ms. Van Ornum may use nationwide service of process, the undersigned must consider whether the Fifth Amendment Due Process Clause permits the Court to exercise personal jurisdiction over the Associations.  In *Cory*, 468 F.3d at 1229, the Tenth Circuit endorsed the Fifth Amendment due process analysis set forth in *Peay*, 205 F.3d at 1212.  *Cory*, 468 F.3d at 1229.  As noted above, *Peay* shifts the burden to defendants to prove that nationwide service of process, otherwise authorized under statute, does not comport with due process.  *Peay*, 205 F.3d at 1212 (applying Fifth Amendment due process analysis after nationwide service of process under Employee Retirement Income Security Act).  The *Peay* test includes a non-exhaustive five-factor analysis used to determine whether a defendant has successfully argued a "constitutionally significant inconvenience" that would result from personal jurisdiction derived from nationwide service of process.  *Id.*

The Associations do not address the Fifth Amendment due process analysis in their Motion.  They do address the failings of the Amended Complaint, arguing Ms. Van Ornum failed to establish the Court's personal jurisdiction over them.  (Mot. 6-7, ECF No. 101.)  However, at this stage, the Associations bear the burden to argue why their appearing in Utah would present a "constitutionally significant inconvenience" as to them.  *See Peay*, 205 F.3d at 1212 (quoting *Republic of Panama v. BCCI Holdings,* 119 F.3d 935, 946 (11th Cir. 1997)) (setting forth defendant's burden).  The Associations make no effort to explain why appearing in Utah would

cause them constitutional harm, why litigating in Utah would prove inconvenient or unconducive to judicial economy.  (Mot. 6-7, ECF No. 101.)  Furthermore, the Associations only cursorily address the potential impact of their actions within Utah.  *Id.* at 7 ("[T]he only connection with Utah and the allegations set forth in the Amended Complaint appears to be a theory that the Association Defendants 'refused' to provide Plaintiff 'with the knowledge of our Creator's law of health'" (quoting Am. Compl. ¶¶ 92, 101, 113, ECF No. 98).)  The five factors of *Peay* are non-exclusive, and a "constitutionally significant inconvenience" could presumably exist without a defendant rigorously arguing all five factors.  *Peay*, 205 F.3d at 1212.  However, the burden imposed by *Peay* remains distinct from the Fourteenth Amendment due process arguments of specific and general jurisdiction.  Absent any argument for a "constitutionally significant inconvenience," the Associations fail to demonstrate a Fifth Amendment due process problem. (*See* Order, ECF No. 86 (noting the Tenth Circuit only finds constitutionally significant inconvenience in rare instances)).  The undersigned RECOMMENDS finding personal jurisdiction exists over the Associations based on RICO's service of process provisions.

### B.  Ms. Van Ornum Fails to State a Cognizable RICO Claim Under Rule 12(b)(6)

If the District Judge adopts the undersigned's analysis of personal jurisdiction arising from RICO, the undersigned nonetheless recommends dismissal of the RICO claim under Rule 12(b)(6) for failure to state a claim.

Ms. Van Ornum fails to allege facts sufficient to create any plausible RICO claim.  The Amended Complaint's RICO allegations assert that the Associations, acting in concert with the broad class of Defendants, "commit[ ] continuous and systematic serious injuries and damages to our body and its business department in aid of racketeering activities."  (Am. Compl. ¶ 8, ECF No. 98.)  Defendants' class tricks the public into believing modern agriculture, modern medicine,

and chlorination, among other ingenuities, aid health, when in reality these devices take centuries off our natural life span. (*Id.* at ¶¶ 9-12.) By purposefully withholding "knowledge of our Creator's laws of health," Defendants force humanity into "peonage." (*Id.* at ¶ 15.) The RICO enterprise stoops to the depths of "murder in aid of racketeering activities and use interstate commerce facilities to commission murder-for-hire." (*Id.* at ¶ 7.)

