IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SANDRA C.K. VAN ORNUM,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN MEDICAL ASSOCIATION, *et al.*,<br><br>Defendants. | **REPORT AND RECOMMENDATION: HAWAII PACIFIC HEALTH SYSTEM MOTION TO DISMISS (ECF No. 102)**<br><br>Case No.  2:14-cv-921-RJS-EJF<br><br>District Judge Robert J. Shelby<br>Magistrate Judge Evelyn J. Furse |

Defendant Hawaii Pacific Health System (Hawaii Pacific) filed the present Motion to Dismiss, requesting the Court to dismiss *pro se* Plaintiff Sandra C.K. Van Ornum's claims pursuant to Federal Rules of Civil Procedure (Rules) 8(a) and (d), 12(b)(2) and (6).  (ECF No. 102.)  Based on the allegations presented in the Amended Complaint, (Am. Compl., ECF No. 98), the undersigned finds the District of Utah lacks personal jurisdiction over Hawaii Pacific.[1] Therefore the undersigned RECOMMENDS the Court dismiss all claims pursuant to Rule 12(b)(2).[2]  Alternately, the District Judge could dismiss the Amended Complaint as untimely because Ms. Van Ornum submitted her Amended Complaint outside the thirty-day refiling window granted in the District Judge's Order, (ECF No. 86).  The undersigned LIFTS the stay, (ECF No. 177), as to Hawaii Pacific upon the filing of this Report and Recommendation.

---

[1] On January 5, 2015, District Judge Robert J. Shelby referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B).  (ECF No. 3.)
[2] Pursuant to D.U. Civ. R. 7-1(f), the undersigned finds oral argument unnecessary and will make its recommendation based on the Amended Complaint and written memoranda.

## BACKGROUND

On December 22, 2014, Ms. Van Ornum filed a *pro se* Complaint against the American Medical Association (AMA), American Dental Association (ADA), American Hospital Association (AHA), Monsanto Company (Monsanto), Eli Lily and Company (Eli Lily), Pfizer Inc. (Pfizer), Abbott Laboratories (Abbott), Allergan Inc. (Allergan), Hawaii Pacific Health System (Hawaii Pacific), Kuakini Health System (Kuakini), and Dr. William Goodhue (Dr. Goodhue). (ECF No. 1.) On March 24, 2015,  Ms. Van Ornum filed an Amended Complaint prior to service of any Defendant.  (ECF No. 4.)  A few days later, Ms. Van Ornum filed a Motion for Leave to File Amended Complaint, (ECF No. 5), which the undersigned granted. (ECF No. 6.)  Following that order, Ms. Van Ornum filed the Amendment to Amended Complaint.  (ECF No. 7.)  Defendants then began filing Motions to Dismiss.  (Eli Lily and Pfizer, ECF No. 9; Hawaii Pacific, ECF No. 14 & 39; AMA, ADA, and AHA, ECF No. 23; Allergan, ECF No. 29; Kuakini, ECF No. 36; Abbott, ECF No. 45; Monsanto, ECF No. 46; Dr. Goodhue, ECF No. 66.)

Subsequently, the undersigned issued a Report and Recommendation as to all then pending Motions to Dismiss, finding the Court lacked personal jurisdiction over all claims. (Report & Recs., ECF No. 75.)  The District Judge granted each Motion to Dismiss for lack of jurisdiction, with the exception of the antitrust claims, which the District Judge dismissed for failure to comply with Rule 8(a) pleading standards.  (*See* Order, ECF 86.)

After dismissing all claims without prejudice, the District Judge offered Ms. Van Ornum the opportunity to amend her Complaint.  (*Id.*)  Ms. Van Ornum filed the current operative Complaint (the "Amended Complaint") on May 4, 2016.  (Am. Compl., ECF No. 98.)  On May 18, 2016, Hawaii Pacific then filed a Motion to Dismiss the Amended Complaint.  (ECF No.

102.)

On June 2, 2016, the undersigned granted Ms. Van Ornum an extension until June 29, 2016 to respond to the Motion. (ECF No. 109.) Ms. Van Ornum requested two more extensions. (ECF No. 115, 119.) In the end, the undersigned granted Ms. Van Ornum until August 2, 2016 to respond to Hawaii Pacific's Motion. (ECF No. 120.) On July 14, 2016, Ms. Van Ornum responded to Hawaii Pacific's Motion, (ECF No. 121), and on July 28, 2016, Hawaii Pacific filed its Reply. (ECF No. 128.) On August 3, 2016 and August 22, 2016, Ms. Van Ornum filed additional memoranda in opposition referring to this Motion as well as others. (ECF Nos. 129, 145.) The Rules permit one opposition absent leave of the Court. DU Civ. R. 7-1(b)(2)(A). As Ms. Van Ornum did not have leave of the Court to file these additional oppositions, the undersigned did not consider them. (*See* Mem. Decision & Order, ECF No. 137 (denying leave to file ECF No. 129); Mem. Decision & Order, ECF No. 153 (striking ECF No. 145 from the record).)

Ms. Van Ornum's Amended Complaint contains a potpourri of allegations. From what the undersigned can gather, Ms. Van Ornum alleges Hawaii Pacific, acting either independently or as part of the larger (and indefinite) "Defendants' Class", violated numerous constitutional protections and federal statutes. Constitutional violations include: the Privileges and Immunities Clause (14th Amendment), the Due Process Clause (14th Amendment), the Equal Protection Clause (14th Amendment), provisions against slavery and involuntary servitude (13th Amendment), Freedom of Speech (1st Amendment), Freedom of Assembly (1st Amendment), and Freedom of the Press (1st Amendment).

Alleged statutory violations include: 18 U.S.C. § 1851 (peonage), 42 U.S.C. § 2000bb-1 (Religious Freedom Restoration Act), 15 U.S.C. § 45 (unfair or deceptive acts or practices (FTC

Act § 5a)), 15 U.S.C. § 1-3 (Sherman Antitrust Act), 15 U.S.C. § 15 (Clayton Antitrust Act), 18 U.S.C. § 1959 (violent crimes in aid of racketeering activity), 18 U.S.C. § 1961 (RICO), and 18 U.S.C. § 1958 (use of interstate facilities in murder for hire).

When this Court issued its first Report and Recommendation, it noted that "Ms. Van Ornum's copious use of … abbreviations makes her Complaint extremely difficult to understand." (Report & Recs. 2, ECF No. 75.)  The Court further struggled with Ms. Van Ornum's dense web of alleged facts, claims, and tangled narrative.  Ms. Van Ornum dedicated a large portion of the Complaint to her and her parent's medical histories, a chronology beginning in 1900 and continuing through 2013, touching on events in Hawaii, Guam, the Philippines, and Vietnam.  (Id. at 4.)  Ms. Van Ornum directed most allegations of illegality at Defendants generally, as a broad and shadowy conspiratorial class.  (Id.)  The Complaint made little effort to connect specific factual statements to specific Defendants.  (Id.)

