IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SANDRA C.K. VAN ORNUM,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN MEDICAL ASSOCIATION, *et al.*,<br><br>Defendants. | **REPORT AND RECOMMENDATION: KUAKINI HEALTH SYSTEM MOTION TO DISMISS (ECF No. 103)**<br><br>Case No.  2:14-cv-921-RJS-EJF<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Evelyn J. Furse |

Defendant Kuakini Health System (Kuakini) filed the present Motion to Dismiss *pro se* Plaintiff Sandra C.K. Van Ornum's claims pursuant to Federal Rules of Civil Procedure (Rules) 8(a), 12(b)(2), (5), and (6).  (ECF No. 103.)  Based on the allegations presented in the Amended Complaint, (Am. Compl., ECF No. 98), the undersigned RECOMMENDS the Court find personal jurisdiction over Kuakini under Ms. Van Ornum's antitrust and Racketeer Influenced and Corrupt Organizations (RICO) claims.  However, Ms. Van Ornum fails to state either claim plausibly, and the undersigned RECOMMENDS the Court[1] dismiss the antitrust and RICO claims pursuant to Rule 12(b)(6).  The undersigned finds no basis to exercise personal jurisdiction over Kuakini for the remaining claims.  Therefore, the undersigned RECOMMENDS the Court dismiss the remaining claims without prejudice pursuant to Rule 12(b)(2).[2]  Alternately, the District Judge could dismiss the Amended Complaint as untimely because Ms. Van Ornum submitted her Amended Complaint outside the thirty-day refiling window granted in the District Judge's Order.

---

[1] On January 5, 2015, District Judge Robert J. Shelby referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B).  (ECF No. 3.)

[2] Pursuant to D.U. Civ. R. 7-1(f), the undersigned finds oral argument unnecessary and will make its recommendation based on the Amended Complaint and written memoranda.

(ECF No. 86.)  The undersigned LIFTS the stay, (ECF No. 177), as to Kuakini upon the filing of this Report and Recommendation.

Ms. Van Ornum included in her Opposition a Motion for Extension of Time to Amend and Service of Process.  (Mem. Continuance in Opp'n to Dkt. Nos. 100-106, 113 in Parts; Req. Extension of Time to Amend Dkt. No. 98 and Service of Process (Opp'n) 22-23, ECF No. 129.) The undersigned draws Ms. Van Ornum's attention to D.U. Civ. R. 7-1(b), which prohibits the making of a motion in a response or reply memorandum.  Further, the undersigned denied a similar request for extension made by separate motion the same day.  (ECF No. 130; Mem. Decision & Order 2-3, ECF No. 136.)  For these reasons, the undersigned finds the attempted inclusion of the Motion for Extension of Time and Service of Process as moot.

## BACKGROUND

On December 22, 2014, Ms. Van Ornum filed a *pro se* Complaint against the American Medical Association (AMA), American Dental Association (ADA), American Hospital Association (AHA), Monsanto Company (Monsanto), Eli Lily and Company (Eli Lily), Pfizer Inc. (Pfizer), Abbott Laboratories (Abbott), Allergan Inc. (Allergan), Hawaii Pacific Health System (Hawaii Pacific), Kuakini Health System (Kuakini), and Dr. William Goodhue (Dr. Goodhue).  (ECF No. 1.)  On March 24, 2015, Ms. Van Ornum filed an Amended Complaint prior to service of any Defendant.   (ECF No. 4.)  A few days later, Ms. Van Ornum filed a Motion for Leave to File Amended Complaint, (ECF No. 5), which the undersigned granted. (ECF No. 6.)  Following that Order, Ms. Van Ornum filed the Amendment to Amended Complaint.  (ECF No. 7.)  Defendants then began filing Motions to Dismiss.  (Lilly and Pfizer, ECF No. 9; Hawaii Pacific, ECF No. 14 & 39; AMA, ADA, and AHA, ECF No. 23; Allergan, ECF No. 29; Kuakini, ECF No. 36; Abbott, ECF No. 45; Monsanto, ECF No. 46; Dr. Goodhue,

ECF No. 66.)

Subsequently, the undersigned issued a Report and Recommendation as to all then pending Motions to Dismiss, finding the Court lacked personal jurisdiction over all claims. (Report & Rec., ECF No. 75.)  The District Judge granted each Motion to Dismiss for lack of jurisdiction, with the exception of the antitrust claims, which the District Judge dismissed for failure to comply with Rule 8(a) pleading standards.  (*See* Order, ECF 86.)

After dismissing all claims without prejudice, the District Judge offered Ms. Van Ornum the opportunity to amend her Complaint.  (*Id.*)  Ms. Van Ornum filed the current operative Complaint (the Amended Complaint) on May 4, 2016.  (Am. Compl., ECF No. 98.)  Kuakini then filed a Motion to Dismiss the Amended Complaint.  (ECF No. 103.)  On June 2, 2016, the undersigned granted Ms. Van Ornum an extension until July 5, 2016 to respond to the Motion. (ECF No. 110.)  Ms. Van Ornum requested another extension, granted by the Court on July 8, 2016.  (ECF Nos. 119, 120.)  On August 2, 2016, Ms. Van Ornum responded to Kuakini's Motion, (ECF No. 129), and on August 22, 2016, Kuakini filed its Reply.  (ECF No. 141.)

Ms. Van Ornum's Amended Complaint contains a potpourri of allegations.  From what the undersigned can gather, Ms. Van Ornum alleges Kuakini, acting either independently or as part of the larger (and indefinite) "Defendants' Class", violated numerous constitutional protections and federal statutes.  Constitutional violations include:  the Privileges and Immunities Clause (14th Amendment), the Due Process Clause (14th Amendment), the Equal Protection Clause (14th Amendment), provisions against slavery and involuntary servitude (13th Amendment), Freedom of Speech (1st Amendment), Freedom of Assembly (1st Amendment), and Freedom of the Press (1st Amendment).

