IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SANDRA C.K. VAN ORNUM,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN MEDICAL ASSOCIATION, *et al.*,<br><br>Defendants. | **REPORT AND RECOMMENDATION: MONSANTO MOTION TO DISMISS (ECF No. 104)**<br><br>Case No.  2:14-cv-921-RJS-EJF<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Evelyn J. Furse |

Defendant Monsanto Company (Monsanto) filed the present Motion to Dismiss *pro se* Plaintiff Sandra C.K. Van Ornum's claims pursuant to Federal Rules of Civil Procedure (Rules) 8(a), 12(b)(2), (5), and (6).  (ECF No. 104.)  Based on the allegations presented in the Amended Complaint, (Am. Compl., ECF No. 98), the undersigned RECOMMENDS the Court find personal jurisdiction over Monsanto with regards to the  antitrust and Racketeer Influenced and Corrupt Organizations (RICO) claims.  However, Ms. Van Ornum fails to state either claim plausibly, and the undersigned RECOMMENDS the Court[1] dismiss the antitrust and RICO claims pursuant to Rule 12(b)(6).  The undersigned finds no basis to exercise personal jurisdiction over Monsanto for the remaining claims.  Therefore, the undersigned RECOMMENDS the Court dismiss the remaining claims without prejudice pursuant to Rule 12(b)(2).[2]  Alternately, the District Judge could dismiss the Amended Complaint as untimely because Ms. Van Ornum submitted her Amended Complaint outside the thirty-day refiling window granted in the District Judge's Order.

---

[1] On January 5, 2015, District Judge Robert J. Shelby referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B).  (ECF No. 3.)
[2] Pursuant to D.U. Civ. R. 7-1(f), the undersigned finds oral argument unnecessary and will make its recommendation based on the Amended Complaint and written memoranda.

(ECF No. 86.)  The undersigned LIFTS the stay, (ECF No. 177), as to Monsanto upon the filing of this Report and Recommendation.

## BACKGROUND

On December 22, 2014, Ms. Van Ornum filed a *pro se* Complaint against the American Medical Association (AMA), American Dental Association (ADA), American Hospital Association (AHA), Monsanto Company (Monsanto), Eli Lilly and Company (Eli Lilly), Pfizer Inc. (Pfizer), Abbott Laboratories (Abbott), Allergan Inc. (Allergan), Hawaii Pacific Health System (Hawaii Pacific), Kuakini Health System (Kuakini), and Dr. William Goodhue (Dr. Goodhue).  (ECF No. 1.)  On March 24, 2015,  Ms. Van Ornum filed an Amended Complaint prior to service of any Defendant.   (ECF No. 4.)  A few days later, Ms. Van Ornum filed a Motion for Leave to File Amended Complaint, (ECF No. 5), which the undersigned granted. (ECF No. 6.)  Following that order, Ms. Van Ornum filed the Amendment to Amended Complaint.  (ECF No. 7.)  Defendants then began filing Motions to Dismiss.  (Eli Lilly and Pfizer, ECF No. 9; Hawaii Pacific, ECF No. 14 & 39; AMA, ADA, and AHA, ECF No. 23; Allergan, ECF No. 29; Kuakini, ECF No. 36; Abbott, ECF No. 45; Monsanto, ECF No. 46; Dr. Goodhue, ECF No. 66.)

Subsequently, the undersigned issued a Report and Recommendation as to all then pending Motions to Dismiss, finding the Court lacked personal jurisdiction over all claims. (Report & Rec., ECF No. 75.)  The District Judge granted each Motion to Dismiss for lack of jurisdiction, with the exception of the antitrust claims, which the District Judge dismissed for failure to comply with Rule 8(a) pleading standards.  (*See* Order, ECF 86.)

After dismissing all claims without prejudice, the District Judge offered Ms. Van Ornum the opportunity to amend her Complaint.  (*Id.*)  Ms. Van Ornum filed the current operative

Complaint (the "Amended Complaint") on May 4, 2016.  (Am. Compl., ECF No. 98.)  On May

23, 2016, Monsanto filed a Motion to Dismiss the Amended Complaint.  (ECF No. 104.)  On

June 2, 2016, the undersigned granted Ms. Van Ornum an extension until July 5, 2016 to respond

to the Motion.  (ECF No. 110.)  The undersigned granted a second Motion extending the time to

respond until August 2, 2016.  (ECF No. 120.)  On August 2, 2016, Ms. Van Ornum responded

to Monsanto's Motion, (ECF No. 129), and on August 22, 2016, Monsanto filed its Reply.  (ECF

No. 139.)  On September 15, 2016, Ms. Van Ornum filed a Motion for Leave to File a Second

Reply.  (ECF No. 174.)  On September 19, 2016, the undersigned denied Ms. Van Ornum's

Motion and issued a stay in the case.  (ECF No. 177.)

Ms. Van Ornum's Amended Complaint contains a potpourri of allegations. From what the

undersigned can gather, Ms. Van Ornum alleges that Monsanto, acting either independently or as

part of the larger (and indefinite) "Defendants' Class", violated numerous constitutional

protections and federal statutes.  Constitutional violations include:  the Privileges and Immunities

Clause (14th Amendment), the Due Process Clause (14th Amendment), the Equal Protection

Clause (14th Amendment), provisions against slavery and involuntary servitude (13th

Amendment), Freedom of Speech (1st Amendment), Freedom of Assembly (1st Amendment),

and Freedom of the Press (1st Amendment).

Alleged statutory violations include:  18 U.S.C. § 1851 (peonage), 42 U.S.C. § 2000bb-1

(Religious Freedom Restoration Act), 15 U.S.C. § 45 (unfair or deceptive acts or practices (FTC

Act § 5a)), 15 U.S.C. § 1-3 (Sherman Antitrust Act), 15 U.S.C. § 15 (Clayton Antitrust Act), 18

U.S.C. § 1959 (violent crimes in aid of racketeering activity), 18 U.S.C. § 1961 (RICO), and 18

U.S.C. § 1958 (use of interstate facilities in murder for hire).