Ms. Van Ornum's Amended Complaint relies on a broad and ill-defined "class" of Defendants. The group involved in the suspected enterprise includes "all pharmaceutical and chemical corporations, partnerships, associations, health care providers who are individuals, group of individuals, facilities, hospital and clinics." (*Id.* at ¶ 8.) This fact alone provides grounds to dismiss the RICO claims. While alleging the existence of an "enterprise" is necessary to state a civil RICO claim, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495–97 (1985) ("A violation of § 1962(c)… requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."); *Boyle v. United States*, 556 U.S. 938, 943–45 (2009) (defining "enterprise"), Ms. Van Ornum sets an impossible task for herself. No imaginable set of facts exists that Ms. Van Ornum can allege (and Ms. Van Ornum alleges few facts) that would tie together every pharmaceutical company, every chemical company, and every single health care provider into a single enterprise.

Even if Ms. Van Ornum successfully alleged her envisioned enterprise, or a more limited enterprise by focusing on the relationship between the Associations and their members, her Amended Complaint fails to establish the other two requisite elements: racketeering activity and a pattern. *See Sedima*, 473 U.S. at 495–97 (identifying "a pattern…of racketeering activity" as a necessary civil RICO element); *see also* 18 U.S.C. § 1962(c). No factual allegations in the Amended Complaint plausibly suggest the Associations engaged in racketeering activity, let

alone a pattern of such actions.  18 U.S.C. § 1961(a)(1) (listing qualifying "racketeering activit[ies]".).  The Amended Complaint alleges murder and murder for hire against both her parents and their fifth child but never makes any plausible factual allegations connecting the Associations to these alleged murders.  (*See* Am. Compl. ¶¶ 7, 36, 54, 97-98, 109, 119, 167, 179, ECF No. 98.)

Ms. Van Ornum's impossibly large set of guilty parties only throws into sharper relief the failings of the Amended Complaint under Rule 8(a).  The Order dismissing the Complaint made clear that, "where there are multiple claims and multiple defendants, Ms. Van Ornum must state her claims in a manner that provides individual defendants fair notice of the claims asserted against them and the grounds upon which those claims rest."  (Order 9, ECF No. 86.)  The Amended Complaint fails to follow these instructions.  The undersigned suspects that Ms. Van Ornum cannot reduce her conspiracy theory to the format necessary to survive a Rule 12(b)(6) motion.

Even the relief Ms. Van Ornum seeks lacks plausibility:  "restore back to the people our Creator's laws of health, privilege or immunities, life, liberty and property, nationwide, for the wellbeing of this promised land."  (Am. Compl. ¶ 185, ECF No. 98.)  Further, the undersigned must acknowledge the extreme implausibility that anyone is actively engaged in a conspiracy to reduce human life expectancy from 900 or more years to 100 or fewer years, let alone in a conspiracy this vast.  To assist the Court, a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and that statement must be plausible.  *Twombly*, 550 U.S. at 570.  Ms. Van Ornum has had multiple opportunities to frame her issues in this manner and has failed to conform to the Rules.  Therefore, the undersigned RECOMMENDS dismissing all RICO and racketeering claims against the

Associations for failure to state a claim.

To the extent Ms. Van Ornum seeks wholesale changes to modern medicine, modern agriculture, and broader society, Ms. Van Ornum may have more success outside the courthouse.

## IV.  NO PERSONAL JURISDICTION EXISTS UNDER UTAH'S LONG-ARM STATUTE

If this Court dismisses Ms. Van Ornum's antitrust and RICO claims, the continued existence of pendant jurisdiction, which could exist if the antitrust or RICO claims remained in the case, becomes suspect.  The Tenth Circuit found abuse of discretion where a district court retained pendant jurisdiction after dismissing an anchor claim prior to trial.  *United States v. Botefuhr*, 309 F.3d 1263, 1274 (10th Cir. 2002).  Here, dismissal of the anchor claims, the antitrust and RICO claims, would occur prior to discovery even beginning.  Therefore, absent another basis for personal jurisdiction, the Court should follow the prudent course and dismiss the remaining claims without prejudice for lack of jurisdiction.  As discussed below, no other basis exists for this Court to exercise personal jurisdiction over the Associations.