Ms. Van Ornum has made some improvements between the Complaint discussed in the first Report and Recommendation and the Amended Complaint at issue.  Notably, Ms. Van Ornum eliminated the abbreviations.  Unfortunately, the allegations remain difficult to follow.  Ms. Van Ornum still fails to connect specific facts and claims to specific Defendants, instead making grand assertions against "Defendants' class."

Essentially, Ms. Van Ornum objects to modern medicine, modern agriculture, and modern civilization to the extent these systems run contrary to her understanding of the "knowledge of our Creator's laws of health."  (Am. Compl. 4, ECF No. 98.)  "Defendants' class" operates a monopolistic force behind these modern systems, maintaining and growing their power at the expense of "our body and its business department."  (Id. at 3.)  Preservation of such a huge monopoly requires innumerable and unending acts.  Three highlights from Ms. Van

Ornum's perspective include the creation of the United States Department of Health, Education and Welfare in 1953, the passage of "the Obama health reform," and the "IRS penalty laws." (Am. Compl. 8, 10, ECF No. 98.)  While Ms. Van Ornum's Amended Complaint only names fourteen specific Defendants, the entire conspiracy consists of "all pharmaceutical and chemical corporations, partnerships, associations, health care providers who are individuals, group of individuals, facilities, hospital and clinics."  (Am. Compl. 3, ECF No. 98.)  Ms. Van Ornum believes that if this group stopped providing/forcing things like fluoridated water, medical surgeries, pharmaceuticals, and chemically-supported agriculture, and if people returned to the practices of health and nutrition supported by her readings of the Old Testament and various other spiritual texts, everyone would live for over 900 years.  (*Id.* at 3-6.)  According to Ms. Van Ornum, Defendants' class propagates its systems, prevents exercise of true health practices, and in doing so robs people generally, and her parents and herself in particular, of good health and ninety percent of their life expectancy.  (*Id.* at 3-4, 9.)

## DISCUSSION

Hawaii Pacific offers multiple grounds for dismissing Ms. Van Ornum's Amended Complaint:  (1) Ms. Van Ornum filed the Amended Complaint late, (2), the Amended Complaint fails to include new allegations to support personal jurisdiction, (3) the Amended Complaint does not meet Rule 8(a)'s pleading requirements, (4) the Amended Complaint fails to state a claim upon which the Court can grant relief, and (5) Ms. Van Ornum lacks standing to bring claims on behalf of her parents.  (Mot. to Dismiss 6-16, ECF No. 102.)

### I.  MS. VAN ORNUM FILED HER AMENDED COMPLAINT LATE

Ms. Van Ornum's Amended Complaint arrived late, according to the time provided in the District Judge's March 30, 2016 Order.  (Order 10, ECF No. 86 ("The court grants Ms. Van

Ornum leave to amend her complaint within thirty (30) days of this Order, in accordance with the guidance provided above.  Failure to do so will result in the dismissal of this case with prejudice.").)  The Order gave Ms. Van Ornum thirty days to file her Amended Complaint. Excluding the entry date of the Order, Fed. R. Civ. P. (6)(a)(1)(A), Ms. Van Ornum's Amended Complaint came due April 29, 2016.  Ms. Van Ornum hand delivered her Amended Complaint to the Clerk's office on May 4, 2016.  (Am. Compl., ECF No. 98 (Certificate of Service).)  Thus, the Court could dismiss the Amended Complaint with prejudice based on the prior Order, (ECF No. 86).

Ms. Van Ornum responds to Hawaii Pacific's argument citing case law stating untimeliness alone does not require a denial of a motion for leave to amend.  (Mem. in Opp'n to Mots. Dkt. Nos. 100-102 Include; Extension of Time (Opp'n) 9, ECF No. 121.)  While Ms. Van Ornum accurately states that point of law, it does not apply to this situation, where the Court granted leave to amend and set a specific time to file the Amended Complaint.  Thus, the Court could dismiss the Amended Complaint for failure to file on time.  Given Ms. Van Ornum's *pro se* status, the undersigned proceeds as if Ms. Van Ornum filed her Amended Complaint on time.

## II.  THIS COURT LACKS PERSONAL JURISDICTION OVER HAWAII PACIFIC DERIVED FROM MS. VAN ORNUM'S ANTITRUST CLAIMS

Hawaii Pacific asserts that the Court lacks personal jurisdiction over it based on the antitrust claim; therefore the Court must first address this argument before reaching the merits of Ms. Van Ornum's Amended Complaint.  *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).") (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83 (1998)).

### A. The Sherman and Clayton Acts Do Not Provide Personal Jurisdiction over Hawaii Pacific

As the Plaintiff, Ms. Van Ornum "bears the burden of establishing personal jurisdiction over the defendant[s]." *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996) (quoting *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984)). To meet this burden on a motion to dismiss where the Court receives only affidavits and written materials, Ms. Van Ornum need only make a prima facie showing of personal jurisdiction. *Id.* "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant[s]." *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). The undersigned takes as true all "plausible, non-conclusory, and non-speculative" facts and resolves factual disputes in favor of Ms. Van Ornum. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-6 (2007)).

Ms. Van Ornum appears *pro se*; thus, the Court must liberally construe her pleadings. *See id.* at 1073 (acknowledging "solicitous construction due a pro se filing"). However, the Court cannot act as an advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Rules. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) ("[T]his court has repeatedly insisted that *pro se* parties follow the same rules of procedure that govern other litigants.") (quoting *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)).

A federal court considering whether it has personal jurisdiction over a defendant must decide "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due

process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)).

Ms. Van Ornum alleges that Defendants' class injured her "business and property" and seeks "tremble damages, costs, fees and simple interest" under the Clayton Antitrust Act.  (*See* Am. Compl. 43, ECF No. 98.)  15 U.S.C. § 15(a) provides:

> Any person . . . injured in his business or property  by  reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages . . . sustained, and the cost of suit, including a reasonable attorney's fee.

To facilitate enforcement of the federal antitrust laws, 15 U.S.C. § 22 authorizes expansive venue and service of process on a corporate defendant:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

Thus, the Clayton Act provides for nationwide service of process against defendant corporations in private civil antitrust suits.  *See, e.g.*, *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 422 (2d Cir. 2005); *In re Auto. Refinishing Paint Antitrust Litig.*, 358  F.3d 288, 293 (3d Cir. 2004) ("It is undisputed that the second clause authorizes nationwide, indeed worldwide, service of process on a defendant corporation in federal antitrust litigation."); *Phone Directories Co. v. Contel Corp.*, 786 F. Supp. 930, 942 (D. Utah 1992) ("[S]ervice of process is authorized by the nationwide service of process provision at § 12 of the Clayton Act.").