Alleged statutory violations include:  18 U.S.C. § 1851 (peonage), 42 U.S.C. § 2000bb-1

(Religious Freedom Restoration Act), 15 U.S.C. § 45 (unfair or deceptive acts or practices (FTC

Act § 5a)), 15 U.S.C. § 1-3 (Sherman Antitrust Act), 15 U.S.C. § 15 (Clayton Antitrust Act), 18

U.S.C. § 1959 (violent crimes in aid of racketeering activity), 18 U.S.C. § 1961 (RICO), and 18

U.S.C. § 1958 (use of interstate facilities in murder for hire).

When the undersigned issued its first Report and Recommendation, it noted that "Ms.

Van Ornum's copious use of … abbreviations makes her Complaint extremely difficult to

understand."  (Report & Rec. 2, ECF No. 75.)  The undersigned further struggled with Ms. Van

Ornum's dense web of alleged facts, claims, and tangled narrative.  Ms. Van Ornum dedicated a

large portion of the Complaint to her and her parent's medical histories, a chronology beginning

in 1900 and continuing through 2013, touching on events in Hawaii, Guam, the Philippines, and

Vietnam.  (*Id.* at 4.)  Ms. Van Ornum directed most allegations of illegality at Defendants

generally, as a broad and shadowy conspiratorial class.  (*Id.*)  The Complaint made little effort to

connect specific factual statements to specific Defendants.  (*Id.*)

Ms. Van Ornum has made some improvements between the Complaint discussed in the

first Report and Recommendation and the Amended Complaint at issue.  Notably, Ms. Van

Ornum eliminated the abbreviations.  Unfortunately, the allegations remain difficult to follow.

Ms. Van Ornum still fails to connect specific facts and claims to specific Defendants, instead

making grand assertions against "Defendants' class."

Essentially, Ms. Van Ornum objects to modern medicine, modern agriculture, and

modern civilization to the extent these systems run contrary to her understanding of the

"knowledge of our Creator's laws of health."  (Am. Compl. 4, ECF No. 98.)  "Defendants' class"

operates a monopolistic force behind these modern systems, maintaining and growing their

power at the expense of "our body and its business department."  (*Id.* at 3.)  Preservation of such

a huge monopoly requires innumerable and unending acts.  Three highlights from Ms. Van Ornum's perspective include the creation of the United States Department of Health, Education and Welfare in 1953, the passage of "the Obama health reform," and the "IRS penalty laws." (Am. Compl. 8, 10, ECF No. 98.)  While Ms. Van Ornum's Amended Complaint only names fourteen specific Defendants, the entire conspiracy consists of "all pharmaceutical and chemical corporations, partnerships, associations, health care providers who are individuals, group of individuals, facilities, hospital and clinics."  (Am. Compl. 3, ECF No. 98.)  Ms. Van Ornum believes that if this group stopped providing/forcing things like fluoridated water, medical surgeries, pharmaceuticals, and chemically-supported agriculture, and if people returned to the practices of health and nutrition supported by her readings of the Old Testament and various other spiritual texts, everyone would live for over 900 years.  (*Id.* at 3-6.)  According to Ms. Van Ornum, Defendants' class propagates its systems, prevents exercise of true health practices, and in doing so robs people generally, and her parents and herself in particular, of good health and ninety percent of their life expectancy.  (*Id.* at 3-4, 9.)

## DISCUSSION

Kuakini offers four grounds for dismissing Ms. Van Ornum's Amended Complaint:  (1) Ms. Van Ornum filed the Amended Complaint late and failed to comply with the Court's pleading instructions, (2) the Amended Complaint fails to meet Rule 8's pleading standards, (3) the Amended Complaint fails to state a claim upon which the Court can grant relief, and (4) the Court lacks personal jurisdiction.  (Mot. 3-5, ECF No. 103.)

## I.  MS. VAN ORNUM FILED HER AMENDED COMPLAINT LATE

Ms. Van Ornum's hand-filed her Amended Complaint late, according to the time provided in the District Judge's March 30, 2016 Order.  (Order 10, ECF No. 86 ("The court

grants Ms. Van Ornum leave to amend her complaint within thirty (30) days of this Order, in accordance with the guidance provided above.  Failure to do so will result in the dismissal of this case with prejudice.").)  The Order gave Ms. Van Ornum thirty days to file her Amended Complaint.  Excluding the entry date of the Order, Rule (6)(a)(1)(A), Ms. Van Ornum's Amended Complaint came due April 29, 2016.  Ms. Van Ornum hand-delivered her Amended Complaint to the Clerk's office on May 4, 2016.  (Am. Compl., ECF No. 98 (Certificate of Service).)  Thus, the Court could dismiss the Amended Complaint with prejudice based on the prior Order, (ECF No. 86).

Ms. Van Ornum's Opposition does not address this point.  (Opp'n, ECF No. 129.)  Given Ms. Van Ornum's *pro se* status, the undersigned proceeds as if Ms. Van Ornum filed her Amended Complaint on time.

Kuakini also asserts that the Court lacks personal jurisdiction, therefore the Court must first address this argument before reaching the merits of Ms. Van Ornum's Amended Complaint. After explaining the undersigned's conclusion that jurisdiction exists over Ms. Van Ornum's antitrust and RICO claims, this Report will explain why the Amended Complaint fails to state an antitrust or RICO claim upon which the Court may grant relief.  Finally, the Report will discuss why the Court lacks personal jurisdiction over Kuakini for the remainder of Ms. Van Ornum's claims.

## II.  WHILE THIS COURT HOLDS PERSONAL JURISDICTION OVER KUAKINI BASED ON THE ANTITRUST CLAIMS, THE ANTITRUST CLAIMS FAIL TO STATE A CLAIM UNDER RULE 12(b)(6)

### A.  Personal Jurisdiction Exists Over the Antitrust Claims

As the Plaintiff, Ms. Van Ornum "bears the burden of establishing personal jurisdiction over the defendant."  *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996) (quoting *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984)).

To meet this burden on a motion to dismiss where the Court receives only affidavits and written materials, Ms. Van Ornum need only make a prima facie showing of personal jurisdiction.  *Id.* "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).  The undersigned takes as true all "plausible, non-conclusory, and non-speculative" facts and resolves factual disputes in favor of Ms. Van Ornum.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-6 (2007)).