When the undersigned issued its first Report and Recommendation, it noted that "Ms.

3

Van Ornum's copious use of … abbreviations makes her Complaint extremely difficult to understand." (Report & Rec. 2, ECF No. 75.)  The undersigned further struggled with Ms. Van Ornum's dense web of alleged facts, claims, and tangled narrative.  Ms. Van Ornum dedicated a large portion of the Complaint to her and her parent's medical histories, a chronology beginning in 1900 and continuing through 2013, touching on events in Hawaii, Guam, the Philippines, and Vietnam.  (Id. at 4.)  Ms. Van Ornum directed most allegations of illegality at Defendants generally, as a broad and shadowy conspiratorial class.  (Id.)  The Complaint made little effort to connect specific factual statements to specific Defendants.  (Id.)

Ms. Van Ornum has made some improvements between the Complaint discussed in the first Report and Recommendation and the Amended Complaint at issue.  Notably, Ms. Van Ornum eliminated the abbreviations.  Unfortunately, the allegations remain difficult to follow. Ms. Van Ornum still fails to connect specific facts and claims to specific Defendants, instead making grand assertions against "Defendants' class."

Essentially, Ms. Van Ornum objects to modern medicine, modern agriculture, and modern civilization to the extent these systems run contrary to her understanding of the "knowledge of our Creator's laws of health."  (Am. Compl. 4, ECF No. 98.)  "Defendants' class" operates a monopolistic force behind these modern systems, maintaining and growing their power at the expense of "our body and its business department."  (Id. at 3.)  Preservation of such a huge monopoly requires innumerable and unending acts.  Three highlights from Ms. Van Ornum's perspective include the creation of the United States Department of Health, Education, and Welfare in 1953, the passage of "the Obama health reform," and the "IRS penalty laws." (Am. Compl. 8, 10, ECF No. 98.)  While Ms. Van Ornum's Amended Complaint only names fourteen specific Defendants, the entire conspiracy consists of "all pharmaceutical and chemical

corporations, partnerships, associations, health care providers who are individuals, group of individuals, facilities, hospital and clinics." (Am. Compl. 3, ECF No. 98.)  Ms. Van Ornum believes that if this group stopped providing/forcing things like fluoridated water, medical surgeries, pharmaceuticals, and chemically-supported agriculture, and if people returned to the practices of health and nutrition supported by her readings of the Old Testament and various other spiritual texts, everyone would live for over 900 years.  (*Id.* at 3-6.)  According to Ms. Van Ornum, Defendants' class propagates its systems, prevents exercise of true health practices, and in doing so robs people generally, and her parents and herself in particular, of good health and ninety percent of their life expectancy.  (*Id.* at 3-4, 9.)

## DISCUSSION

Monsanto offers four grounds for dismissing Ms. Van Ornum's Amended Complaint:  (1) Ms. Van Ornum filed the Amended Complaint late, (2) the Amended Complaint does not comply with Rule 8 pleading standards, (3) the Amended Complaint fails to state a cause of action, and (4) the Court lacks personal jurisdiction.  (Mot. to Dismiss 2-5, ECF No. 104.)

### I.   MS. VAN ORNUM FILED HER AMENDED COMPLAINT LATE

Ms. Van Ornum hand delivered her Amended Complaint late, according to the time provided in the District Judge's March 30, 2016 Order.  (Order 10, ECF No. 86 ("The court grants Ms. Van Ornum leave to amend her Complaint within thirty (30) days of this Order, in accordance with the guidance provided above.  Failure to do so will result in the dismissal of this case with prejudice.").)  The Order gave Ms. Van Ornum thirty days to file her Amended Complaint.  Excluding the entry date of the Order, Rule (6)(a)(1)(A), Ms. Van Ornum's Amended Complaint came due April 29, 2016.  Ms. Van Ornum hand delivered her Amended Complaint to the Clerk's office on May 4, 2016.  (Am. Compl., ECF No. 98 (Certificate of

Service).)  Thus, the Court could dismiss the Amended Complaint with prejudice based on the prior Order, (ECF No. 86).

Ms. Van Ornum's Opposition does not address this point.  (Opp'n, ECF No. 129.)  Given Ms. Van Ornum's *pro se* status, the undersigned proceeds as if Ms. Van Ornum filed her Amended Complaint on time.

Monsanto asserts that the Court lacks personal jurisdiction, therefore the Court must first address this argument before reaching the merits of Ms. Van Ornum's Amended Complaint.  *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).") (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93-102 (1998)).  After explaining the undersigned's conclusion that jurisdiction exists over Ms. Van Ornum's antitrust and RICO claims, this Report will explain why the Amended Complaint fails to state an antitrust or RICO claim upon which the Court may grant relief.  Finally, this Report will discuss why the Court lacks personal jurisdiction over Monsanto for the remainder of Ms. Van Ornum's claims.

## II.  WHILE THIS COURT HOLDS PERSONAL JURISDICTION OVER MONSANTO PURSUANT TO MS. VAN ORNUM'S ANTITRUST CLAIMS, THE ANTITRUST CLAIMS FAIL TO STATE A CLAIM UNDER RULE 12(b)(6)

### A.  Personal Jurisdiction Exists Over Monsanto Based on the Antitrust Claims

As the Plaintiff, Ms. Van Ornum "bears the burden of establishing personal jurisdiction over the defendant."  *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996) (quoting *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984)).  To meet this burden on a motion to dismiss where the Court receives only affidavits and written materials, Ms. Van Ornum need only make a prima facie showing of personal jurisdiction.  *Id.*

"The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).  The undersigned takes as true all "plausible, non-conclusory, and non-speculative" facts and resolves factual disputes in favor of Ms. Van Ornum. *Dudnikov*, 514 F.3d at 1070 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-6 (2007)).