Whether the Court holds personal jurisdiction over the Associations absent nationwide service of process, depends on Rule 4(k)(1)(A) and Utah's long-arm statute.  *See Dudnikov*, 514 F.3d at 1070 (noting where federal statutes at issue do not provide nationwide service of process, the court considers the law of the forum state).  Utah's long-arm statute extends to the limits allowed by due process of law, Utah Code Ann. § 78B-3-201(3); *see Dudnikov*, 514 F.3d at 1070 (noting similar Colorado statute confers maximum jurisdiction permitted by due process), and the inquiry turns on whether the exercise of jurisdiction over the Associations comports with the Fourteenth Amendment's Due Process Clause.  *See Klein*, 786 F.3d at 1318 (distinguishing 14th Amendment analysis from 5th Amendment analysis).

Due process requires that, for a court to hold jurisdiction over a nonresident, "minimum

contacts between the defendant and the forum State" must exist. *Trujillo*, 465 F.3d at 1217–18

(quoting *Intercon, Inc. v. Bell Atl. Internet Sol., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)).

"Because a state's sovereignty is territorial in nature, a defendant's contacts with the forum state

must be sufficient such that, notwithstanding its lack of physical presence in the state, the state's

exercise of sovereignty over it can be described as fair and just." *Dudnikov*, 514 F.3d at 1070.

> A plaintiff may demonstrate Fourteenth Amendment minimum contacts in two ways:
>
> First, a court may exercise *specific* jurisdiction if a "defendant has 'purposefully directed' his activities at residents of the forum . . . *and* the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (citations omitted) (emphasis added). Second, a court may exercise *general* jurisdiction where the defendant's contacts, while not rising to the level of the traditional notion of presence in the forum state, are nonetheless "continuous and systematic." *Trierweiler [v. Croxton & Trench Holing Corp.],* 90 F.3d [1523], 1533 [(10th Cir. 1996)] (quoting *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 416 (1984)).

*Kuenzle*, 102 F.3d at 455. If the Court finds it has either specific or general jurisdiction over a

defendant, the case against that defendant satisfies the "minimum contacts" standard. *See OMI*

*Holdings*, 149 F.3d at 1090-91. After a successful finding of minimum contacts, a court must

next analyze whether the exercise of personal jurisdiction over the defendant comports with

"traditional notions of fair play and substantial justice." *Id.* (quoting *Asahi Metal Indus. Co., Ltd.*

*v. Superior Ct.*, 480 U.S. 102, 113 (1987)). The undersigned does not reach this final part of the

test.

### 1.   This Court Lacks Specific Jurisdiction over the Associations

A court may assert specific jurisdiction over a defendant where "the defendant has

'purposefully directed' his activities at residents of the forum, and the litigation results from

alleged injuries that 'arise out of or relate to' those activities." *Burger King v. Rudzewicz*, 471

U.S. 462, 472 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) &

*Helicopteros*, 466 U.S. at 414). When determining whether a defendant has minimum contacts

sufficient to create specific jurisdiction, courts apply a two-part test.  "[F]irst, [ ] the out-of-state

defendant must have 'purposefully directed' its activities at residents of the forum state, and

second, [ ] the plaintiff's injuries must 'arise out of' defendant's forum-related activities."

*Dudnikov*, 514 F.3d at 1071 (citing *Burger King*, 471 U.S. at 472).  In analyzing a defendant's

"purposefully directed" activities, courts look for allegations showing (a) "an intentional action"

by the defendant, (b) "expressly aimed at the forum state", (c) with the defendant's "knowledge

that the brunt of the injury would be felt in the forum state."  *Id.* at 1072; *see accord Walden v.*

*Fiore*, 571 U.S. ____, 134 S. Ct. 1115, 1122 (2014).  Specific jurisdiction must arise from

"actions by the defendant and not [from] events that are the result of unilateral actions taken by

someone else."  *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th

Cir. 2004).  In addition, a plaintiff's  allegations must demonstrate that the alleged injuries "arise

out of" the defendant's forum-related activities by showing a causal link between the defendant's

contacts and the injuries at issue. *Dudnikov*, 514 F.3d at 1078–79.  This factor puts the "specific"

into specific jurisdiction.

The undersigned's original Report and Recommendation found Ms. Van Ornum failed to

allege any facts capable of suggesting that the AMA, ADA, or AHA had purposefully directed

actions towards Utah or that a causal link existed between any such actions and Ms. Van

Ornum's alleged injuries.  (Report & Recs. 15-17, ECF No. 75.)  Ms. Van Ornum's Amended

Complaint again fails to make sufficient allegations for specific jurisdiction to attach.