A circuit split continues as to when 15 U.S.C. § 22 authorizes nationwide service of process.  *See* 1B Phillip E. Areeda & Herbert Hovenkamp,  Antitrust Law ¶ 271d (4th ed. 2013) (discussing circuit split); Robert L. Haig, Bus. &  Commercial Litig. in Fed. Cts. § 67:57 (3d ed.

2011) (same).  The undersigned analyzed this split in its Report and Recommendation to Dismiss

the AMA, ADA, and AHA and determined that 15 U.S.C. § 22 authorizes nationwide service of

process, without requiring proper venue.  (Report & Rec. re ECF No. 101 11-12, ECF No. 209.)

Having determined that 15 U.S.C. § 22 authorizes nationwide service of process, the

Court turns to the final step of personal jurisdiction analysis, "whether exercise of jurisdiction

comports with due process." *Trujillo*, 465 F.3d at 1217 (quoting *Peay*, 205 F.3d at 1209).

Where a plaintiff brings a federal question under a statute providing  nationwide service of

process,

> "the Fifth Amendment requires the plaintiff's choice of forum to be fair and
> reasonable to the defendant."  To defeat federal jurisdiction, a *defendant* must
> establish that the "chosen forum will make litigation ... gravely difficult and
> inconvenient" or, in other words, the forum district burdens the defendant with
> "constitutionally significant inconvenience."  We look to non-exclusive factors in
> considering whether defendants have met this burden, such as (1) the extent of
> contact with the forum state, (2) the inconvenience of having to litigate in a
> foreign jurisdiction, (3) judicial economy, (4) the probable situs of the discovery
> proceedings, and (5) the nature of the defendant's activities and its impact beyond
> his state's borders.

*Klein v. Cornelius*, 786 F.3d 1310, 1318 (10th Cir. 2015) (quoting *Peay*, 205 F.3d at 1212)

(emphasis added).

Hawaii Pacific squarely addresses this issue.  (Mot. 12-15, ECF No. 102.)  Hawaii Pacific

argues that despite nationwide service of process, this District's exercise of personal jurisdiction

over it would not comport with due process.  (*Id.*)  Using the five-factor *Peay* test, Hawaii Pacific

provides a convincing argument why personal jurisdiction in this District Court would present a

"constitutionally significant inconvenience."  (*See Peay*, 205 F.3d at 1209).

Hawaii Pacific demonstrates "minimal to non-existent" connections with Utah.  (Mot. 14,

ECF No. 102.)  Hawaii Pacific does not have a Utah business license; Hawaii Pacific's network

includes no entities in Utah; Hawaii Pacific retains no property, employees, or registered agents in

Utah; and Hawaii Pacific has never paid Utah taxes.  (*Id.*)  Equally important, Ms. Van Ornum provides no allegations that, if taken as true, would establish a real connection between Hawaii Pacific and Utah.  For example, Ms. Van Ornum writes:  "Tenth Defendants is Hawaii Pacific Health System and indispensable parties.  They are Hawaii-based interstate commerce facilities contracting and employing professional aiders.  Hawaii Pacific Health System's principle place of business and headquarter is located in Honolulu, Hawaii[.]"  (Am. Compl. ¶ 66, ECF No. 98.) Describing Hawaii Pacific as maintaining interstate commerce facilities does not provide the kind of factual allegation that would indicate contact with Utah.  Ms. Van Ornum also alleges various events that occurred between her mother, her daughter, or herself and Hawaii Pacific – but all occurred in Hawaii.  (*See for example,* Am. Compl. 31, 33-35, 37-38, ECF No. 98.)  Thus, Hawaii Pacific provides ample reason to suspect little contact with Utah and little impact of its operations beyond the borders of Hawaii, and Ms. Van Ornum makes no convincing rebuttal.

Furthering buttressing its argument, Hawaii Pacific incorporates a previously filed Declaration from Guy Okano into its present Motion.  (Mot. 13-14, ECF No. 102 (citing (Decl. of Guy Okano ("Okano Decl."), Exh. 1 (ECF No. 15-1)).)  Mr. Okano serves as Hawaii Pacific's Director of Claims Management.  (*Id.*)  Mr. Okano declares the lack of connection between Hawaii and Utah as well as the intrastate character of Hawaii Pacific's business model (covered in detail in the preceding paragraph of this Report).  (Okano Decl., Exh. 1 (ECF No. 15-1).) "[O]n a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true to the extent they are not contradicted by affidavits."  *Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 (10th Cir. 1983) (quoting *Wyatt v. Kaplan*, 686 F.2d 276, 282 n.13 (5th Cir. 1982)).  When a defendant provides sworn affidavits contradicting personal jurisdiction, a plaintiff must provide more than mere

"conclusory allegations in its complaint and briefs" to prove jurisdiction exists. *Am. Land*, 710 F.2d at 1454 (requiring some sort of prima facie factual showing to overcome sworn affidavits). Ms. Van Ornum's Opposition to Hawaii Pacific's Motion contains insufficient conclusory allegations: "[Hawaii Pacific's] contact, while not rising to the level of the traditional notion of presence in the forum state, [its] business life is nonetheless continuous and systematic;" "Hawaii Pacific is a medical hospital corporation or a modern institution medical care corporation benefitting financially from their Enterprise, US Department of Health and Human Services." (Opp'n ¶¶ 52, 77, ECF No. 121.) Ms. Van Ornum's conclusory allegations suggesting a connection between Hawaii Pacific and Utah do not overcome the sworn affidavit of Mr. Okano.

Because the extent of Hawaii Pacific's network lies solely within Hawaii, and Hawaii lies a significant distance from Utah, litigating in Utah presents a significant inconvenience. (Mot. 14, ECF No. 102.) Ms. Van Ornum argues that litigation outside of Utah would highly inconvenience herself, (Am. Compl. ¶ 79, ECF No. 98), but *Peay's* focus rests on the Hawaii Pacific's circumstances. *See Peay*, 205 F.3d at 1212 (requiring "forum to be fair and reasonable to the defendant.").

Hawaii Pacific argues that litigating in Utah would not serve judicial economy because Hawaii Pacific lacks connection to the other Defendants, meaning unification will not increase judicial efficiency. (Mot. 14, ECF No. 102.) Ms. Van Ornum perceives all Defendants as unified through her RICO and antitrust conspiracies. (*See* Am. Compl. ¶¶ 8, 33-37, ECF No. 98.) As discussed below, the Amended Complaint fails to state the RICO and antitrust conspiracy claims. Thus, the judicial efficiency of having Hawaii Pacific in this case is somewhat reduced.

Furthermore, Ms. Van Ornum believes that litigating in Utah would serve judicial

economy because of the efficiency Utah presents.  As a *pro se* party, Ms. Van Ornum argues she

must travel to the courthouse to file.  (Am. Compl. ¶ 79, ECF No. 98.)  As a *pro se* litigant Ms.