Ms. Van Ornum appears *pro se*; thus, the Court must liberally construe her pleadings.  *See id.* at 1073 (acknowledging "solicitous construction due a pro se filing").  However, the Court cannot act as an advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Rules.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) ("[T]his court has repeatedly insisted that *pro se* parties follow the same rules of procedure that govern other litigants.") (quoting *Garrett v. Selby, Connor, Maddux & Janer,* 425 F.3d 836, 840 (10th Cir. 2005)).

A federal court considering whether it has personal jurisdiction over a defendant must decide "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)).

Ms. Van Ornum alleges that Defendants' class injured her "business and property" and seeks "tremble damages, costs, fees and simple interest" under the Clayton Antitrust Act.  (*See* Am. Compl. 43, ECF No. 98.)  15 U.S.C. § 15(a) provides:

> Any person . . . injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages . . . sustained, and the cost of suit, including a reasonable attorney's fee.

To facilitate enforcement of the federal antitrust laws, 15 U.S.C. § 22 authorizes expansive venue and service of process on a corporate defendant:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

Thus, the Clayton Act provides for nationwide service of process against defendant corporations in private civil antitrust suits. *See, e.g.*, *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 422 (2d Cir. 2005) (reading § 22 to permit worldwide service of process in certain circumstances); *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 293 (3d Cir. 2004) ("It is undisputed that the second clause authorizes nationwide, indeed worldwide, service of process on a defendant corporation in federal antitrust litigation."); *Phone Directories Co. v. Contel Corp.*, 786 F. Supp. 930, 942 (D. Utah 1992) ("[S]ervice of process is authorized by the nationwide service of process provision at § 12 of the Clayton Act.").

The circuit split continues as to when 15 U.S.C. § 22 authorizes nationwide service of process. *See* 1B Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 271d (4th ed. 2013) (discussing circuit split); Robert L. Haig, Bus. & Commercial Litig. in Fed. Cts. § 67:57 (3d ed. 2011) (same). The undersigned addressed that split in its Report and Recommendation on the AMA, ADA, and AHA's Motion to Dismiss. (Report & Rec. re ECF 101 11-12, ECF No. 209.) The undersigned adopted the alternate or "independent" reading of the provision that allows nationwide service of process without requiring proper venue under § 22. *In re Auto.*, 358 F.3d

at 294–97 ("We, therefore, hold that the service of process provision on foreign corporations is independent of, and does not require satisfaction of, the specific venue provision under Section 12 of the Clayton Act."); *Action Embroidery Corp. v. Atl. Embroidery, Inc.*,  368 F.3d 1174, 1178–80 (9th Cir. 2004) ("That Congress did not link the requirements for venue and personal jurisdiction under Section 12 is not surprising.").

Having determined that 15 U.S.C. § 22 authorizes nationwide service of process, the undersigned turns to the final step of personal jurisdiction analysis, "whether exercise of jurisdiction comports with due process." *Trujillo*, 465 F.3d at 1217 (quoting *Peay*, 205 F.3d at 1209).  Where a plaintiff brings a federal question under a statute providing  nationwide service of process,

> "the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant."  To defeat federal jurisdiction, a *defendant* must establish that the "chosen forum will make litigation ... gravely difficult and inconvenient" or, in other words, the forum district burdens the defendant with "constitutionally significant inconvenience."  We look to non-exclusive factors in considering whether defendants have met this burden, such as (1) the extent of contact with the forum state, (2) the inconvenience of having to litigate in a foreign jurisdiction, (3) judicial economy, (4) the probable situs of the discovery proceedings, and (5) the nature of the defendant's activities and its impact beyond his state's borders.

*Klein v. Cornelius*, 786 F.3d 1310,  1318 (10th Cir. 2015) (quoting *Peay*, 205 F.3d at 1212)
(emphasis added).

Kuakini failed to address personal jurisdiction under the antitrust laws in its original Motions to Dismiss, (Report & Rec. 12, ECF No. 75), and only briefly touches upon the issue in the present Motion to Dismiss, saying only:  "the Court's exercise of jurisdiction over Kuakini under the Clayton, Sherman, and RICO Acts does not satisfy due process.  Indeed, it would put Kuakini, an out of state defendant with no contacts with Utah, at a severe disadvantage if required to defend this case in Utah."  (Mot. to Dismiss 5, ECF No. 103.)

Defendants must prove "constitutionally significant inconvenience." *Klein*, 786 F.3d at 1318. As the District Judge's Order noted, the Tenth Circuit only finds such inconvenience "in highly unusual cases." (Order 6, ECF No. 86 (quoting *Peay*, 205 F.3d at 1212).) The Tenth Circuit relies on the five factors elaborated in *Peay* to determine whether due process concerns exist. Kuakini has not argued any of the *Peay* factors. Kuakini concludes that personal jurisdiction under the antitrust statutes would violate due process without developing any reasoning as to why beyond the fact that Kuakini is "an out of state defendant with no contacts." (Mot. 4-5, ECF No. 103.) The undersigned concludes that Kuakini has again failed to meet the burden of demonstrating a "constitutionally significant inconvenience."

Section 22 authorizes nationwide service of process, regardless of the venue's propriety under § 22. In the absence of an affirmative showing of "constitutionally significant inconvenience," jurisdiction over Kuakini comports with due process. Therefore, the undersigned RECOMMENDS the Court find personal jurisdiction over Kuakini based on the antitrust claims.

### B. Ms. Van Ornum Fails to State a Cognizable Antitrust Claim Under Rule 12(b)(6)

If the District Judge adopts the undersigned's analysis of personal jurisdiction arising from the antitrust statutes, the undersigned nonetheless recommends dismissal of the antitrust claims under Rule 12(b)(6) for failure to state a claim.

The Court construes *pro se* pleadings liberally and holds them to a "less stringent standard." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Garrett*, 425 F.3d at 840 (internal quotation omitted)). A *pro se* plaintiff's claims should survive a Rule 12(b)(6) motion "despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with

pleading requirements." *Id.* (quoting *Hall*, 935 F.2d at 1110).  Regardless, even a *pro se* plaintiff

must "'set forth plausible claims' animating the elements of her causes of action."  *See Burnett v.*

*Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) (quoting *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009)).