Ms. Van Ornum appears *pro se*; thus, the Court must liberally construe her pleadings. *See id.* at 1073 (acknowledging "solicitous construction due a pro se filing").  However, the Court cannot act as an advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Rules. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) ("[T]his court has repeatedly insisted that *pro se* parties follow the same rules of procedure that govern other litigants.") (quoting *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)).

A federal court considering whether it has personal jurisdiction over a defendant must decide "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)).

Ms. Van Ornum alleges that Defendants' class injured her "business and property" and seeks "tremble damages, costs, fees and simple interest" under the Clayton Antitrust Act.  (*See* Am. Compl. 43, ECF No. 98.)  15 U.S.C. § 15(a) provides:

> Any person . . . injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the

damages . . . sustained, and the cost of suit, including a reasonable attorney's fee.

To facilitate enforcement of the federal antitrust laws, 15 U.S.C. § 22 authorizes expansive venue and service of process on a corporate defendant:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

Thus, the Clayton Act provides for nationwide service of process against defendant corporations in private civil antitrust suits. *See, e.g., Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 422 (2d Cir. 2005) (reading § 22 to permit worldwide service of process in certain circumstances); *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 293 (3d Cir. 2004) ("It is undisputed that the second clause authorizes nationwide, indeed worldwide, service of process on a defendant corporation in federal antitrust litigation."); *Phone Directories Co. v. Contel Corp.*, 786 F. Supp. 930, 942 (D. Utah 1992) ("[S]ervice of process is authorized by the nationwide service of process provision at § 12 of the Clayton Act."). Ms. Van Ornum alleges Monsanto is a corporation. (Am. Compl. ¶ 60, ECF No. 98.) Monsanto submits no contradictory evidence.

Currently, the circuit split continues as to when 15 U.S.C. § 22 authorizes nationwide service of process. *See* 1B Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 271d (4th ed. 2013) (discussing circuit split); Robert L. Haig, Bus. & Commercial Litig. in Fed. Cts. § 67:57 (3d ed. 2011) (same). The undersigned addressed that split in its Report and Recommendation on the AMA, ADA, and AHA's Motion to Dismiss. (Report & Rec. re ECF 101 11-12, ECF No. 209.) The undersigned adopted the alternate or "independent" reading of the provision that allows nationwide service of process without requiring proper venue under § 22. *In re Auto.*, 358 F.3d at 294–97; *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d

1174, 1178–80 (9th Cir. 2004).

Having determined that 15 U.S.C. § 22 authorizes nationwide service of process, the undersigned turns to the final step of personal jurisdiction analysis, "whether exercise of jurisdiction comports with due process." *Trujillo*, 465 F.3d at 1217 (quoting *Peay*, 205 F.3d at 1209). Where a plaintiff brings a federal question under a statute providing nationwide service of process,

> "the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant." To defeat federal jurisdiction, a *defendant* must establish that the "chosen forum will make litigation ... gravely difficult and inconvenient" or, in other words, the forum district burdens the defendant with "constitutionally significant inconvenience." We look to non-exclusive factors in considering whether defendants have met this burden, such as (1) the extent of contact with the forum state, (2) the inconvenience of having to litigate in a foreign jurisdiction, (3) judicial economy, (4) the probable situs of the discovery proceedings, and (5) the nature of the defendant's activities and its impact beyond his state's borders.

*Klein v. Cornelius*, 786 F.3d 1310,  1318 (10th Cir. 2015) (quoting *Peay*, 205 F.3d at 1212) (emphasis added).

Monsanto failed to address personal jurisdiction under the antitrust laws in its original Motions to Dismiss, (Report & Rec. 12, ECF No. 75), and again fails to address the issue in its response to Ms. Van Ornum's Amended Complaint. (Mot. to Dismiss 5, ECF No. 104.) Monsanto has not addressed why personal jurisdiction over Ms. Van Ornum's antitrust claims infringes its interests, and the Court will not sua sponte relieve Monsanto of the burden of showing "constitutionally significant inconvenience." (*See* Order 7, ECF No. 86); *Peay*, 205 F.3d at 1212 (discussing a defendant's burden).

Monsanto does address the failings of the Amended Complaint, arguing Ms. Van Ornum failed to establish the Court's personal jurisdiction. (Mot. 5, ECF No. 104.) However, at this stage, Monsanto bears the burden to argue why its appearing in Utah would present a

"constitutionally significant inconvenience."  *See Peay*, 205 F.3d at 1212 (quoting *Republic of Panama v. BCCI Holdings,* 119 F.3d 935, 946 (11th Cir. 1997)) (setting forth defendant's burden).  Monsanto makes no effort to explain why appearing in Utah would cause constitutional harm, why litigating in Utah would prove inconvenient or unconducive to judicial economy. (Mot., ECF No. 104.)  Furthermore, Monsanto only cursorily addresses the potential connection with Utah.  *(Id.* at 5 ("Monsanto is neither incorporate[d] nor has its principal place of business in Utah.").)  The five factors of *Peay* are non-exclusive, and a "constitutionally significant inconvenience" could presumably exist without a defendant rigorously arguing all five factors. *Peay*, 205 F.3d at 1212.  However, the burden imposed by *Peay* remains distinct from the Fourteenth Amendment due process arguments of specific and general jurisdiction.  Absent any argument for a "constitutionally significant inconvenience," Monsanto fails to demonstrate a Fifth Amendment due process problem.  (*See* Order 6, ECF No. 86 (noting the Tenth Circuit only finds constitutionally significant inconvenience in rare instances).)