In her argument for specific jurisdiction, Ms. Van Ornum hardly proceeds beyond mere

recitation of the basic elements.  The Amended Complaint states:

> 78. Ms Van Ornum allege that personal jurisdiction and venue accords with Utah
> Long Arm Statute (UCA §78b-3-201 (3)) and Fourteenth Amendments due
> process minimal contact because:
> a) First, nonresident defendants purposefully direct their activities at residents of

their forum which consequentially extend outside their territory at residents in Utah, just as if Utah defendants did not conspire with nonresident defendants they would consequentially extend outside of their territory to the benefit of residents of other forum states, and 42 USC §2000bb-1 (b) demonstration relief and pecuniary relief results from alleged injuries that arise out of or relate to those allege multidistrict antitrust racketeering conspiracy activities[.]

(Am. Compl. 19-20, ECF No. 98.)  This paragraph offers no factual allegations to support intentional action by any of the Associations.  The topic of the AMA's actions in Utah surfaces once more towards the end of the Amended Complaint:

92. Ms Van Ornum allege that after the American Medical Association is incorporated in 1897, organize Defendants' class, refuse to provide us with the knowledge of the constitution, nature and usage of their health plan and the knowledge of the constitution, nature and usage of our Creator's health plan and did so in territory of Hawaii from 1897, in Utah from 1940, in the Department of Defense military bases in Guam from 1940 - 1953, and refuse to provide the means to choose wholesome herbs and fruits and emergency herbal services (15 USC §3(a)(b))[.]

(Am. Compl. 28, ECF No. 98.)  To the extent this paragraph successfully alleges intentional action by the AMA, these actions do not constitute legally actionable offenses:  The AMA has not created a legally cognizable injury in Utah.  *Dudnikov*, 514 F.3d at 1072.  Therefore, the Amended Complaint contains insufficient allegations to amount to specific jurisdiction over the AMA, ADA, or AHA.

With an opportunity to clarify the specific jurisdiction argument in her Response, Ms. Van Ornum writes:

56. Personal jurisdiction based on minimum contacts is established as to American Medical Dental Associations, Monsanto, Eli Lilly et al. principle place of business is not in Utah but these purposefully directed his activities at residents of the forum through "modern institutional medical care" "engage in [interstate] commerce" directed at residents in Utah including Ms Van Ornum (Dkt. Nos. 86, at 1 and 75. 4,) and the litigation results from alleged injuries that arise out of or relate to those activities where non resident defendants' contacts, while not rising to the level of the traditional notion of presence in the forum state, "business life' is nonetheless continuous and systematic with Utah conspirators Intermountain Health Care Inc network and Utah based physicians et al. who are conducting

substantive activities at residents of the forum.

(Opp'n 21, ECF No. 114.)  This paragraph seems to assert that because the AMA and ADA conspire with doctors and dentists who practice medicine in Utah and the litigation arises out of the doctors' and dentists' actions, those contacts suffice for specific jurisdiction over the AMA and ADA.  Claiming provision of "modern institutional medical care" by alleged coconspirators as the purposeful action of the AMA and ADA falls short.  Ms. Van Ornum had to allege specific action by the Associations, aimed at Utah, that caused the harm alleged in the Complaint to obtain specific jurisdiction over the Associations.  The Amended Complaint fails to set forth facts alleging what actions the AMA, ADA, and AHA purposefully directed towards Utah, as well as how those actions connect to Ms. Van Ornum's alleged injuries.

Ms. Van Ornum fails to make a prima facie showing of specific jurisdiction over the Associations.

### 2.  *This Court Lacks General Jurisdiction over the Associations*

Without specific jurisdiction, the undersigned proceeds to analyze the possibility of general jurisdiction.  However, "[b]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.'"  *OMI Holdings*, 149 F.3d at 1091 (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quoting *Helicopteros Nacionales  v. Hall*, 466 U.S. 408, 416 (1984))).  Therefore, Ms. Van Ornum must provide facts capable of establishing contacts more widespread than those necessary for specific jurisdiction.  *See Kuenzle*, 102 F.3d at 458 (quoting *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 146 (10th Cir. 1992)).