Van Ornum may not use the District of Utah's E-filing procedure absent an Order of the Court,

which the Court has not given in this case.  DISTRICT OF UTAH CM/ECF AND E-FILING

ADMINISTRATIVE PROCEDURES MANUAL 1 (Nov. 10, 2016),

http://www.utd.uscourts.gov/documents/utahadmin proc.pdf.  However, Ms. Van Ornum need

not travel to the Court to file, as the District permits *pro se* litigants to file by mail.  PRO SE

LITIGANT GUIDE 9 (Apr. 2014), http://www.utd.uscourts .gov/forms/prose_guide.pdf (allowing

litigants to mail pleading to the clerk's office).  Timely filing by mail will require Ms. Van

Ornum to mail her filing before time expires, as filing occurs on the date received by the Clerk of

the Court.  D.U. Civ. R. 5-1.  The inability to file electronically creates an inconvenience for Ms.

Van Ornum, who must draft her filing in fewer days to mail the document in time.  The District

of Hawaii similarly does not allow *pro se* parties to file electronically.  However, the District of

Hawaii considers papers filed based on the date of postmark if the party files by mail.  D. Hawaii

LR5.  Thus, while the undersigned does not take such inconvenience lightly, particularly for a

*pro se* litigant, Ms. Van Ornum would actually benefit from filing in Hawaii because of its more

generous rule about the time of filing.

As to the probable situs of discovery, Hawaii Pacific agrees with the undersigned's

previous Report and Recommendation that stated, "[d]iscovery will likely occur primarily in

Hawaii or perhaps in districts where the corporate Defendants have their headquarters, none of

which includes Utah."  (Mot. 14-15, ECF No. 102 (citing Report & Recs. 13, ECF No. 75).)  Ms.

Van Ornum counters that Defendants "do substantive, continuous and systematic business affairs

[in Utah]," can access "laboratory tests et seq. for burden of demonstration" [presumably to test

Ms. Van Ornum's theory of health against the ubiquitous false healthcare system], and "Utah defendants destroyed our medical and dental records." (Am. Compl. ¶ 79, ECF No. 98.)  Hawaii Pacific cites the prior Report accurately, but circumstances have changed.  Ms. Van Ornum's Amended Complaint now includes Intermountain Health Care, Inc. (IHC) as the fourteenth named Defendant.  (*Id.* ¶ 70.)  Thus, discovery as to IHC will occur in Utah.  However, for reasons discussed below, Ms. Van Ornum fails to state a claim as to the RICO and antitrust allegations, thus the connection between Hawaii Pacific and IHC remains tenuous at best.  The probable situs of discovery, as it relates to Hawaii Pacific, remains in Hawaii.

To conclude, § 22 authorizes nationwide service of process, regardless of the venue's propriety under § 22.  Even with authorized process, personal jurisdiction must still comport with due process.  Hawaii Pacific's present Motion to Dismiss successfully argues why due process does not favor personal jurisdiction over it by outlining an argument premised on the five-factor *Peay* test and thereby demonstrating "constitutionally significant inconvenience."  Additionally, Ms. Van Ornum's conclusory allegations as to Hawaii Pacific's connection to Utah fail in light of Hawaii Pacific's sworn affidavit to the contrary.  *See Am. Land Program*, 710 F.2d at 1454 (regarding jurisdictional allegations on a motion to dismiss).  The undersigned RECOMMENDS the Court not find personal jurisdiction over Hawaii Pacific based on Ms. Van Ornum's antitrust claims.

### B.  The Amended Complaint Fails to State an Antitrust Claim Under Rule 12(b)(6)

However, the Tenth Circuit rarely finds constitutionally significant inconvenience.  *Peay*, 205 F.3d at 1212.  Therefore, the undersigned will analyze the antitrust claims further, in case the District Judge disagrees and finds personal jurisdiction over Ms. Van Ornum's antitrust claims.  The undersigned recommends the Court dismiss the antitrust claims for failure to state a claim.

The Court construes *pro se* pleadings liberally and holds them to a "less stringent standard." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation omitted)). A *pro se* plaintiff's claims should survive a 12(b)(6) motion, "despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.* (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Regardless, even a *pro se* plaintiff must "'set forth plausible claims' animating the elements of her causes of action." *See Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Whether a plaintiff's claims rise to the threshold of plausible depends on the factual allegations presented within the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall*, 935 F.2d at 1110. The Court will disregard legal allegations masquerading as factual allegations. *Twombly*, 550 U.S. at 554–56 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). If a *pro se* party has not alleged sufficient facts to support a legal theory, courts will not fill in the factual gaps. *Smith*, 561 F.3d at 1096 (citing *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997)).

Should a plaintiff's original complaint miss "important element[s] that may not have occurred to him," the court will grant leave to amend. *Hall*, 935 F.2d at 1110. After providing an opportunity to amend, a court may properly dismiss with prejudice only upon concluding that

further opportunity to amend would prove "futile."  *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010).

 The District Judge dismissed all antitrust claims in Ms. Van Ornum's Complaint without prejudice under Rule 12(b)(6) because Ms. Van Ornum's claims failed to comply with Rule 8(a)(2):  "a short and plain statement of the claim showing that the pleader is entitled to relief."  (Order 7-9, ECF No. 86.)  Ms. Van Ornum's Amended Complaint fails to solve this problem.

 Put in the best possible light, Ms. Van Ornum alleges Hawaii Pacific belongs to a class of Defendants, who conspire to withhold knowledge of the true nature of our bodies, provide harmful food, drink, pharmaceuticals, products, and medical and dental procedures, and lobby to pass laws with the intent of preventing Ms. Van Ornum and her parents from spreading their message of a much longer life possible through alternative means.  (*See* Am. Compl. 8-10, ECF No. 98.)  Through this conspiracy, the Defendants force the general public, including Ms. Van Ornum, to buy unhealthy food, submit to unhealthy medical procedures, take unhealthy medications, and drink unhealthy water that leads to a reduced life expectancy and financially benefits the Defendants.  *Id.*

 The Amended Complaint's confusing syntax, structure, and allegations fail to illuminate the relationship between Ms. Van Ornum, her family, and Hawaii Pacific.  Ms. Van Ornum alleges that Hawaii Pacific consists of "Hawaii-based interstate commerce facilities" and that she, her parents, Mr. Kurihara's mother, Ms. Van Ornum's adopted son, and Ms. Van Ornum's daughter have all passed through these facilities for one reason or another.  (Am. Compl. ¶¶ 36, 54, 66, 104-05, 114-15, 121, 127, 130, 143, 155, 158, 167, 169-73, 176, ECF No. 98.)  The Amended Complaint alleges Hawaii Pacific provided care to Ms. Van Ornum and her family, that the care disregarded the Creator's health laws, and injured them either through requiring a

needless appendectomy or insisting on assessing her children's health pursuant to a height and

weight chart or seriously injuring "Mrs. Kurihara's reproductive, hormone, nerve and dental

departments because she refuse to use drugs" or the like.  (*Id.* at ¶¶ 114, 143, 155, 158.)  Ms. Van

Ornum's allegations concerning Hawaii Pacific do not meet the basic elements 15 U.S.C. § 1.