Whether a plaintiff's claims rise to the threshold of plausible depends on the factual

allegations presented within the complaint.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state

a claim to relief that is plausible on its face.").  "[C]onclusory allegations without supporting

factual averments are insufficient to state a claim on which relief can be based."  *Hall*, 935 F.2d

at 1110.  The Court will disregard legal allegations masquerading as factual allegations.

*Twombly*, 550 U.S at 554–56 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  If a *pro se*

party has not alleged sufficient facts to support a legal theory, courts will not fill in the factual

gaps.  *Smith*, 561 F.3d at 1096 (citing *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th

Cir. 1997)).

Should a plaintiff's original complaint miss "important element[s] that may not have

occurred to him," the court will grant leave to amend.  *Hall*, 935 F.2d at 1110.  After providing

an opportunity to amend, a court may properly dismiss with prejudice only upon concluding that

further opportunity to amend would prove "futile."  *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th

Cir. 2010).

The District Judge dismissed all antitrust claims in Ms. Van Ornum's Complaint without

prejudice under Rule 12(b)(6) because Ms. Van Ornum's claims failed to comply with Rule

8(a)(2):  "a short and plain statement of the claim showing that the pleader is entitled to relief."

(Order 7-9, ECF No. 86.)  Ms. Van Ornum's Amended Complaint fails to solve this problem.

Put in the best possible light, Ms. Van Ornum alleges Kuakini belongs to a class of Defendants, who conspire to withhold knowledge of the true nature of our bodies, provide harmful food, drink, pharmaceuticals, products, and medical and dental procedures, and lobby to pass laws with the intent of preventing Ms. Van Ornum and her parents from spreading their message of a much longer life possible through alternative means.  (*See* Am. Compl. 8-10, ECF No. 98.)  Through this conspiracy, the Defendants force the general public, including Ms. Van Ornum, to buy unhealthy food, submit to unhealthy medical procedures, take unhealthy medications, and drink unhealthy water that leads to a reduced life expectancy and financially benefits the Defendants.  (*Id.*)

Ms. Van Ornum fails to allege the facts necessary to support antitrust claims.  The Amended Complaint's confusing syntax, structure, and allegations make understanding the complete relationship between Ms. Van Ornum, her family, Kuakini, and the other Defendants difficult.  Ms. Van Ornum seems to allege that Kuakini consists of Hawaii-based medical facilities, which Ms. Van Ornum and her family have had various interactions with over the decades.  Ms. Van Ornum believes that Kuakini deeply supports the modern medicine conspiracy, taking every opportunity to ruin her and her family's health and well-being through the use of modern medicine.  (Am. Compl. 9, 13-14, 16, 29-31, 38-39, 49, ECF No. 98.)  Ms. Van Ornum alleges that Kuakini in combination with the Defendants had a hand in the death of both her parents as murder-for-hire in propagation of the larger conspiracy to eliminate the competition.  (*Id.* at 9.)

A private litigant making a civil antitrust claim does so through the Clayton Act, 15 U.S.C. § 15, allowing a private right of action, for violations of the Sherman Act, 15 U.S.C. §§ 1-3.  Ms. Van Ornum's allegations concerning Kuakini do not outline the basic elements of a 15

U.S.C. § 1 claim.  The keystone of any 15 U.S.C. § 1 claim lies in the demonstration of "an agreement, tacit or express." *Twombly*, 550 U.S. at 553–54 (quoting *Theatre Enter., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 542 (1954)).  Independent parallel business behavior may provide admissible circumstantial evidence but standing alone fails to establish an agreement.  *Id.*  No allegations address even the basic factual premises necessary for an agreement, (for example:  Kuakini agreed with whom? Kuakini agreed to what? Kuakini used what means to effectuate that agreement?).  Without these kinds of factual allegations, the antitrust claims fail under 15 U. S. C. § 1.[3]

A 15 U.S.C. § 2 claim requires allegations of:  (1) the monopoly, (2) the relevant market, (3) the misconduct, and (4) a connection between the misconduct and harm to competition in the relevant market. *Duty Free Americas, Inc. v. Estee Lauder Co., Inc.*, 797 F.3d 1248, 1262–64 (11th Cir. 2015) (explaining in detail the allegations necessary to state a claim for attempted monopolization under § 2).  Ms. Van Ornum's allegations as to Kuakini do not, and cannot, map onto this basic framework.  The Amended Complaint alleges a monopoly between anyone with a hand in modern medicine, agriculture, or health generally, the relevant market includes the whole world, and the harm results from the monopolists' depriving all people of their natural life expectancy of 900 years.  (Am. Compl. ¶¶ 8, 12-13, ECF No. 98.)  The extreme implausibility of these claims, the notion of collusion on an impossibly large scale, the assertion that without modern antibiotics, surgery, and nutrition we would live centuries longer, do not add up to a 15 U.S.C. § 2 claim.  A *pro se* plaintiff must "'set forth plausible claims' animating the elements of her causes of action." *See Burnett*, 706 F.3d at 1236 (quoting *Iqbal*, 556 U.S. at 678).  The undersigned must acknowledge the extreme implausibility that anyone is actively engaged in a

---

[3] 15 U.S.C. § 3 effectively applies 15 U.S.C. § 1 to the District of Columbia and the United States territories.  Thus to the extent Ms. Van Ornum asserts claims under this statute, they suffer from the same plausibility defects as the 15 U.S.C. § 1 antitrust claims.

conspiracy to reduce human life expectancy from 900 or more years to 100 or fewer years, let alone in a conspiracy this vast.  Ms. Van Ornum falls short of meeting her burden, and for the above reasons the undersigned RECOMMENDS the District Judge dismiss Ms. Van Ornum's antitrust claims pursuant to Rule 12(b)(6).