Section 22 authorizes nationwide service of process, regardless of the venue's propriety. In the absence of an affirmative showing of "constitutionally significant inconvenience," personal jurisdiction over Monsanto comports with due process.  Therefore, the undersigned RECOMMENDS the Court find personal jurisdiction under 15 U.S.C. § 22 exists over Monsanto based on Ms. Van Ornum's antitrust claims.

### B. Ms. Van Ornum Fails to State a Cognizable Antitrust Claim Under Rule 12(b)(6)

If the District Judge adopts the undersigned's analysis of personal jurisdiction arising from the antitrust statutes, the undersigned nonetheless recommends dismissal of the antitrust claims under Rule 12(b)(6) for failure to state a claim.

The Court construes *pro se* pleadings liberally and holds them to a "less stringent

standard." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Garrett*, 425 F.3d at 840 (internal quotation omitted)).  A *pro se* plaintiff's claims should survive a Rule 12(b)(6) motion, "despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.* (quoting *Hall*, 935 F.2d at 1110).  Regardless, even a *pro se* plaintiff must "'set forth plausible claims' animating the elements of her causes of action."  *See Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Whether a plaintiff's claims rise to the threshold of plausible depends on the factual allegations presented within the complaint.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").  "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."  *Hall*, 935 F.2d at 1110.  The Court will disregard legal allegations masquerading as factual allegations.  *Twombly*, 550 U.S. at 554–56 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  If a *pro se* party has not alleged sufficient facts to support a legal theory, courts will not fill in the factual gaps.  *Smith*, 561 F.3d at 1096 (citing *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997)).

Should a plaintiff's original complaint miss "important element[s] that may not have occurred to her," the Court will grant leave to amend.  *Hall*, 935 F.2d at 1110.  After providing an opportunity to amend, a court may properly dismiss with prejudice only upon concluding that further opportunity to amend would prove "futile."  *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010).

The District Judge dismissed all antitrust claims in Ms. Van Ornum's Complaint without prejudice under Rule 12(b)(6) because Ms. Van Ornum's claims failed to comply with Rule 8(a)(2): "a short and plain statement of the claim showing that the pleader is entitled to relief." (Order 7-9, ECF No. 86.)  Ms. Van Ornum's Amended Complaint fails to solve this problem.

Put in the best possible light, Ms. Van Ornum alleges Monsanto belongs to a class of Defendants, who conspire to withhold knowledge of the true nature of our bodies, provide harmful food, drink, pharmaceuticals, products, and medical and dental procedures, and lobby to pass laws with the intent of preventing Ms. Van Ornum and her parents from spreading their message of a much longer life possible through alternative means.  (*See* Am. Compl. 8-10, ECF No. 98.)  Through this conspiracy, the Defendants force the general public, including Ms. Van Ornum, to buy unhealthy food, submit to unhealthy medical procedures, take unhealthy medications, and drink unhealthy water that leads to a reduced life expectancy and financially benefits the Defendants.  *Id.*  However, where a complaint makes allegations "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly* 550 U.S. at 570).  The Amended Complaint suffers from exactly this problem.

Ms. Van Ornum fails to allege the facts necessary to support antitrust claims.  A private litigant making a civil antitrust claim does so through the Clayton Act, 15 U.S.C. § 15, allowing a private right of action for violations of the Sherman Act, 15 U.S.C. §§ 1-3.  The keystone of any 15 U.S.C. § 1 claim lies in the demonstration of "an agreement, tacit or express."  *Twombly, 550 U.S. at 553–54* (quoting *Theatre Enter., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 542 (1954)).  Independent parallel business behavior may provide admissible circumstantial

evidence but standing alone fails to establish an agreement.  *Id.*  Ms. Van Ornum provides few allegations concerning Monsanto generally and none specifically tying Monsanto to "an agreement, tacit or express."  *See id.*

The Amended Complaint specifically references Monsanto three times in its body.  The Amended Complaint alleges Monsanto's Agent Orange damaged "Mr. Kurihara's body and its business in Saigon."  (Am. Compl. ¶ 103, ECF No. 98.)  Additionally, the Amended Complaint alleges Monsanto "chang[ed] the constitution, nature and usage of whole grains" in the late 1960's, which played a vague role in Mrs. Kurihara's yeast infection, ankle ulceration, and "cataract build up" in the 1990's.  (*Id.* ¶¶ 112, 121.)

To the extent Ms. Van Ornum alleges an antitrust violation against Monsanto, the claim tries to wrap Monsanto into the larger conspiracy:  Defendants' plan to withhold "the means and the knowledge of the health plan for the constitution, nature and use of our body and its business," and provide only diets, treatments, and procedures provided by the Defendant's class "conclusively proven [to] cause serious injuries and damages to our body and its business departments."  (*Id.* ¶¶ 34-35; *see accord ¶* 41.)  Additionally, the Amended Complaint alleges the Defendant's class has imposed a price ceiling for public produce, wholesome herbs, fruits, and water, among other things.  (*Id.* ¶ 44.)  Ultimately, the Amended Complaint's allegations fail to state a 15 U.S.C. § 1 claim, omitting any evidence of "an agreement, tacit or express."  *Twombly*, 550 U.S. at 553–54 (quoting *Theatre Enter., Inc.*, 346 U.S. at 542); *Dudnikov,* 514 F.3d at 1070 (noting need to take *plausible* factual allegations as true).  The Amended Complaint omits even the basic premises necessary for an agreement (for example:  Monsanto agreed with whom? Monsanto agreed to what? Monsanto used what means to effectuate that agreement?).  Vague allegations of a worldwide antitrust conspiracy fail to put Monsanto on notice as required

by Rule 8(a).  (*See* Order, ECF No. 86 (requiring Ms. Van Ornum to make "specific, comprehensible factual allegations…" as to each Defendant to comply with Rule 8(a)).)  The antitrust claims fail under 15 U.S.C. § 1.[3]