*Daimler AG v. Bauman* clarified the parameters of general jurisdiction.  571 U.S.  ___,

134 S. Ct. 746 (2014); *see Parlant Tech. v. Bd. of Educ.*, No. 2:12-CV-417-BCW, 2014 WL 4851881, at *4 (D. Utah Sept. 29, 2014) (unpublished).  The Supreme Court noted that courts exercise general ("all-purpose") jurisdiction paradigmatically in those forums where a court would fairly regard an individual or corporate defendant as "at home," such as an  individual's state of domicile or a corporation's state of incorporation or principal place of business.  *Daimler*, 134 S. Ct. at 760 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).  Beyond these "paradigm bases" for general jurisdiction, a court can find general jurisdiction over an out-of-state corporate defendant when the corporation maintains affiliations with the forum state "so continuous and systematic as to render [the corporation] essentially at home in the forum State."  *Id.* at 761 (citing *Goodyear*, 564 U.S. at 919).  Courts appropriately require significantly more contacts before finding general jurisdiction than specific because general jurisdiction allows any plaintiff to sue a defendant in that forum for all claims where subject matter jurisdiction exists.  *See id.* at 751 (noting "a court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" (quoting *Goodyear*, 564 U.S. at 919)).

In considering whether a defendant's contacts with the forum suffice to create general jurisdiction where the defendant does not reside, the Tenth Circuit, prior to *Daimler*, considered the following factors:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Kuenzle*, 102 F.3d at 457 (quoting *Trierweiler*, 90 F.3d at 1533).  This list is non-exhaustive.  *See*

*Trierweiler*, 90 F.3d at 1533 ("In  assessing contacts with a forum, courts have considered *such factors as . . .*") (emphasis added)  (citation omitted); *Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1193 (D. Colo. 1999) (citation  omitted) ("[T]he *Trierweiler* factors are neither exhaustive nor necessarily determinative of the  general personal jurisdiction inquiry.").

The Amended Complaint argues, "non resident's contacts while not rising to the level of the traditional notion of presence in Utah are nonetheless continuous and systematic," while also conceding that none of the Associations has either a principal place of business or headquarters in Utah.  (Am. Compl. 15, 19-20, ECF No. 98.)  Mere recitation of legal standards does not equate to factual allegations and does not entitle Ms. Van Ornum to any presumptions.

The Amended Complaint includes only sparse allegations to support the Associations' contacts rising to the level of "continuous and systematic."  In fact, the strongest argument Ms. Van Ornum presents as to why jurisdiction lies in Utah appears in her inverted application of the five-factor *Peay* test.  The *Peay* Test, as discussed above, considers five factors to determine whether a defendant has successfully shown a "constitutionally significant inconvenience" that would result from personal jurisdiction derived from nationwide service of process.  *Peay*, 205 F.3d at 1212.

Ms. Van Ornum applies these factors to argue why jurisdiction lies in Utah rather than another location.  Specifically Ms. Van Ornum writes:

79. Ms Van Ornum, Mr Kurihara and Mrs Kurihara allege that personal jurisdiction and venue accords with Fifth Amendment minimal constitutional requirement (28 USC §1331) and constitutional significant inconvenience for both Ms Van Ornum and Defendants' class in that:
    1)  Any other forum is gravely difficult and inconvenient for Ms Van Ornum because she has no contact with other forum, other than consequential;
    2)  It has been futile under the circumstantial comparisons;
    3)  judicial economy is practical in this forum concerning the events thus far in that to timely file, she needs to travel to the Courthouse to file;

4) Discovery will probably likely occur primarily in Utah where the association and corporate defendants do substantive, continuous and systematic business affairs herein, therefore they will have access to the laboratory tests et seq. for burden of demonstration since Utah defendants destroyed our medical and dental records knowing, willful and purposefully (18 USC §1592), to obstruct enforcement of Sherman and Clayton Acts and Racketeering Influence and Corrupt Organization Act violations (15 USC §§1, 2, 3(a)(b), 15(a); 18 USC §1964(c));

5) Hawaii is furtherance and expensive compare to Utah; and

6) Hawaii defendants denied due process with equal protection of the law, when Ms Van Ornum was a resident and a non resident in 2012;

7) Any defendants' gross income and tax liabilities make traveling and attorney's fee a drop in the bucket compare to Ms Van Ornum's gross income and tax liabilities[.]