The keystone of any 15 U.S.C. § 1 claim lies in the demonstration of "an agreement, tacit or

express."  *Twombly*, 550 U.S. at 553–54 (2007) (quoting *Theatre Enter., Inc. v. Paramount Film*

*Distrib. Corp.*, 346 U.S. 537, 542 (1954)).  Independent parallel business behavior may provide

admissible circumstantial evidence but standing alone fails to establish an agreement.  *Id.*   No

allegations address even the basic factual premises necessary for an agreement (for example:

Hawaii Pacific agreed with whom?  Hawaii Pacific agreed to what?  Hawaii Pacific used what

means to effectuate that agreement?).  Without these kinds of factual allegations, the antitrust

claims fail under 15 U. S. C. § 1.[3]

A 15 U.S.C. § 2 claim requires allegations of:  (1) a monopoly, (2) the relevant market,

(3) the misconduct, and (4) a connection between the misconduct and harm to competition in the

relevant market.  *Duty Free Americas, Inc. v. Estee Lauder Co., Inc.*, 797 F.3d 1248, 1262–64

(11th Cir. 2015) (explaining in detail the allegations necessary to state a claim for attempted

monopolization under § 2).  Ms. Van Ornum's allegations regarding Hawaii Pacific do not, and

cannot, map onto this basic framework.  The Complaint alleges a monopoly between anyone

with a hand in modern medicine, agriculture, or health generally; the relevant market includes

the whole world; and the harm results from the monopolists depriving all people of their natural

life expectancy of 900 years.  (Am. Compl. ¶¶ 8, 12-13, ECF No. 98.)  The undersigned must

---

[3] 15 U.S.C. § 3 effectively applies 15 U.S.C. § 1 to the District of Columbia and the United
States territories.  Thus to the extent Ms. Van Ornum asserts claims under this statute, they suffer
from the same plausibly defects as the 15 U.S.C. § 1 antitrust claims discussed above.

acknowledge the extreme implausibility that anyone is actively engaged in a conspiracy to reduce human life expectancy from 900 or more years to 100 or fewer years, let alone in a conspiracy this vast.  The extreme implausibility of these claims, the notion of collusion on an impossibly large scale, the assertion that without modern antibiotics, surgery, and nutrition we would live centuries longer, do not add up to a 15 U.S.C. § 2 claim.

A *pro se* plaintiff must "'set forth plausible claims' animating the elements of her causes of action."  *See Burnett*, 706 F.3d at 1236 (quoting *Iqbal*, 556 U.S. at 678).  Ms. Van Ornum falls short of this burden and for the above reasons the undersigned RECOMMENDS the District Judge dismiss Ms. Van Ornum's antitrust claims against Hawaii Pacific pursuant to Rule 12(b)(6).

## III.  THIS COURT LACKS PERSONAL JURISDICTION OVER HAWAII PACIFIC DERIVED FROM MS. VAN ORNUM'S RICO CLAIMS

### A.  RICO Does Not Provide Personal Jurisdiction over Hawaii Pacific in the District of Utah

Whether Ms. Van Ornum may properly hale Hawaii Pacific into the District of Utah through RICO's nationwide service of process provision depends on three findings.  First, "personal jurisdiction based on minimum contacts [must be] established as to at least one defendant."  *Cory*, 468 F.3d at 1230 (quoting *PT United Can Co. v. Crown Cork & Seal Co*., 138 F.3d 65, 71 (2d Cir. 1998)).  Second, the plaintiff may serve summons on other defendants outside the district if required by the "ends of justice."  *Id.*  Once the Court makes these findings, it must proceed with an inquiry under the Fifth Amendment to determine whether exercise of jurisdiction over Hawaii Pacific "comports with Fifth Amendment due process."  *See Cory*, 468 F.3d at 1229, 1233 (noting statutory nationwide service of process confers personal jurisdiction, but exercise of that jurisdiction must still meet Fifth Amendment due process requirements).

As to the first finding, the Amended Complaint alleges Intermountain Health Care, Inc.,

the fourteenth named Defendant and a partner in the RICO conspiracy according to the allegations, is a Utah-based company with its primary place of business and headquarters in Salt Lake City, Utah.  (Am. Compl. 17, ECF No. 98.)  Therefore, the Court finds minimum contacts exist between at least one Defendant and the District of Utah.

Even with apparent personal jurisdiction over Intermountain Health Care, the RICO statute will only authorize nationwide service of process upon Hawaii Pacific if the ends of justice so require.  The undersigned conducted this analysis as to Defendants collectively in its Report and Recommendation to Dismiss Dr. Goodhue.  (Report & Rec. re ECF No. 100 9-13, ECF No. 208.)  In doing so, it found the ends of justice require nationwide service of process. (*Id.* at 13.)

Although the ends of justice justify use of RICO's nationwide service of process provision, personal jurisdiction over Hawaii Pacific does not comport with the Due Process Clause of the Fifth Amendment.  *Cory*, 468 F.3d at 1229.  For the same reasons outlined in the above antitrust discussion, (supra 9-13), Hawaii Pacific successfully argues that personal jurisdiction would present a "constitutionally significant inconvenience" and as such would violate Hawaii Pacific's Due Process protections.  *Peay*, 205 F.3d at 1212.  Thus, the undersigned RECOMMENDS that this Court find no personal jurisdiction over Hawaii Pacific based on Ms. Van Ornum's RICO claims.

### B.  The Amended Complaint Fails to State a RICO Claim Under Rule 12(b)(6)

If the District Judge declines to find constitutionally significant inconvenience as to Hawaii Pacific and finds personal jurisdiction over Ms. Van Ornum's RICO claims, the Court should nonetheless dismiss all the RICO claims pursuant to Rule 12(b)(6).

Ms. Van Ornum does not allege facts sufficient to create any plausible RICO claim.  The

Amended Complaint's RICO allegations assert that Hawaii Pacific, acting in concert with the broad class of Defendants, "commit[s] continuous and systematic serious injuries and damages to our body and its business department in aid of racketeering activities." (Am. Compl. ¶ 8, ECF No. 98.) Defendants' class tricks the public into believing modern agriculture, modern medicine, and chlorination, among other ingenuities, aid health, when in reality these devices take centuries off our natural life span. (*Id.* at ¶¶ 9-12.) By purposefully withholding "knowledge of our Creator's laws of health," Defendants force humanity into "peonage." (*Id.* at ¶ 15.) The RICO enterprise stoops to the depths of "murder in aid of racketeering activities and use[s] interstate commerce facilities to commission murder-for-hire." (*Id.* at ¶ 7.)