### III. WHILE THIS COURT HOLDS PERSONAL JURISDICTION OVER KUAKINI BASED ON THE RICO CLAIM, THE RICO CLAIM FAILS TO STATE A CLAIM UNDER RULE 12(b)(6)

#### A.  Personal Jurisdiction Exists Over Kuakini Derived From the RICO Claim

Whether Ms. Van Ornum may properly hale Kuakini into the District of Utah through RICO's nationwide service of process provision depends on three findings.  First, "personal jurisdiction based on minimum contacts [must be] established as to at least one defendant." *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1230 (10th Cir. 2006) (quoting *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998)).  Second, the plaintiff may serve summons on other defendants outside the district if required by the "ends of justice." *Id.*  Once the Court makes these findings, it must proceed with an inquiry under the Fifth Amendment to determine whether exercise of jurisdiction over Kuakini "comports with Fifth Amendment due process." *See Cory*, 468 F.3d at 1229 (noting statutory nationwide service of process confers personal jurisdiction, but exercise of that jurisdiction must still meet Fifth Amendment due process requirements).

As to the first finding, the Amended Complaint alleges Intermountain Health Care, Inc. (IHC), the fourteenth named Defendant and a partner in the RICO conspiracy according to the allegations, is a Utah-based company with its primary place of business and headquarters in Salt Lake City, Utah.  (Am. Compl. 17, ECF No. 98.)  Therefore, the Court finds minimum contacts exist between at least one Defendant and the District of Utah.

Even with apparent personal jurisdiction over IHC, the RICO statute will only authorize

nationwide service of process upon Kuakini if the ends of justice so require.  The undersigned

considered the ends of justice with respect to the Defendants collectively in a prior Report and

Recommendation and found the prong satisfied.  (Report & Rec. re ECF No. 100 9-13, ECF No.

208.)

Having made the determination that Ms. Van Ornum may use nationwide service of

process, the undersigned must consider whether the Fifth Amendment Due Process Clause

permits the Court to exercise personal jurisdiction over Kuakini.  In *Cory*, the Tenth Circuit

endorsed the Fifth Amendment due process analysis set forth in *Peay*, 205 F.3d at  1212.  *Cory*,

468 F.3d at 1229.  *Peay* shifts the burden to defendants to prove that nationwide service of

process, otherwise authorized under statute, does not comport with due process.  *Peay*, 205 F.3d

at 1212 (applying Fifth Amendment due process analysis after nationwide service of process

under Employee Retirement Income Security Act).  As noted above, the *Peay* test includes a

five-factor analysis used to determine whether a defendant has successfully argued a

"constitutionally significant inconvenience" that would result from personal jurisdiction derived

from nationwide service of process.  *Id.*

Kuakini does not address the Fifth Amendment due process analysis in its Motion.  (ECF

No. 103.)  It does address the failings of the Amended Complaint, arguing Ms. Van Ornum failed

to establish the Court's personal jurisdiction.  (Mot. 4-5, ECF No. 103.)  However, at this stage,

Kuakini bears the burden to argue why litigating in Utah would present a "constitutionally

significant inconvenience."  *See Peay*, 205 F.3d at 1212 (quoting *Republic of Panama v. BCCI

Holdings,* 119 F.3d 935, 946 (11th Cir. 1997)) (setting forth defendant's burden).  Kuakini makes

little effort to explain why appearing in Utah would cause it constitutional harm, or why

litigating in Utah would prove inconvenient or unconducive to judicial economy.  (Mot. 4-5,

ECF No. 103.)  Furthermore, Kuakini only cursorily addresses potential connection and contact with Utah.  (*Id.*)   The five factors of *Peay* are non-exclusive and a "constitutionally significant inconvenience" could presumably exist without a defendant rigorously arguing all five factors. *Peay*, 205 F.3d at 1212.  However, the burden imposed by *Peay* remains distinct from the Fourteenth Amendment due process arguments concerning specific and general jurisdiction. Absent strong argument for a "constitutionally significant inconvenience," Kuakini fails to demonstrate a due process problem.  (*See* Order, ECF No. 86 (noting the Tenth Circuit only finds constitutionally significant inconvenience in rare instances)).  The undersigned RECOMMENDS finding personal jurisdiction exists over Kuakini based on the RICO claims.

### B.  Ms. Van Ornum Fails to State a Cognizable RICO Claim Under Rule 12(b)(6)

If the District Judge adopts the undersigned's analysis of personal jurisdiction arising from RICO, the undersigned nonetheless recommends dismissal of the RICO claim against Kuakini under Rule 12(b)(6) for failure to state a claim.

Ms. Van Ornum does not allege facts sufficient to create any plausible RICO claim.  The Amended Complaint's RICO allegations assert that Kuakini, acting in concert with the broad class of Defendants, "commit[s] continuous and systematic serious injuries and damages to our body and its business department in aid of racketeering activities."  (Am. Compl. ¶ 8, ECF No. 98.)  Defendants' class tricks the public into believing modern agriculture, modern medicine, and chlorination, among other ingenuities, aid health, when in reality these devices take centuries off our natural life span.  (*Id.* at ¶¶ 9-12.)  By purposefully withholding "knowledge of our Creator's laws of health," Defendants force humanity into "peonage."  (*Id.* at ¶ 15.)  The RICO enterprise stoops to the depths of "murder in aid of racketeering activities and use[s] interstate commerce facilities to commission murder-for-hire."  (*Id.* at ¶ 7.)

Ms. Van Ornum's Amended Complaint relies on a broad and ill-defined "class" of Defendants. The group involved in the suspected enterprise includes "all pharmaceutical and chemical corporations, partnerships, associations, health care providers who are individuals, group of individuals, facilities, hospital and clinics." (*Id.* at ¶ 8.) This fact alone provides grounds to dismiss the RICO claims. While alleging the existence of an "enterprise" is necessary to state a civil RICO claim, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495–97 (1985) ("A violation of § 1962(c)… requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."); *Boyle v. United States*, 556 U.S. 938, 943–45 (2009) (defining "enterprise"), Ms. Van Ornum sets an impossible task for herself. No imaginable set of facts exists that Ms. Van Ornum can allege (and Ms. Van Ornum alleges few facts) that would tie together every pharmaceutical company, chemical company, and health care provider into a single enterprise.