A 15 U.S.C. § 2 claim requires allegations of:  (1) the monopoly, (2) the relevant market, (3) the misconduct, and (4) a connection between the misconduct and harm to competition in the relevant market.  *Duty Free Americas, Inc. v. Estee Lauder Co., Inc.*, 797 F.3d 1248, 1262–64 (11th Cir. 2015) (explaining in detail the allegations necessary to state a claim for attempted monopolization under § 2).  Ms. Van Ornum's allegations as to Monsanto do not, and cannot, map onto this basic framework.  The Amended Complaint alleges a monopoly between anyone with a hand in modern medicine, agriculture, or health generally, the relevant market includes the whole world, and the harm results from the monopolists' depriving all people of their natural life expectancy of 900 years.  (Am. Compl. ¶¶ 8, 12-13, ECF No. 98.)  Again, the extreme implausibility of these claims – the notion of collusion on an impossibly large scale, the assertion that without modern antibiotics, surgery and nutrition we would live centuries longer – do not add up to a 15 U.S.C. § 2 claim.

The undersigned must acknowledge the extreme implausibility that anyone is actively engaged in a conspiracy to reduce human life expectancy from 900 or more years to 100 or fewer years, let alone in a conspiracy this vast.  A *pro se* plaintiff must "'set forth plausible claims' animating the elements of her causes of action."  *See Burnett*, 706 F.3d at 1236 (quoting *Iqbal*, 556 U.S. at 678).  Ms. Van Ornum falls short of meeting her burden, and for the above reasons the undersigned RECOMMENDS the District Judge dismiss Ms. Van Ornum's antitrust claims

---

[3] 15 U.S.C. § 3 effectively applies 15 U.S.C. § 1 to the District of Columbia and the United States territories.  Thus to the extent Ms. Van Ornum asserts claims under this statute, they suffer from the same plausibility defects as the 15 U.S.C. § 1 antitrust claims.

pursuant to Rule 12(b)(6).

### III. WHILE PERSONAL JURISDICTION EXISTS OVER MONSANTO PURSUANT TO MS. VAN ORNUM'S RICO CLAIM, THE RICO CLAIM FAILS TO STATE A CLAIM UNDER RULE 12(b)(6)

#### A. Personal Jurisdiction Exists Over Monsanto Derived From the RICO Claims

Whether Ms. Van Ornum may properly hale Monsanto into the District of Utah through RICO's nationwide service of process provision depends on three findings.  First, "personal jurisdiction based on minimum contacts [must be] established as to at least one defendant." *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1230 (10th Cir. 2006) (quoting *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998)).  Second, the plaintiff may serve summons on other defendants outside the district if required by the "ends of justice." *Id.*  Once the Court makes these findings, it must proceed with an inquiry under the Fifth Amendment to determine whether exercise of jurisdiction over Monsanto "comports with Fifth Amendment due process." *See Cory*, 468 F.3d at 1229 (noting statutory nationwide service of process confers personal jurisdiction, but exercise of that jurisdiction must still meet Fifth Amendment due process requirements).

As to the initial finding, the Amended Complaint alleges Intermountain Health Care, Inc. (IHC), the fourteenth named Defendant and a partner in the RICO conspiracy according to the allegations, is a Utah-based company with its primary place of business and headquarters in Salt Lake City, Utah.  (Am. Compl. 17, ECF No. 98.)  Therefore, the Court finds minimum contacts exist between at least one Defendant and the District of Utah.

Even with apparent personal jurisdiction over IHC, the RICO statute will only authorize nationwide service of process upon Monsanto if the ends of justice so require.  The undersigned conducted this analysis as to the Defendants collectively in its Report and Recommendation to Dismiss Dr. Goodhue.  (Report & Rec. re ECF No. 100 9-13, ECF No. 208.)  In doing so it

found the ends of justice required nationwide service of process.  (*Id.* at 13.)

Having made the determination that Ms. Van Ornum may use nationwide service of process, the undersigned must consider whether the Fifth Amendment Due Process Clause permits the Court to exercise personal jurisdiction over Monsanto.  In *Cory*, the Tenth Circuit endorsed the Fifth Amendment due process analysis set forth in *Peay*, 205 F.3d at 1212.  *Cory*, 468 F.3d at 1229.  *Peay* shifts the burden to defendants to prove that nationwide service of process, otherwise authorized under statute, does not comport with due process.  *Peay*, 205 F.3d at 1212 (applying Fifth Amendment due process analysis after nationwide service of process under Employee Retirement Income Security Act).  The *Peay* test includes a five-factor analysis described above.

Monsanto does not address the Fifth Amendment due process analysis in its Motion.  For the reasons stated above, the undersigned will not relieve Monsanto of its burden to prove constitutionally significant inconvenience.  Therefore, the undersigned RECOMMENDS finding personal jurisdiction exists over Monsanto based on RICO's service of process provisions.

### B.  Ms. Van Ornum Fails to State a Cognizable RICO Claim Under Rule 12(b)(6)

If the District Judge adopts the undersigned's analysis of personal jurisdiction arising from RICO, the undersigned nonetheless recommends dismissal of the RICO claim against Monsanto under Rule 12(b)(6) for failure to state a claim.