(Am. Compl. ¶79, ECF No. 9 8.)  None of these allegations addresses the Associations specifically.

Although litigation in other venues may well burden Ms. Van Ornum, in terms of time and expense, she misses the point of the minimum contacts due process analysis.  For a court to exercise personal jurisdiction over the Associations, doing so must be "fair and just" to the Associations, not Ms. Van Ornum.  *See Dudnikov*, 514 F.3d at 1070 (explaining due process consideration focuses on fairness to the defendant).  Because Ms. Van Ornum, as Plaintiff, chooses the forum, the Court can assume its fairness as to her.

Ms. Van Ornum offers two more arguments for general jurisdiction in her Opposition that explicitly pertain to the Associations:

51. Ms Van Ornum allege that AMA, ADA, AHA members are pharmaceutical and chemical corporations' state base physicans whom hospital like-facilities acts and who shape its intentions or visa vera. We see in Provo, Utah Intermountain Health Care Inc's network is enlarging their inpatient facilities, eliminating even organic produce sales and health stores, while increasing grants and loans to increase its physicians and staffs. "Individuals through whom a corporation acts and who shape its intentions can be held liable on a charge of attempted monopolization." Tillamook Cheese & Dairy Ass'n v. Tillamook County Cremery Ass'n, C.A.9 (Or.) 1966, 358 F.2d 115. "Individuals are included in RICO violations. See 18 USC 1961 (4); Trevino v. Pechero, S.D.Tex.2008, 592

F.Supp.2d 939.

52. Ms Van Ornum allege that American Medical, Dental and Hospital Associations have minimum contact if not so Utah would not have a Department of health, human services, medical examiner, pharmacy, Intermountain Health Care network, emergency medical services, we can drive our car without consenting to emergency medical services, et seq. "Non-resident defendants were subject to personal jurisdiction in [Utah] in action under Racketeer Influenced and Corrupt Organizations Act (RICO) alleging that they conspired to defraud [Utah] resident (including Ms Van Ornum), where many defendants [are] domiciled in [Utah] and majority of remaining defendants [are] located in [other States], [Ms Van Ornum's] lawsuit at issue in action [takes] place in [Utah], and ends of justice were served by allowing plaintiff to consolidate all of [her] claims against ... defendants in one action. *Waldner v. North American Truck & Trailer, Inc.,* D.S.D.2011, 277 F.R.D. 401.

(Opp'n 19-20, ECF No. 114.)  Ms. Van Ornum's statements clarified argue:  if AMA, ADA, and AHA members, who are in league with the pharmaceutical and chemical companies, live and work in Utah, then because of those members' contacts with Utah, the Court should have personal jurisdiction over their Associations.  The undersigned does not find general jurisdiction over the AMA, ADA, or AHA based on the presence of individual members within Utah.  Put simply, Ms. Van Ornum needed to allege actions by the Associations purposefully directed at Utah that result in continuous and systematic presence in the state.  She makes no such allegations.  The reasoning found in *Elizabeth Hospital* and *Donatelli* help illuminate this conclusion. *Elizabeth Hosp., Inc. v. Richardson,* 167 F. Supp. 155, 158–59 (W.D. Ark. 1958), *aff'd,* 269 F.2d 167 (8th Cir. 1959), and *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 470–71 (1st Cir. 1990).

The plaintiff in *Elizabeth Hosp.* served the American Medical Association at its headquarters in Illinois in an attempt to call the entity into court in the Western District of Arkansas.  167 F. Supp. at 158–59.  Similar to the present case, the complaint in *Elizabeth Hosp.* did not allege that the AMA transacted business or had a presence in Arkansas.  *Id.*  Instead, the

complaint argued that because local member associations of the AMA were present in Arkansas, the AMA had a presence in Arkansas. *Id.* The court disagreed, reasoning,

> The American Medical Association, as shown by its constitution and bylaws, is a 'federacy' composed of the member associations. So far as the complaint reflects, the local associations may be obliged to follow the constitution and bylaws of the American Medical Association, but are not otherwise controlled by the American Medical Association. Under these circumstances, the American Medical Association is no more 'present' in the state by virtue of the presence of a local independent member than the United States is present by virtue of the presence of a state government which is a member of the Federal Union. Just as a state is not an agent for the Government of the United States, the Washington County Medical Society is not an agent of the American Medical Association, at least so far as the complaint shows.