Ms. Van Ornum's Amended Complaint relies on a broad and ill-defined "class" of Defendants. The group involved in the suspected enterprise includes "all pharmaceutical and chemical corporations, partnerships, associations, health care providers who are individuals, group of individuals, facilities, hospital and clinics." (*Id.* at ¶ 8.) This fact alone provides grounds to dismiss the RICO claims. While alleging the existence of an "enterprise" is necessary to state a civil RICO claim, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495–97 (1985) ("A violation of § 1962(c)… requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."); *Boyle v. United States*, 556 U.S. 938, 943–45 (2009) (defining "enterprise"), Ms. Van Ornum sets an impossible task for herself. No imaginable set of facts exists that Ms. Van Ornum can allege that would tie together every pharmaceutical company, every chemical company, and every single health care provider into a single enterprise.

Even if Ms. Van Ornum successfully alleged her envisioned enterprise her Amended Complaint fails to establish the other two requisite elements: racketeering activity and a pattern. *See Sedima*, 473 U.S. at 495–97 (identifying "a pattern…of racketeering activity" as a necessary

civil RICO element); *see also* 18 U.S.C. § 1962(c).  Ms. Van Ornum alleges that Hawaii Pacific, along with other Defendants murdered Mr. Kurihara's mother to steal her alkaline reserves in 1922, murdered Mr. Kurihara's father via stroke in 1944, used an on-staff gynecologist to commit serious damage to Mrs. Kurihara's "reproductive, hormone, nerve and dental department[s]," removed Mrs. Kurihara's appendix by fraud by omitting mention of "the distilled water option", harassed  and assaulted Mrs. Kurihara's daughter, aided Child Protective services in removing her adopted son, attempted three murder-for-hire attempts against Mrs. Kurihara in 2010, and murdered Mr. and Mrs. Kurihara in furtherance of the broader conspiracy. (Am. Compl. ¶¶ 97-98, 105, 114-15, 130, 158, 167, 171, ECF No. 98.)

The Amended Complaint visits many allegations of activity in furtherance of the RICO conspiracy only in passing.  For example, of Mr. Kurihara's father murder, Ms. Van Ornum writes only,

> Defendants' class commit murder-for-hire crime (18 USC §1958) murdered Mr Kurihara's father at age 79, in the territory of Oahu, Hawaii in §1944, aided by Kuakini after causing a sufficient stroke.  Mr Kurihara's father is deprived of due process so Mr Kurihara's serious injuries continue to accrue without equal protection of the laws; [and]

> Defendants' class committed murder-for hire crime (18 USC 1958) against Mr Kurihara on April 2, 1983 at age 64, with the aid of Kuakini, Hawaii Pacific, naturopathic MD and DDS, after they learn he is their primary competitor[.]

(*Id.* ¶¶ 98, 105.)  This minor description falls short of animating the element of racketeering activity, a necessary component of a successful RICO claim, or even the underlying offense, murder-for-hire.  Many of the other allegations, which could potentially satisfy this element, also lack the requisite detail, factual premises, and common-sense plausibility necessary to survive the present Motion.  *Burnett*, 706 F.3d at 1236; *Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Ms. Van Ornum goes into greater description for her mother's harassment and death, yet still fails to allege sufficiently any qualifying racketeering activity.  "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Burnett*, 706 F.3d at 1236 (quoting *Iqbal,* 556 U.S. at 679).  Again to allege harm from racketeering activity requires a baseline of factual premises – who, what, when, where – that provide a solid foundation.  Ms. Van Ornum alleging "that Mrs Kurihara serious injuries and damages Kuakini and Hawaii Pacific caused is the cause she experience an involuntary backward jerk and fell on November 6, 2010," remains insufficient without explaining the casual link between Hawaii Pacific and Mrs. Kurihara's injury or the relationship between Kuakini and Hawaii Pacific.  (Am. Compl. ¶ 171, ECF No. 98.)  Allegations that explain Hawaii Pacific's connection to Mrs. Kurihara's murder remain even more elusive.  Ms. Van Ornum uses the terminology of RICO without providing the factual underpinnings necessary for a successful RCIO claim.  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

Ms. Van Ornum's impossibly large set of guilty parties only throws into sharper relief the failings of the Amended Complaint under Rule 8(a).  The Order dismissing the Complaint made clear that, "where there are multiple claims and multiple defendants, Ms. Van Ornum must state her claims in a manner that provides individual defendants fair notice of the claims asserted against them and the grounds upon which those claims rest."  (Order 9, ECF No. 86.)  The Amended Complaint fails to follow these instructions.

Even the relief Ms. Van Ornum seeks lacks plausibility:  "restore back to the people our Creator's laws of health, privilege or immunities, life, liberty and property, nationwide, for the

wellbeing of this promised land." (Am. Compl. ¶ 185, ECF No. 98.) To assist the Court, a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and that statement must be plausible. *Twombly*, 550 U.S at 570. Ms. Van Ornum has had multiple opportunities to frame her issues in this manner and has failed to conform to the Rules. Therefore, the undersigned RECOMMENDS dismissing all RICO and racketeering claims against Hawaii Pacific for failure to state a claim.

### IV.   NO PERSONAL JURISDICTION EXISTS UNDER UTAH'S LONG-ARM STATUTE

If this Court dismisses Ms. Van Ornum's antitrust and RICO claims, the continued existence of pendant jurisdiction becomes suspect. The Tenth Circuit found abuse of discretion where a district court retained pendant jurisdiction after dismissing the anchor claim prior to trial. *United States v. Botefuhr*, 309 F.3d 1263, 1274 (10th Cir. 2002). Here, dismissal of the anchor claims, the antitrust and RICO claims, would occur prior to discovery even beginning. Therefore, absent another basis for personal jurisdiction, the Court should follow the prudent course and dismiss the remaining claims without prejudice for lack of jurisdiction. As discussed below, no other basis exists for this Court to exercise personal jurisdiction over Hawaii Pacific.

Whether the Court holds personal jurisdiction over Hawaii Pacific absent nationwide service of process, depends on Rule 4(k)(1)(A) and Utah's long-arm statute. *See Dudnikov*, 514 F.3d at 1070 (noting where federal statutes at issue do not provide nationwide service of process, the court considers the law of the forum state). Utah's long-arm statute extends to the limits allowed by due process of law, Utah Code Ann. § 78B-3-201(3); *see Dudnikov*, 514 F.3d at 1070 (noting similar Colorado statute confers maximum jurisdiction permitted by due process), and the inquiry turns on whether the exercise of jurisdiction over Hawaii Pacific comports with the

Fourteenth Amendment's Due Process Clause.  *See Klein*, 786 F.3d at 1318 (distinguishing 14th Amendment analysis from 5th Amendment analysis).

Due process requires that, for a court to hold jurisdiction over a nonresident, "minimum contacts between the defendant and the forum State" must exist.  *Trujillo*, 465 F.3d at 1217–18 (quoting *Intercon, Inc. v. Bell Atl. Internet Sol., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)). "Because a state's sovereignty is territorial in nature, a defendant's contacts with the forum state must be sufficient such that, notwithstanding its lack of physical presence in the state, the state's exercise of sovereignty over it can be described as fair and just."  *Dudnikov*, 514 F.3d at 1070.