Ms. Van Ornum's allegations concerning racketeering activity simply do not create plausible claims, even at this stage. The Amended Complaint alleges that Defendants' class "commit murder-for-hire" against Mr. Van Ornum's grandmother to "obtain 5 life expectancy from her alkaline reserve," (Am. Compl. 29-30, ECF No. 98), or the repeated allegation that Kuakini would rather murder Ms. Van Ornum and her family than allow them to practice medicine according to "our Creator's laws of health[.]" (Am. Compl. 13-14, 31, 49, ECF No. 98.) All of these implausible, conspiratorial claims add up to something less than "'plausible claims' animating the elements of her cause of cause[] of action." *See Burnett*, 706 F.3d at 1236 (quoting *Iqbal*, 556 U.S. at 678).

While a pattern of murdering business competitors certainly could satisfy two requisite elements of RICO, racketeering activity and a pattern, the Amended Complaint must sufficiently

allege a pattern of murder and murder-for-hire.  (*See* Am. Compl. ¶ 53, ECF No. 98 (claiming

Kuakini murdered Mr. Kurihara "after discovering that he is their primary competitor.")); *see*

*Sedima*, 473 U.S. at 495–97 (identifying "a pattern…of  racketeering activity" as a necessary

civil RICO element); *see also* 18 U.S.C. § 1962(c).  At various points in her Amended

Complaint, Ms. Van Ornam claims that Kuakini had some hand in the murder of her grandfather,

grandmother, mother, and father.  (Am. Compl. ¶¶ 36, 53-54, 97-98, ECF No. 98.)  Each

description falls short of animating the element of racketeering – lacking the necessary detail,

factual premises, and common-sense plausibility necessary to survive the present Motion.

*Burnett*, 706 F.3d at 1236; *Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice.").

      Ms. Van Ornum goes into greater description for her mother's harassment and death, yet

still fails to allege sufficiently any qualifying racketeering activity.  "Determining whether a

complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense.'"  *Burnett*, 706 F.3d at 1236 (quoting

*Iqbal,* 556 U.S. at 679).  Again to allege harm from racketeering activity requires a baseline of

factual premises – who, what, when, where – to provide a solid foundation.  Ms. Van Ornum's

allegation "that Mrs Kurihara serious injuries and damages Kuakini and Hawaii Pacific caused is

the cause she experience an involuntary backward jerk and fell on November 6, 2010," remains

insufficient without explaining the casual link between Kuakini, Hawaii Pacific, and Mrs.

Kurihara's injury.  (Am. Compl. ¶ 171, ECF No. 98.)  Allegations that actually connect Kuakini

to Mrs. Kurihara's murder remain even more elusive.  Ms. Van Ornum uses the terminology of

RICO, without providing the factual underpinnings necessary for a successful RICO claim.  The

Court is "not bound to accept as true a legal conclusion couched as a factual allegation."

*Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

Even the relief Ms. Van Ornum seeks lacks plausibility:  "restore back to the people our Creator's laws of health, privilege or immunities, life, liberty and property, nationwide, for the wellbeing of this promised land."  (Am. Compl. ¶ 185, ECF No. 98.)  To assist the Court, a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and that statement must be plausible.  *Twombly,* 550 U.S at 570.  Ms. Van Ornum has had multiple opportunities to frame her issues in this manner and has failed to conform to the Rules.  Therefore, the undersigned RECOMMENDS dismissing all RICO and racketeering claims against Kuakini for failure to state a claim.

## IV.  NO PERSONAL JURISDICTION EXISTS UNDER UTAH'S LONG-ARM STATUTE

If this Court dismisses Ms. Van Ornum's antitrust and RICO claims, the continued existence of pendant jurisdiction becomes suspect.  The Tenth Circuit found abuse of discretion where a district court retained pendant jurisdiction after dismissing the anchor claim prior to trial. *United States v. Botefuhr*, 309 F.3d 1263, 1274 (10th Cir. 2002).  Here, dismissal of the anchor claims, the antitrust and RICO claims, would occur prior to discovery even beginning. Therefore, absent another basis for personal jurisdiction, the Court should follow the prudent course and dismiss the pendant claims without prejudice for lack of jurisdiction.  As discussed below, no other basis exists for this Court to exercise personal jurisdiction over Kuakini.

Whether the Court holds personal jurisdiction over Kuakini absent nationwide service of process, depends on Rule 4(k)(1)(A) and Utah's long-arm statute.  *See Dudnikov*, 514 F.3d at 1070 (noting where federal statutes at issue do not provide nationwide service of process, the court considers the law of the forum state).  Utah's long-arm statute extends to the limits allowed by due process of law, Utah Code Ann. § 78B-3-201(3); *see Dudnikov*, 514 F.3d at 1070 (noting

similar Colorado statute confers maximum jurisdiction permitted by due process), and the inquiry turns on whether the exercise of jurisdiction over Kuakini comports with the Fourteenth Amendment's Due Process Clause.  *See Klein*, 786 F.3d at 1318 (distinguishing 14th Amendment analysis from 5th Amendment analysis).

Due process requires that, for a court to hold jurisdiction over a nonresident, "minimum contacts between the defendant and the forum State" must exist.  *Trujillo*, 465 F.3d at 1217–18 (quoting *Intercon, Inc. v. Bell Atl. Internet Sol., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)).  "Because a state's sovereignty is territorial in nature, a defendant's contacts with the forum state must be sufficient such that, notwithstanding its lack of physical presence in the state, the state's exercise of sovereignty over it can be described as fair and just."  *Dudnikov*, 514 F.3d at 1070.

A plaintiff may demonstrate Fourteenth Amendment minimum contacts in two ways:

First, a court may exercise *specific* jurisdiction if a "defendant has 'purposefully directed' his activities at residents of the forum . . . *and* the litigation results from alleged injuries that 'arise out of or relate to' those activities."  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (citations omitted) (emphasis added).    Second, a court may exercise *general* jurisdiction where the defendant's contacts, while not rising to the level of the traditional notion of presence in the forum state, are nonetheless "continuous and systematic." *Trierweiler [v. Croxton & Trench Holing Corp.]*, 90 F.3d [1523,] 1533 [(10th Cir. 1996)] (quoting *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 416 (1984)).