Ms. Van Ornum fails to allege facts sufficient to create any plausible RICO claim.  The Amended Complaint's RICO allegations assert that Monsanto, acting in concert with the broad class of Defendants, "commit[ ] continuous and systematic serious injuries and damages to our body and its business department in aid of racketeering activities."  (Am. Compl. ¶ 8, ECF No. 98.)  Defendants' class tricks the public into believing modern agriculture, modern medicine, and

chlorination, among other ingenuities, aid health, when in reality these devices take centuries off our natural life span.  (*Id.* at ¶¶ 9-12.)  By purposefully withholding "knowledge of our Creator's laws of health," Defendants force humanity into "peonage."  (*Id.* at ¶ 15.)  The RICO enterprise stoops to the depths of "murder in aid of racketeering activities and use[s] interstate commerce facilities to commission murder-for-hire."  (*Id.* at ¶ 7.)

The Amended Complaint relies on a broad and ill-defined "class" of Defendants.  The group involved in the suspected enterprise includes "all pharmaceutical and chemical corporations, partnerships, associations, health care providers who are individuals, group of individuals, facilities, hospital and clinics."  (*Id.* at ¶ 8.)  This fact alone provides grounds to dismiss the RICO claims.  While a plaintiff must allege the existence of an "enterprise" to state a civil RICO claim, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495–97 (1985) ("A violation of § 1962(c)… requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."); *Boyle v. United States*, 556 U.S. 938, 943–45 (2009) (defining "enterprise"), Ms. Van Ornum sets an impossible task for herself.  No imaginable set of facts exists that Ms. Van Ornum can allege (and Ms. Van Ornum alleges few facts) that would tie together every pharmaceutical company, chemical company, and health care provider into a single enterprise.

Ms. Van Ornum also fails to establish another two requisite elements:  racketeering activity and a pattern.  *See Sedima*, 473 U.S. at 495–97 (identifying "a pattern…of  racketeering activity" as necessary civil RICO elements); *see also* 18 U.S.C. § 1962(c).  No factual allegations in the Amended Complaint plausibly suggest that Monsanto personally engaged in racketeering activity, let alone a pattern of such actions.  18 U.S.C. § 1961(a)(1) (listing qualifying "racketeering activit[ies]").

Ms. Van Ornum's impossibly large set of guilty parties only throws into sharper relief the

failings of the Amended Complaint under Rule 8(a).  The Order dismissing the Complaint made clear that, "where there are multiple claims and multiple defendants, Ms. Van Ornum must state her claims in a manner that provides individual defendants fair notice of the claims asserted against them and the grounds upon which those claims rest."  (Order 9, ECF No. 86.)  The Amended Complaint fails to follow these instructions.  The undersigned suspects that Ms. Van Ornum cannot reduce her conspiracy theory to the format necessary to survive a Rule 12(b)(6) motion.

Even the relief Ms. Van Ornum seeks lacks plausibility:  "restore back to the people our Creator's laws of health, privilege or immunities, life, liberty and property, nationwide, for the wellbeing of this promised land."  (Am. Compl. ¶ 185, ECF No. 98.)  To assist the Court, a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Rule 8(a), and that statement must be plausible.  *Twombly*, 550 U.S. at 570.  Ms. Van Ornum has had multiple opportunities to frame her issues in this manner and has failed to conform to the Rules.  Therefore, the undersigned RECOMMENDS dismissing all RICO and racketeering claims against Monsanto for failure to state a claim.

## IV.  NO PERSONAL JURISDICTION EXISTS OVER MONSANTO UNDER UTAH'S LONG-ARM STATUTE

If this Court dismisses Ms. Van Ornum's antitrust and RICO claims, the continued existence of pendant jurisdiction, which could exist if the antitrust or RICO claims remained in the case, becomes suspect.  The Tenth Circuit found abuse of discretion where a district court retained pendant jurisdiction after dismissing the anchor claim prior to trial.  *United States v. Botefuhr*, 309 F.3d 1263, 1274 (10th Cir. 2002).  Here, dismissal of the anchor claims, the antitrust and RICO claims, would occur prior to discovery even beginning.  Therefore, absent another basis for personal jurisdiction, the Court should follow the prudent course and dismiss

the remaining claims without prejudice for lack of jurisdiction.  As discussed below, no other basis exists for this Court to exercise personal jurisdiction over Monsanto.

Whether the Court holds personal jurisdiction over Monsanto absent nationwide service of process, depends on Rule 4(k)(1)(A) and Utah's long-arm statute.  *See Dudnikov*, 514 F.3d at 1070 (noting where federal statutes at issue do not provide nationwide service of process, the court considers the law of the forum state)  Utah's long-arm statute extends to the limits allowed by due process of law, Utah Code Ann. § 78B-3-201(3); *see Dudnikov*, 514 F.3d at 1070 (noting similar Colorado statute confers maximum jurisdiction permitted by due process), and the inquiry turns on whether the exercise of jurisdiction over Monsanto comports with the Fourteenth Amendment's Due Process Clause.  *See Klein*, 786 F.3d at 1318 (distinguishing 14th Amendment analysis from 5th Amendment analysis).

Due process requires that, for a court to hold jurisdiction over a nonresident, "minimum contacts between the defendant and the forum State" must exist.  *Trujillo*, 465 F.3d at 1217–18 (quoting *Intercon, Inc. v. Bell Atl. Internet Sol., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)).  "Because a state's sovereignty is territorial in nature, a defendant's contacts with the forum state must be sufficient such that, notwithstanding its lack of physical presence in the state, the state's exercise of sovereignty over it can be described as fair and just."  *Dudnikov*, 514 F.3d at 1070.

A plaintiff may demonstrate Fourteenth Amendment minimum contacts in two ways:

> First, a court may exercise *specific* jurisdiction if a "defendant has 'purposefully directed' his activities at residents of the forum . . . *and* the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (citations omitted) (emphasis added).  Second, a court may exercise *general* jurisdiction where the defendant's contacts, while not rising to the level of the traditional notion of presence in the forum state, are nonetheless "continuous and systematic." *Trierweiler [v. Croxton & Trench Holing Corp.],* 90 F.3d [1523], 1533 [(10th Cir. 1996)] (quoting *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 416 (1984)).