*Id.*

The undersigned finds the logic similarly applicable to Ms. Van Ornum's Amended Complaint. The presence of AMA, ADA, and AHA members does not equate to the presence of the AMA, ADA, or AHA or even with purposeful action directed at Utah. The undersigned determines that Ms. Van Ornum has not alleged the relationship between the Associations and their members sufficiently to show the Associations have the level of "constant and pervasive [activity] 'as to render [them] essentially at home in the forum State.'" *Daimler*, 134 S. Ct. at 751 (quoting *Goodyear Dunlop Tires*, 131 S. Ct. at 2851). Ms. Van Ornum's point that the presence of a "Department of health, human services, medical examiner, pharmacy, Intermountain Health Care network, emergency medical services" in Utah proves minimum contacts exist between Utah and the Associations fails as well. (*See* Opp'n 20, ECF No. 114.) The mere presence of these health care related entities does not allege any activities by the Associations in Utah.

The First Circuit case *Donatelli* provides further guidance. *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 470–71 (1st Cir. 1990). In *Donatelli*, the First Circuit Court of Appeals

31

declined to find personal jurisdiction over the National Hockey League (NHL) in Rhode Island despite the fact that one NHL team (the Bruins) played an annual exhibition game within the state. The Court wrote, "[p]erhaps more important, none of the control which the league exerts substantially influenced the Bruins, or any other team, to maintain contacts within Rhode Island… . The Bruins' decisions to advertise and seek ticket sales in Rhode Island are in no way mandated by the NHL." *Id.* at 470. The situation between the NHL and the Bruins parallels that of the Associations and these health care entities. The Amended Complaint does not allege the Associations control these entities. The fact that each Association may have members in Utah who work for the Department of Health and Human Services or Intermountain Health Care or emergency medical services results from the preferences of those members, not the actions of the Associations. The Amended Complaint does not allege the AMA, ADA, and AHA solicit business or send agents to Utah; rather individual members send themselves to Utah and work there independently. *See Kuenzle*, 102 F.3d at 457 (discussing factors to analyze is assessing general jurisdiction).

Ms. Van Ornum fails to allege facts sufficient for the Court to find general jurisdiction over the AMA, ADA, or AHA. Ms. Van Ornum concedes that none of the Associations has either a principal place of business or headquarters in Utah. Ms. Van Ornum's primary reasons for asserting jurisdiction in Utah do not lend credence to her assertion that the Associations possess a "continuous and systematic" presence in Utah. Absent any showing of business activities "so constant and pervasive" as to make the Associations "at home" in Utah, the undersigned cannot find general jurisdiction. *See Daimler*, 134 S. Ct. at 751 (quoting standard).

In conclusion, for the Court to have personal jurisdiction over the Associations to hear the remaining claims, the Amended Complaint must provide some grounds for a finding of minimum

contacts with Utah.  *See OMI Holdings*, 149 F.3d at 1091 (requiring minimum contacts for exercise of personal jurisdiction).  Ms. Van Ornum has failed to allege facts showing specific or general jurisdiction over these claims, therefore the undersigned RECOMMENDS the District Judge grant the Motion to Dismiss as to the remaining claims without prejudice for lack of personal jurisdiction.

## RECOMMENDATION

For the reasons stated above, the undersigned RECOMMENDS the Court dismiss Ms. Van Ornum's RICO and antitrust claims against the Associations for failure to state a claim, and dismiss all remaining claims for lack of personal jurisdiction, granting the Associations' Motion to Dismiss.  (ECF No. 101.)

The Court will send copies of this Report and Recommendation to the parties who the Court hereby notifies of their right to object to the same.  The Court further notifies the parties that they must file any objection to this Report and Recommendation with the clerk of the court,  pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), within fourteen (14) days of service  thereof.  Failure to file objections may constitute waiver of objections upon subsequent review.

DATED this 16th day of March 2017.

BY THE COURT:

Evelyn J. Furse
United States Magistrate Judge