A plaintiff may demonstrate Fourteenth Amendment minimum contacts in two ways:

> First, a court may exercise *specific* jurisdiction if a "defendant has 'purposefully directed' his activities at residents of the forum . . . *and* the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (citations omitted) (emphasis added). Second, a court may exercise *general* jurisdiction where the defendant's contacts, while not rising to the level of the traditional notion of presence in the forum state, are nonetheless "continuous and systematic." *Trierweiler [v. Croxton & Trench Holing Corp.],* 90 F.3d [1523], 1533 [(10th Cir. 1996)] (quoting *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 416 (1984)).

*Kuenzle*, 102 F.3d at 455.  If the Court finds it has either specific or general jurisdiction over a defendant, the case against that defendant satisfies the "minimum contacts" standard.  *See OMI Holdings*, 149 F.3d at 1090-91.  After a successful finding of minimum contacts, a court must next analyze whether the exercise of personal jurisdiction over the defendant comports with "traditional notions of fair play and substantial justice."  *Id.* (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Ct.*, 480 U.S. 102, 113 (1987)).  The undersigned does not reach this final test.

### 1.  *This Court Lacks Specific Jurisdiction over Hawaii Pacific*

A court may assert specific jurisdiction over a defendant where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  *Burger King*, 471 U.S. at 472

(quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) & *Helicopteros*, 466 U.S. at 414).  When determining whether a defendant has minimum contacts sufficient to create specific jurisdiction, courts apply a two-part test.  "[F]irst, [ ] the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, [ ] the plaintiff's injuries must 'arise out of' defendant's forum-related activities."  *Dudnikov*, 514 F.3d at 1071 (citing *Burger King*, 471 U.S. at 472).  In analyzing a defendant's "purposefully directed" activities, courts look for allegations showing (a) "an intentional action" by the defendant, (b) "expressly aimed at the forum state", (c) with the defendant's "knowledge that the brunt of the injury would be felt in the forum state."  *Id.* at 1072; *see accord Walden v. Fiore*, 571 U.S. ____, 134 S. Ct. 1115, 1122 (2014).  Specific jurisdiction must arise from "actions by the defendant and not [from] events that are the result of unilateral actions taken by someone else."  *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004).  In addition, a plaintiff's  allegations must demonstrate that the alleged injuries "arise out of" the defendant's forum-related activities by showing a causal link between the defendant's contacts and the injuries at issue.  *Dudnikov*, 514 F.3d at 1078–79.

The undersigned's original Report and Recommendation found Ms. Van Ornum failed to allege any facts capable of suggesting that Hawaii Pacific had purposefully directed actions towards Utah or that a causal link existed between any such actions and Ms. Van Ornum's alleged injuries.  (Report & Recs. 15-20, ECF No. 75.)  Ms. Van Ornum's Amended Complaint again fails to make sufficient allegations for specific jurisdiction to attach.

In her argument for specific jurisdiction, Ms. Van Ornum hardly proceeds beyond mere recitation of the basic elements.  The Amended Complaint states:

78. Ms Van Ornum allege that personal jurisdiction and venue accords with Utah Long Arm Statute (UCA §78b-3-201 (3)) and Fourteenth Amendments due process minimal contact because:

a) First, nonresident defendants purposefully direct their activities at residents of their forum which consequentially extend outside their territory at residents in Utah, just as if Utah defendants did not conspire with nonresident defendants they would consequentially extend outside of their territory to the benefit of residents of other forum states, and 42 USC §2000bb-1 (b) demonstration relief and pecuniary relief results from alleged injuries that arise out of or relate to those allege multidistrict antitrust racketeering conspiracy activities[.]

(Am. Compl. 19-20, ECF No. 98.)  This paragraph reflects the extent of Ms. Van Ornum's argument for specific jurisdiction and as such falls short of the burden.

The Court finds this barebones and jumbled recitation insufficient.  The Amended Complaint fails to set forth facts alleging Hawaii Pacific purposefully directed any actions towards Utah, as well as how those actions connect to her alleged injuries.  Ms. Van Ornum fails to make a prima facie showing of specific jurisdiction over Hawaii Pacific.

### 2.  *This Court Lacks General Jurisdiction over Hawaii Pacific*

Without specific jurisdiction, the Court proceeds to analyze the possibility of general jurisdiction.  "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.'"  *OMI Holdings*, 149 F.3d at 1091 (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quoting *Helicopteros*, 466 U.S. at 416)).  Therefore, Ms. Van Ornum must provide facts capable of establishing contacts more widespread than those necessary for specific jurisdiction.  *See, Kuenzle*, 102 F.3d at 458 (quoting *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 146 (10th Cir. 1992)).

The Supreme Court's holding in *Daimler AG v. Bauman* clarified the parameters of general jurisdiction.  571 U.S.___, 134 S. Ct. 746 (2014); *see Parlant Tech. v. Bd. of Educ.*, No. 2:12-CV-417-BCW, 2014 WL 4851881, at *4 (D. Utah Sept. 29, 2014) (unpublished).  The

Supreme Court  noted that courts exercise general ("all-purpose") jurisdiction paradigmatically in those forums where a court would fairly regard an individual or corporate defendant as "at home," such as an  individual's state of domicile or a corporation's state of incorporation or principal place of business.  *Daimler*, 134 S. Ct. at 760 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).  Beyond these "paradigm bases" for general jurisdiction, a court can find general jurisdiction over an out-of-state corporate defendant when the corporation maintains affiliations with the forum state "so continuous and systematic as to render [the corporation] essentially at home in the forum State."  *Id.* at 761 (citing *Goodyear*, 564 U.S. at 919).  Courts appropriately require significantly more contacts before finding general jurisdiction than specific because general jurisdiction allows any plaintiff to sue a defendant in that forum for all claims where subject matter jurisdiction exists.  *See id.* at 751 (noting "a court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" (quoting *Goodyear*, 564 U.S. at 919)).

In considering whether a defendant's contacts with the forum suffice to create general jurisdiction where the defendant does not reside, the Tenth Circuit, prior to *Daimler*, considered the following factors:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Kuenzle*, 102 F.3d at 457 (quoting *Trierweiler*, 90 F.3d at 1533).  This list is non-exhaustive.  *See Trierweiler*, 90 F.3d at 1533 ("In  assessing contacts with a forum, courts have considered *such*

*factors as . . .*") (emphasis added); *Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1193 (D. Colo. 1999) (citation omitted) ("[T]he *Trierweiler* factors are neither exhaustive nor necessarily determinative of the general personal jurisdiction inquiry.").

The Amended Complaint concedes that Hawaii Pacific has neither its principal place of business nor its headquarters in Utah. (Am. Compl. 16, ECF No. 98.) Nonetheless, the Amended Complaint later argues, "non resident's contacts while not rising to the level of the traditional notion of presence in Utah are nonetheless continuous and systematic." (*Id.* at 19-20.) Mere recitation of legal standards does not equate to factual allegations and does not entitle Ms. Van Ornum to any presumptions.