*Kuenzle*, 102 F.3d at 455.  If the court finds it has either specific or general jurisdiction over a defendant, the case against that defendant satisfies the "minimum contacts" standard.  *See OMI Holdings*, 149 F.3d at 1090-91.  After a successful finding of minimum contacts, a court must next analyze whether the exercise of personal jurisdiction over the defendant comports with  "traditional notions of fair play and substantial justice."  *Id.* (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Ct.*, 480 U.S. 102, 113 (1987)).  The undersigned does not reach this final test.

### 1. Specific Jurisdiction

A court may assert specific jurisdiction over a defendant where "the defendant has

'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) & *Helicopteros*, 466 U.S. at 414).  When determining whether a defendant has minimum contacts sufficient to create specific jurisdiction, courts apply a two-part test.  "[F]irst, [ ] the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, [ ] the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov*, 514 F.3d at 1071 (citing *Burger King*, 471 U.S. at 472).  In analyzing a defendant's "purposefully directed" activities, courts look for allegations showing (a) "an intentional action" by the defendant, (b) "expressly aimed at the forum state", (c) with the defendant's "knowledge that the brunt of the injury would be felt in the forum state." *Id.* at 1072; *see accord Walden v. Fiore*, 571 U.S. ____, 134 S. Ct. 1115, 1122 (2014).  Specific jurisdiction must arise from "actions by the defendant and not [from] events that are the result of unilateral actions taken by someone else." *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004).  In addition, a plaintiff's  allegations must demonstrate that the alleged injuries "arise out of" the defendant's forum-related activities by showing a causal link between the defendant's contacts and the injuries at issue. *Dudnikov*, 514 F.3d at 1078–79.

The undersigned's original Report and Recommendation found that Ms. Van Ornum failed to allege any facts capable of suggesting that Kuakini had purposefully directed actions towards Utah or that a causal link existed between any such actions and Ms. Van Ornum's alleged injuries.  (Report & Rec. 15-20, ECF No. 75.)  Ms. Van Ornum's Amended Complaint again fails to make sufficient allegations for specific jurisdiction to attach.

In her argument for specific jurisdiction, Ms. Van Ornum hardly proceeds beyond mere

recitation of the basic elements.  The Amended Complaint states:

> 78. Ms Van Ornum allege that personal jurisdiction and venue accords with Utah Long Arm Statute (UCA §78b-3-201 (3)) and Fourteenth Amendments due process minimal contact because:
> a) First, nonresident defendants purposefully direct their activities at residents of their forum which consequentially extend outside their territory at residents in Utah, just as if Utah defendants did not conspire with nonresident defendants they would consequentially extend outside of their territory to the benefit of residents of other forum states, and 42 USC §2000bb-1 (b) demonstration relief and pecuniary relief results from alleged injuries that arise out of or relate to those allege multidistrict antitrust racketeering conspiracy activities[.]

(Am. Compl. 19-20, ECF No. 98.)  This paragraph reflects the extent of Ms. Van Ornum's argument for specific jurisdiction and as such falls short of the burden.

The Court finds this barebones and jumbled recitation insufficient.  The Amended Complaint fails to set forth facts alleging Kuakini purposefully directed actions towards Utah, as well as how those actions connect to the alleged injuries.  Ms. Van Ornum fails to make a prima facie showing of specific jurisdiction.

### 2.  *General Jurisdiction*

Without specific jurisdiction, the Court proceeds to analyze the possibility of general jurisdiction.  However, "[b]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quoting *Helicopteros*, 466 U.S. at 416)).  Therefore, Ms. Van Ornum must provide facts capable of establishing contacts more widespread than those necessary for specific jurisdiction.  *See, Kuenzle*, 102 F.3d at 458 (quoting *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 146 (10th Cir. 1992)).

The Supreme Court's holding in *Daimler AG v. Bauman* clarified the parameters of

general jurisdiction.  571 U.S.___, 134 S. Ct. 746 (2014); *see Parlant Tech. v. Bd. of Educ.*, No. 2:12-CV-417-BCW, 2014 WL 4851881, at *4 (D. Utah Sept. 29, 2014) (unpublished).  The Supreme Court  noted that courts exercise general ("all-purpose") jurisdiction paradigmatically in those forums where a court would fairly regard an individual or corporate defendant as "at home," such as an  individual's state of domicile or a corporation's state of incorporation or principal place of business.  *Daimler*, 134 S. Ct. at 760 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).  Beyond these "paradigm bases" for general jurisdiction, a court can find general jurisdiction over an out-of-state corporate defendant when the corporation maintains affiliations with the forum state "so continuous and systematic as to render [the corporation] essentially at home in the forum State."  *Id.* at 761 (citing *Goodyear*, 564 U.S. at 919).  Courts appropriately require significantly more contacts before finding general jurisdiction than specific because general jurisdiction allows any plaintiff to sue a defendant in that forum for all claims where subject matter jurisdiction exists.  *See id.* at 751 (noting "a court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" (quoting *Goodyear*, 564 U.S. at 919)).

In considering whether a defendant's contacts with the forum suffice to create general jurisdiction where the defendant does not reside, the Tenth Circuit, prior to *Daimler*, considered the following factors:

> "(1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation."

*Kuenzle*, 102 F.3d at 457 (quoting *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996)).  This list is non-exhaustive.  *See Trierweiler*, 90 F.3d at 1533 ("In assessing contacts with a forum, courts have considered *such factors as* . . .") (emphasis added) (citation omitted); *Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1193 (D. Colo. 1999) (citation omitted) ("[T]he *Trierweiler* factors are neither exhaustive nor necessarily determinative of the general personal jurisdiction inquiry.").

The Amended Complaint concedes that Kuakini has neither its principal place of business nor headquarters in Utah.  (Am. Compl. 16, ECF No. 98.)  Nonetheless, the Amended Complaint later argues, "non resident's contacts while not rising to the level of the traditional notion of presence in Utah are nonetheless continuous and systematic."  (*Id.* at 19-20.)  Ms. Van Ornum provides few reasons why these contacts rise to the level of "continuous and systematic."  In fact, the strongest argument Ms. Van Ornum presents as to why jurisdiction lies in Utah appears in her inverted application of the five-factor *Peay* test.  The *Peay* Test, as discussed above, considers five factors to determine whether a defendant has successfully argued a "constitutionally significant inconvenience" that would result from personal jurisdiction derived from nationwide service of process.  *Peay*, 205 F.3d at 1212.

Ms. Van Ornum applies these factors to argue why jurisdiction lies in Utah rather than another location.  Specifically Ms. Van Ornum writes:

> 79. Ms Van Ornum, Mr Kurihara and Mrs Kurihara allege that personal jurisdiction and venue accords with Fifth Amendment minimal constitutional requirement (28 USC §1331) and constitutional significant inconvenience for both Ms Van Ornum and Defendants' class in that:
>    1) Any other forum is gravely difficult and inconvenient for Ms Van Ornum because she has no contact with other forum, other than consequential;
>    2) It has been futile under the circumstantial comparisons;
>    3) judicial economy is practical in this forum concerning the events thus

far in that to timely file, she needs to travel to the Courthouse to file;

4) Discovery will probably likely occur primarily in Utah where the association and corporate defendants do substantive, continuous and systematic business affairs herein, therefore they will have access to the laboratory tests et seq. for burden of demonstration since Utah defendants destroyed our medical and dental records knowing, willful and purposefully (18 USC §1592), to obstruct enforcement of Sherman and Clayton Acts and Racketeering Influence and Corrupt Organization Act violations (15 USC §§1, 2, 3(a)(b), 15(a); 18 USC §1964(c));

5) Hawaii is furtherance and expensive compare to Utah; and

6) Hawaii defendants denied due process with equal protection of the law, when Ms Van Ornum was a resident and a non resident in 2012;

7) Any defendants' gross income and tax liabilities make traveling and attorney's fee a drop in the bucket compare to Ms Van Ornum's gross income and tax liabilities[.]

(Am. Compl. ¶ 79, ECF No. 98.)

Although litigation in other venues may well burden Ms. Van Ornum, in terms of time and expense, she misses the point of the minimum contacts due process analysis. For the Court to exercise personal jurisdiction over Kuakini, doing so must be "fair and just" to Kuakini, not Ms. Van Ornum. *See Dudnikov*, 514 F.3d at 1070 (explaining due process consideration focuses on fairness to the defendant). Because Ms. Van Ornum, as Plaintiff, chooses the forum, the Court can assume its fairness as to her.

Ms. Van Ornum's Opposition appears to argue that this Court has personal jurisdiction because all named Defendants belong to a class that includes co-conspirators in Utah, and "any co-conspirator's act in a district is attributable to the other co-conspirators." (Opp'n 9-10, ECF No. 129 (quoting *Ethanol Ptnrs. Accredited v. Winer, Zucherbrot, Weiss, Brecher*, 635 F. Supp. 15, 18 (E.D. Pa. 1985).) However, the undersigned recommends dismissing the antitrust and RICO claims, mooting this point.

When assessing a Motion to Dismiss, a Court must assume true all "plausible, non-conclusory, and non-speculative" facts and resolve factual disputes in favor Ms. Van Ornum.

*Dudnikov*, 514 F.3d at 1070 (citation omitted).  However, with regards to general jurisdiction over Kuakini, Ms. Van Ornum does not create factual disputes to resolve.  All discussion of Kuakini involves events that, if they occurred, occurred in Hawaii.  For example, Ms. Van Ornum discusses the alleged murder of her parents (Mr. and Mrs. Kurihara) in Kuakini facilities in Hawaii.  (Am. Compl. 9, 13-14, & 30, ECF No. 98.)  Ms. Van Ornum also puts forth her belief that Kuakini had a hand in another pair of murder plots against her grandparents (Mr. Kurihara's parents) in Hawaii.  (Am. Compl. 29-30, ECF No. 98.)  Kuakini surfaces again in the story when Ms. Van Ornum addresses her daughter and late mother's health issues in Hawaii.  (Am. Compl. 38-39, 49-50, ECF No. 98.)  Ms. Van Ornum alleges no facts, in either her Amended Complaint or Opposition that indicate any connection between Kuakini and Utah.  (ECF No. 98, 129.)  Kuakini makes strong note of this point, as well as the fact that it is incorporated in and holds its principal place of business in Hawaii.  (Mot. to Dismiss 4, ECF No. 103.)

The Amended Complaint fails to allege facts sufficient for the Court to find general jurisdiction over Kuakini.  Absent any showing of business activities "so constant and pervasive" as to make the corporations "at home" in Utah, the undersigned cannot find general jurisdiction.  *See Daimler*, 134 S. Ct. at 751 (quoting standard).

In conclusion, for the Court to have personal jurisdiction over Kuakini to hear the remaining claims, the Amended Complaint must provide some grounds for a finding of minimum contacts with Utah.  *OMI Holdings*, 149 F.3d at 1091.  Ms. Van Ornum has failed to allege facts showing specific or general jurisdiction over Kuakini, therefore the undersigned RECOMMENDS the District Judge grant the Motion to Dismiss without prejudice for lack of personal jurisdiction.

**RECOMMENDATION**

For the reasons stated above, the undersigned RECOMMENDS the Court dismiss Ms. Van Ornum's antitrust and RICO claims against Kuakini for failure to state a claim, and dismiss all remaining claims against Kuakini for lack of personal jurisdiction, granting Kuakini's Motion to Dismiss, (ECF No. 103).

The Court will send copies of this Report and Recommendation to the parties who the Court hereby notifies of their right to object to the same.  The Court further notifies the parties that they must file any objection to this Report and Recommendation with the Clerk of the Court,  pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), within fourteen (14) days of service  thereof.  Failure to file objections may constitute waiver of objections upon subsequent review.

DATED this 20th day of March, 2017.


BY THE COURT:

*Evelyn J. Furse*

EVELYN J. FURSE
United States Magistrate Judge

27