*Kuenzle*, 102 F.3d at 455.  If the court finds it has either specific or general jurisdiction over a

defendant, the case against that defendant satisfies the "minimum contacts" standard.  *See OMI Holdings*, 149 F.3d at 1090-91.  After a successful finding of minimum contacts, a court must next analyze whether the exercise of personal jurisdiction over the defendant comports with "traditional notions of fair play and substantial justice."  *Id.* (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Ct.*, 480 U.S. 102, 113 (1987)).  The undersigned does not reach that final part of the test.

### 1. This Court Lacks Specific Jurisdiction over Monsanto

A court may assert specific jurisdiction over a defendant where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  *Burger King*, 471 U.S. at 472 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) & *Helicopteros*, 466 U.S. at 414).  When determining whether a defendant has minimum contacts sufficient to create specific jurisdiction, courts apply a two-part test.  "[F]irst, [ ] the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, [ ] the plaintiff's injuries must 'arise out of' defendant's forum-related activities."  *Dudnikov*, 514 F.3d at 1071 (citing *Burger King*, 471 U.S. at 472).  In analyzing a defendant's "purposefully directed" activities, courts look for allegations showing (a) "an intentional action" by the defendant, (b) "expressly aimed at the forum state", (c) with the defendant's "knowledge that the brunt of the injury would be felt in the forum state."  *Id.* at 1072; *see accord Walden v. Fiore*, 571 U.S. ____, 134 S. Ct. 1115, 1122 (2014).  Specific jurisdiction must arise from "actions by the defendant and not [from] events that are the result of unilateral actions taken by someone else."  *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004).  In addition, a plaintiff's  allegations must demonstrate that the alleged injuries "arise out

of" the defendant's forum-related activities by showing a causal link between the defendant's contacts and the injuries at issue. *Dudnikov*, 514 F.3d at 1078–79.

The undersigned's original Report and Recommendation found Ms. Van Ornum failed to allege any facts capable of suggesting that Monsanto had purposefully directed actions towards Utah or that a causal link existed between any such actions and Ms. Van Ornum's alleged injuries. (Report & Recs. 15-17, ECF No. 75.)  Ms. Van Ornum's Amended Complaint again fails to make sufficient allegations for specific jurisdiction to attach.

In her argument for specific jurisdiction, Ms. Van Ornum hardly proceeds beyond mere recitation of the basic elements.  The Amended Complaint states:

> 78. Ms Van Ornum allege that personal jurisdiction and venue accords with Utah Long Arm Statute (UCA §78b-3-201 (3)) and Fourteenth Amendments due process minimal contact because:
> a) First, nonresident defendants purposefully direct their activities at residents of their forum which consequentially extend outside their territory at residents in Utah, just as if Utah defendants did not conspire with nonresident defendants they would consequentially extend outside of their territory to the benefit of residents of other forum states, and 42 USC §2000bb-1 (b) demonstration relief and pecuniary relief results from alleged injuries that arise out of or relate to those allege multidistrict antitrust racketeering conspiracy activities[.]

(Am. Compl. 19-20, ECF No. 98.)  This paragraph represents the extent of Ms. Van Ornum's argument for specific jurisdiction and as such it fails.

The undersigned finds this barebones recitation of the specific jurisdiction standard insufficient.  The Amended Complaint fails to set forth facts alleging Monsanto purposefully directed actions towards Utah, as well as how those actions connect to the alleged injuries.  Ms. Van Ornum fails to make a prima facie showing of specific jurisdiction over Monsanto.

### 2.   *This Court Lacks General Jurisdiction over Monsanto*

Without specific jurisdiction, the Court proceeds to analyze the possibility of general jurisdiction.  However, "[b]ecause general jurisdiction is not related to the events giving rise to

the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quoting *Helicopteros*, 466 U.S. at 416)).  Therefore, Ms. Van Ornum must provide facts capable of establishing contacts more widespread than those necessary for specific jurisdiction. *See, Kuenzle*, 102 F.3d at 458 (quoting *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 146 (10th Cir. 1992)).

*Daimler AG v. Bauman* clarified the parameters of general jurisdiction.  571 U.S.    ___, 134 S. Ct. 746 (2014); *see Parlant Tech. v. Bd. of Educ.*, No. 2:12-CV-417-BCW, 2014 WL 4851881, at *4 (D. Utah Sept. 29, 2014) (unpublished).  The Supreme Court noted that courts exercise general ("all-purpose") jurisdiction paradigmatically in those forums where a court would fairly regard an individual or corporate defendant as "at home," such as an  individual's state of domicile or a corporation's state of incorporation or principal place of business.  *Daimler*, 134 S. Ct. at 760 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).  Beyond these "paradigm bases" for general jurisdiction, a court can find general jurisdiction over an out-of-state corporate defendant when the corporation maintains affiliations with the forum state "so continuous and systematic as to render [the corporation] essentially at home in the forum State." *Id.* at 761 (citing *Goodyear*, 564 U.S. at 919).  Courts appropriately require significantly more contacts before finding general jurisdiction than specific because general jurisdiction allows any plaintiff to sue a defendant in that forum for all claims where subject matter jurisdiction exists. *See id.* at 751 (noting "a court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it]

22

essentially at home in the forum State.'" (quoting *Goodyear*, 564 U.S. at 919)).

In considering whether a defendant's contacts with the forum suffice to create general jurisdiction where the defendant does not reside, the Tenth Circuit, prior to *Daimler*, considered the following factors:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Kuenzle*, 102 F.3d at 457 (quoting *Trierweiler*, 90 F.3d at 1533).  This list is non-exhaustive.  *See Trierweiler*, 90 F.3d at 1533 ("In  assessing contacts with a forum, courts have considered *such factors as . . .*") (emphasis added) (citation omitted); *Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1193 (D. Colo. 1999) (citation  omitted) ("[T]he *Trierweiler* factors are neither exhaustive nor necessarily determinative of the  general personal jurisdiction inquiry.").

The Amended Complaint concedes that Monsanto has neither a principal place of business nor headquarters in Utah.  (Am. Compl. ¶ 60, ECF No. 98.)  Nonetheless, the Amended Complaint later argues, "non resident's contacts while not rising to the level of the traditional notion of presence in Utah are nonetheless continuous and systematic."  (*Id.* at ¶ 78.)  Ms. Van Ornum provides no explanation of these contacts or why they rise to the level of "continuous and systematic."  Mere recitation of legal standards does not equate to factual allegations and does not entitle Ms. Van Ornum to any presumptions.

The strongest argument Ms. Van Ornum presents as to why jurisdiction lies in Utah appears as an inverted version of the five-factor *Peay* test.  The *Peay* Test, as discussed above, considers five factors to determine whether a defendant has successfully argued a "constitutionally significant inconvenience" that would result from personal jurisdiction derived

from nationwide service of process.  *Peay*, 205 F.3d at 1212.

Ms. Van Ornum applies these factors to argue why jurisdiction lies in Utah rather than

another location.  Specifically Ms. Van Ornum writes:

> 79. Ms Van Ornum, Mr Kurihara and Mrs Kurihara allege that personal jurisdiction and venue accords with Fifth Amendment minimal constitutional requirement (28 USC §1331) and constitutional significant inconvenience for both Ms Van Ornum and Defendants' class in that:
>
> 1) Any other forum is gravely difficult and inconvenient for Ms Van Ornum because she has no contact with other forum, other than consequential;
> 2) It has been futile under the circumstantial comparisons;
> 3) judicial economy is practical in this forum concerning the events thus far in that to timely file, she needs to travel to the Courthouse to file;
> 4) Discovery will probably likely occur primarily in Utah where the association and corporate defendants do substantive, continuous and systematic business affairs herein, therefore they will have access to the laboratory tests et seq. for burden of demonstration since Utah defendants destroyed our medical and dental records knowing, willful and purposefully (18 USC §1592), to obstruct enforcement of Sherman and Clayton Acts and Racketeering Influence and Corrupt Organization Act violations (15 USC §§1, 2, 3(a)(b), 15(a); 18 USC §1964(c));
> 5) Hawaii is furtherance and expensive compare to Utah; and
> 6) Hawaii defendants denied due process with equal protection of the law, when Ms Van Ornum was a resident and a non resident in 2012;
> 7) Any defendants' gross income and tax liabilities make traveling and attorney's fee a drop in the bucket compare to Ms Van Ornum's gross income and tax liabilities[.]

(Am. Compl. ¶ 79, ECF No. 98.)

Although litigation in other venues may well burden Ms. Van Ornum, in terms of time

and expense, she misses the point of the minimum contacts due process analysis.  For the Court

to exercise personal jurisdiction over Monsanto, doing so must be "fair and just" to Monsanto,

not Ms. Van Ornum.  *See Dudnikov*, 514 F.3d at 1070 (explaining due process consideration

focuses on fairness to the defendant).  Because Ms. Van Ornum, as Plaintiff, chooses the forum,

the Court can assume its fairness as to her.

Ms. Van Ornum's Opposition appears to argue that this Court has personal jurisdiction because all named Defendants belong to a class that includes co-conspirators in Utah, and "any co-conspirator's act in a district is attributable to the other co-conspirators."  (Opp'n 5, ECF No. 129 (quoting *Ethanol Ptnrs. Accredited v. Winer, Zucherbrot, Weiss, Brecher*, 635 F. Supp. 15, 18 (E.D. Pa. 1985).)  However, the undersigned recommends dismissing the antitrust and RICO conspiracy claims, mooting this point.

Ms. Van Ornum only brings up Monsanto four times in the Amended Complaint.  (Am. Compl. ¶¶ 60, 103, 112, 121, ECF No. 98.)  None of Ms. Van Ornum's specific references to Monsanto even mentions Utah.  Absent any showing of business activities "so constant and pervasive" as to make Monsanto "at home" in Utah, the undersigned cannot find general jurisdiction over Monsanto.  *See Daimler*, 134 S. Ct. at 751 (quoting standard).

In conclusion, for the Court to have personal jurisdiction over Monsanto to hear the remaining claims, the Amended Complaint must provide some grounds for a finding of minimum contacts with Utah.  *See OMI Holdings*, 149 F.3d at 1091 (requiring minimum contacts for exercise of personal jurisdiction).  Ms. Van Ornum has failed to allege facts showing specific or general jurisdiction over these claims, therefore the undersigned RECOMMENDS the District Judge grant the Motion to Dismiss without prejudice for lack of personal jurisdiction over Monsanto.

## RECOMMENDATION

For the reasons stated above, the undersigned RECOMMENDS the Court dismiss Ms. Van Ornum's antitrust and RICO claims against Monsanto for failure to state a claim, and dismiss all remaining claims against Monsanto for lack of personal jurisdiction, granting Monsanto's Motion to Dismiss, (ECF No. 104).

The Court will send copies of this Report and Recommendation to the parties who the Court hereby notifies of their right to object to the same.  The Court further notifies the parties that they must file any objection to this Report and Recommendation with the Clerk of the Court,  pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), within fourteen (14) days of service  thereof.  Failure to file objections may constitute waiver of objections upon subsequent review.

DATED this 22nd day of March, 2017.

BY THECOURT:

EVELYN J. FURSE
United States Magistrate Judge