The Amended Complaint includes only sparse reasoning why these contacts rise to the level of "continuous and systematic." In fact, the strongest argument Ms. Van Ornum presents as to why jurisdiction lies in Utah appears in her inverted application of the five-factor *Peay* test. The *Peay* Test, as discussed above, considers five factors to determine whether a defendant has successfully argued a "constitutionally significant inconvenience" that would result from personal jurisdiction derived from nationwide service of process. *Peay*, 205 F.3d at 1212.

Ms. Van Ornum applies these factors to argue why jurisdiction lies in Utah rather than another location. Specifically Ms. Van Ornum writes:

> 79. Ms Van Ornum, Mr Kurihara and Mrs Kurihara allege that personal jurisdiction and venue accords with Fifth Amendment minimal constitutional requirement (28 USC §1331) and constitutional significant inconvenience for both Ms Van Ornum and Defendants' class in that:
> 1) Any other forum is gravely difficult and inconvenient for Ms Van Ornum because she has no contact with other forum, other than consequential;
> 2) It has been futile under the circumstantial comparisons;
> 3) judicial economy is practical in this forum concerning the events thus far in that to timely file, she needs to travel to the Courthouse to file;
> 4) Discovery will probably likely occur primarily in Utah where the association and corporate defendants do substantive, continuous and

systematic business affairs herein, therefore they will have access to the laboratory tests et seq. for burden of demonstration since Utah defendants destroyed our medical and dental records knowing, willful and purposefully (18 USC §1592), to obstruct enforcement of Sherman and Clayton Acts and Racketeering Influence and Corrupt Organization Act violations (15 USC §§1, 2, 3(a)(b), 15(a); 18 USC §1964(c));

5)  Hawaii is furtherance and expensive compare to Utah; and

6)  Hawaii defendants denied due process with equal protection of the law, when Ms Van Ornum was a resident and a non resident in 2012;

7)  Any defendants' gross income and tax liabilities make traveling and attorney's fee a drop in the bucket compare to Ms Van Ornum's gross income and tax liabilities[.]

(Am. Compl. ¶ 79, ECF No. 98.)

Although litigation in other venues may well burden Ms. Van Ornum, in terms of time and expense, she misses the point of the minimum contacts due process analysis.  For a court to exercise personal jurisdiction over Hawaii Pacific, doing so must be "fair and just" to Hawaii Pacific, not Ms. Van Ornum.  *See Dudnikov*, 514 F.3d at 1070 (explaining due process consideration focuses on fairness to the defendant).  Because Ms. Van Ornum, as Plaintiff, chooses the forum, the Court can assume its fairness as to her.

Ms. Van Ornum offers one more argument for general jurisdiction in her Opposition:

52. AMA, ADA, AHA, Eli Lilly, Pfizer, Abbott, Allergan, Hawaii Pacific, Kuakini and Dr Goodhue principle place of business is in diversity jurisdiction and their enterprise's business life is directed at residents of Utah and the litigation results from alleged injuries that arise out of or relate to those activities. Their contact, while not rising to the level of the traditional notion of presence in the forum state, their business life is nonetheless continuous and systematic, a continuing violations and discrimination or deprivation under professional custodial and supervisory authority under color of the law[.]

(Opp'n 10, ECF No. 121.)  The Court notes that mere recitations of legal standards do not equate to factual allegations and do not entitle Ms. Van Ornum to any presumptions.

When assessing a Motion to Dismiss, a Court must assume true all "plausible, non-conclusory, and non-speculative" facts and resolve factual disputes in favor Ms. Van Ornum.

*Dudnikov*, 514 F.3d at 1070 (citing *Twombly*, 550 U.S. at 555).  However, when a defendant submits affidavits contradicting those assertions, the plaintiff must make a prima facie showing of jurisdiction.  *Am. Land*, 710 F.2d at 1454.  With regards to general jurisdiction over Hawaii Pacific, Ms. Van Ornum does not create real factual disputes to resolve.  All discussion of Hawaii Pacific involves events that, if they occurred, occurred in Hawaii.  To the extent Ms. Van Ornum claims Hawaii Pacific had contacts with Utah, Hawaii Pacific submits an affidavit to the contrary that Ms. Van Ornum fails to rebut.

Hawaii Pacific presents strong arguments (argued in Hawaii Pacific's first Motion to Dismiss and incorporated by reference into the present Motion) as to why the Court should not find general jurisdiction.  (Mot. 12, ECF No. 102 (citing Mot. to Dismiss 6-8, ECF No. 14).)  Through the Declaration of Director of Claims, Guy Okano, Hawaii Pacific asserts its status as a non-profit health care network, headquartered and conducting business in Hawaii, with no activity in Utah, let alone the requisite "continuous and systematic general business contacts."  *See OMI Holdings*, 149 F.3d at 1091.

Absent any showing of business activities "so constant and pervasive" as to make Hawaii Pacific "at home" in Utah, Ms. Van Ornum has failed to alleged facts sufficient for the undersigned to find general jurisdiction over Hawaii Pacific.  *See Daimler*, 134 S. Ct. at 751 (quoting standard).

In conclusion, for the Court to have personal jurisdiction over Hawaii Pacific under Utah's Long-Arm Statute, the Amended Complaint must provide some grounds for a finding of minimum contacts with Utah.  *OMI Holdings*, 149 F.3d at 1091.  The Amended Complaint fails to allege facts showing specific or general jurisdiction over these claims, therefore the

undersigned RECOMMENDS the District Judge grant the Motion to Dismiss the remaining claims against Hawaii Pacific for lack of personal jurisdiction.

## RECOMMENDATION

For the reasons stated above, the undersigned RECOMMENDS the Court dismiss all of Ms. Van Ornum's claims against Hawaii Pacific, granting Defendant's Motion to Dismiss. (ECF No. 102.) Based on Ms. Van Ornum's Amended Complaint, the Court lacks personal jurisdiction over Hawaii Pacific and therefore should dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2). Because the undersigned recommends complete dismissal, this Report does not reach Hawaii Pacific's arguments that Ms. Van Ornum lacked standing to bring claims on behalf of her deceased parents or that the Court should dismiss Ms. Van Ornum's Amended Complaint for insufficient service of process. (*See* Mot. 2 n. 3 (citing Mots. to Dismiss, ECF Nos. 14 & 39) (arguing service failed to comply with federal and state law), 15-16, ECF No. 102.)

The Court will send copies of this Report and Recommendation to the parties who the Court hereby notifies of their right to object to the same. The Court further notifies the parties that they must file any objection to this Report and Recommendation with the clerk of the court, pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), within fourteen (14) days of service thereof. Failure to file objections may constitute waiver of objections upon subsequent review.

DATED this 17th day of March, 2017.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge