IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SANDRA CK VAN ORNUM,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN MEDICAL ASSOCIATION, *et al.*,<br><br>Defendants. | **REPORT AND RECOMMENDATION: ABBOTT LABORATORIES, ELI LILLY & COMPANY, AND PFIZER INC. MOTION TO DISMISS (ECF No. 106)**<br><br>Case No.  2:14-cv-921-RJS-EJF<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Evelyn J. Furse |

Defendants Abbott Laboratories (Abbott), Eli Lilly & Company (Lilly), and Pfizer, Inc. (Pfizer) filed the present Motion to Dismiss *pro se* Plaintiff Sandra C.K. Van Ornum's claims pursuant to Federal Rules of Civil Procedure (Rules) 8(a), 12(b)(1),(2), (3), and (6).  (ECF No. 106.)  Based on the allegations presented in the Amended Complaint, (Am. Compl., ECF No. 98), the undersigned RECOMMENDS the Court find the District of Utah holds personal jurisdiction over Abbott, Lilly, and Pfizer based on the antitrust and Racketeer Influenced and Corrupt Organizations (RICO) claims.  However, Ms. Van Ornum fails to state either claim plausibly, and the undersigned RECOMMENDS the Court[1] dismiss the antitrust and RICO claims pursuant to Rule 12(b)(6).  The undersigned finds no basis to exercise personal jurisdiction over Abbott, Lilly, or Pfizer for the remaining claims.  Therefore, the undersigned RECOMMENDS the Court dismiss the remaining claims against Abbott, Lilly, and Pfizer without prejudice pursuant to Rule

---

[1] On January 5, 2015, District Judge Robert J. Shelby referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B).  (ECF No. 3.)

12(b)(2).[2]  Alternately, the District Judge could dismiss the Amended Complaint as untimely because Ms. Van Ornum submitted her Amended Complaint outside the thirty-day refiling window granted in the District Judge's Order, (ECF No. 86).  The undersigned LIFTS the stay, (ECF No. 177), as to Abbott, Lilly, and Pfizer upon the filing of this Report and Recommendation.

## BACKGROUND

On December 22, 2014, Ms. Van Ornum filed a *pro se* Complaint against the American Medical Association (AMA), American Dental Association (ADA), American Hospital Association (AHA), Monsanto Company (Monsanto), Eli Lilly and Company (Lilly), Pfizer Inc. (Pfizer), Abbott Laboratories (Abbott), Allergan Inc. (Allergan), Hawaii Pacific Health System (Hawaii Pacific), Kuakini Health System (Kuakini), and Dr. William Goodhue (Dr. Goodhue). (ECF No. 1.)  On March 24, 2015,  Ms. Van Ornum filed an Amended Complaint prior to service of any Defendant.  (ECF No. 4.)    A few days later, Ms. Van Ornum filed a Motion for Leave to File Amended Complaint, (ECF No. 5), which the undersigned granted.  (ECF No. 6.) Following that order, Ms. Van Ornum filed the Amendment to Amended Complaint.  (ECF No. 7.) Defendants then began filing Motions to Dismiss.  (Lilly and Pfizer, ECF No. 9; Hawaii Pacific, ECF No. 14 & 39; AMA, ADA, and AHA, ECF No. 23; Allergan, ECF No. 29; Kuakini, ECF No. 36; Abbott, ECF No. 45; Monsanto, ECF No. 46; Dr. Goodhue, ECF No. 66.)

Subsequently, the undersigned issued a Report and Recommendation as to all then pending Motions to Dismiss, finding the Court lacked personal jurisdiction over all claims. (Report & Rec., ECF No. 75.)  The District Judge granted each Motion to Dismiss for lack of jurisdiction, with the exception of the antitrust claims, which the District Judge dismissed for

---

[2] Pursuant to D.U. Civ. R. 7-1(f), the undersigned finds oral argument unnecessary and will make its recommendation based on the Amended Complaint and written memoranda.

failure to comply with Rule 8(a) pleading standards.  (*See* Order, ECF 86.)

After dismissing all claims without prejudice, the District Judge offered Ms. Van Ornum the opportunity to amend her Complaint.  (*Id.*)  Ms. Van Ornum filed the current operative Complaint (the "Amended Complaint") on May 4, 2016.  (Am. Compl., ECF No. 98.)  On May 23, 2016, Abbott, Lilly, and Pfizer filed a Motion to Dismiss the Amended Complaint.  (ECF No. 106.)

On June 2, 2016, the undersigned granted Ms. Van Ornum an extension until July 5, 2016 to respond to the Motion.  (ECF No. 110.)  Ms. Van Ornum requested another extension, (ECF No. 119), and the undersigned granted Ms. Van Ornum until August 2, 2016 to respond.  (ECF No. 120.)  On August 2, 2016, Ms. Van Ornum responded, (ECF No. 129), and on August 22, 2016, Abbott, Lilly, and Pfizer filed their Reply.  (ECF No. 143.)

Ms. Van Ornum's Amended Complaint contains a potpourri of allegations.  From what the undersigned can gather, Ms. Van Ornum alleges Abbott, Lilly, and Pfizer, acting either independently or as part of the larger (and indefinite) "Defendants' class", violated numerous constitutional protections and federal statutes.  Constitutional violations include:  the Privileges and Immunities Clause (14th Amendment), the Due Process Clause (14th Amendment), the Equal Protection Clause (14th Amendment), provisions against slavery and involuntary servitude (13th Amendment), Freedom of Speech (1st Amendment), Freedom of Assembly (1st Amendment), and Freedom of the Press (1st Amendment).

Alleged statutory violations include:  18 U.S.C. § 1851 (peonage), 42 U.S.C. § 2000bb-1 (Religious Freedom Restoration Act), 15 U.S.C. § 45 (unfair or deceptive acts or practices (FTC Act § 5a)), 15 U.S.C. § 1-3 (Sherman Antitrust Act), 15 U.S.C. § 15 (Clayton Antitrust Act), 18 U.S.C. § 1959 (violent crimes in aid of racketeering activity), 18 U.S.C. § 1961 (RICO), and 18

U.S.C. § 1958 (use of interstate facilities in murder for hire).

When the undersigned issued its first Report and Recommendation, it noted, "Ms. Van Ornum's copious use of … abbreviations makes her Complaint extremely difficult to understand." (Report & Rec. 2, ECF No. 75.)  The undersigned further struggled with Ms. Van Ornum's dense web of alleged facts, claims, and tangled narrative.  Ms. Van Ornum dedicated a large portion of the Complaint to her and her parent's medical histories, a chronology beginning in 1900 and continuing through 2013, touching on events in Hawaii, Guam, the Philippines, and Vietnam.  (*Id.* at 4.)  Ms. Van Ornum directed most allegations of illegality at Defendants generally, as a broad and shadowy conspiratorial class.  (*Id.*)  The Complaint made little effort to connect specific factual statements to specific Defendants.  (*Id.*)

Ms. Van Ornum has made some improvements between the Complaint discussed in the first Report and Recommendation and the Amended Complaint at issue.  Notably, Ms. Van Ornum eliminated the abbreviations.  Unfortunately, the allegations remain difficult to follow.  Ms. Van Ornum still fails to connect specific facts and claims to specific Defendants, instead making grand assertions against "Defendants' class."

Essentially, Ms. Van Ornum objects to modern medicine, modern agriculture, and modern civilization to the extent these systems run contrary to her "knowledge of our Creator's laws of health."  (Am. Compl. 4, ECF No. 98.)  "Defendants' class" operates a monopolistic force behind these modern systems, maintaining and growing their power at the expense of "our body and its business department."  (*Id.* at 3.)  Preservation of such a huge monopoly requires innumerable and unending acts; three highlights from Ms. Van Ornum's perspective include the creation of the United States Department of Health, Education, and Welfare in 1953, the passage of "the Obama health reform," and the "IRS penalty laws."  (Am. Compl. 8, 10, ECF No. 98.)

While Ms. Van Ornum's Amended Complaint only names fourteen specific Defendants, the entire conspiracy consists of "all pharmaceutical and chemical corporations, partnerships, associations, health care providers who are individuals, group of individuals, facilities, hospital and clinics." (Am. Compl. 3, ECF No. 98.)  Ms. Van Ornum believes that if this group stopped providing/forcing things like fluoridated water, medical surgeries, pharmaceuticals, and chemically supported agriculture, and if people returned to the practices of health and nutrition supported by her readings of the Old Testament and various other spiritual texts, everyone would live for over 900 years. (*Id.* at 3-6.)  According to Ms. Van Ornum, Defendants' class propagates its systems, prevents exercise of true health practices, and in doing so robs people generally, and her parents and herself in particular, of good health and ninety percent of their life expectancy. (*Id.* at 3-4, 9.)

## DISCUSSION

Abbott, Lilly, and Pfizer offer multiple grounds for dismissing Ms. Van Ornum's Amended Complaint: (1) the Amended Complaint violates Rule 8(a), (2) the Complaint fails to state a claim upon which the Court can grant relief, (3) the Court lacks personal jurisdiction over them, (4) the Court lacks subject matter jurisdiction, (5) venue does not lie in the District of Utah, and (6) Ms. Van Ornum filed the Amended Complaint late and failed to comply with the Court's pleading instructions. (Mot. to Dismiss 5-14, ECF No. 106.)

### I.   MS. VAN ORNUM FILED HER AMENDED COMPLAINT LATE

Ms. Van Ornum hand delivered her Amended Complaint late, according to the time provided in the District Judge's March 30, 2016 Order. (Order 10, ECF No. 86 ("The court grants Ms. Van Ornum leave to amend her complaint within thirty (30) days of this Order, in accordance with the guidance provided above.  Failure to do so will result in the dismissal of this case with

prejudice.").)  The Order gave Ms. Van Ornum thirty days to file her Amended Complaint.

Excluding the entry date of the Order, Rule (6)(a)(1)(A), Ms. Van Ornum's Amended Complaint

came due April 29, 2016.  Ms. Van Ornum hand delivered her Amended Complaint to the

Clerk's office on May 4, 2016.  (Am. Compl., ECF No. 98 (Certificate of Service).)  Thus, the

Court could dismiss the Amended Complaint with prejudice based on the prior Order, (ECF No.

86).

Ms. Van Ornum's Opposition does not address this point.  (Opp'n, ECF No. 129.)  Given

Ms. Van Ornum's *pro se* status, the undersigned proceeds as if Ms. Van Ornum filed her

Amended Complaint on time.

Abbott, Lilly, and Pfizer assert that the Court lacks subject matter over Ms. Van Ornum's

claims and personal jurisdiction over them, therefore the Court must first address these argument

before reaching the merits of Ms. Van Ornum's Amended Complaint.  *See Sinochem Int'l Co. v.*

*Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not

rule on the merits of a case without first determining that it has jurisdiction over the category of

claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).") (citing *Steel*

*Co. v. Citizens for Better Env't*, 523 U.S. 83 (1998)).  This Report will first explain why this

Court holds subject matter jurisdiction over Ms. Van Ornum's claims.  Next, this Report will

detail the undersigned's conclusion that jurisdiction exists over Ms. Van Ornum's antitrust and

RICO claims, and then explain why the Amended Complaint fails to state an antitrust or RICO

claim upon which the Court may grant relief.  Finally, the Report will discuss why the Court

lacks personal jurisdiction over Abbott, Lilly, and Pfizer for the remainder of Ms. Van Ornum's

claims.

## II.  THIS COURT HOLDS SUBJECT MATTER JURISDICTION OVER MS. VAN ORNUM'S CLAIMS

Abbott, Lilly, and Pfizer argue that the Court lacks subject matter jurisdiction because of

the insubstantiality of Ms. Van Ornum's federal claims.  (Mot. 10-11, ECF No. 106.)  In 1974,

the Supreme Court provided:

> Over the years this Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are "so attenuated and unsubstantial as to be absolutely devoid of merit," *Newburyport Water Co. v. Newburyport*, 193 U.S. 561… (1904); "wholly insubstantial," *Bailey v. Patterson*, 369 U.S. 31, 33… (1962); "obviously frivolous," *Hannis Distilling Co. v. Baltimore*, 216 U.S. 285, 288 … (1910); "plainly unsubstantial," *Levering & Garrigues Co. v. Morrin*, 289 U.S. 103, 105 … (1933); or "no longer open to discussion," *McGilvra v. Ross*, 215 U.S. 70, 80 … (1909).

*Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974); *see also Wiley v. Nat'l Collegiate Athletic Ass'n*,

612 F.2d 473, 476–77 (10th Cir. 1979) (applying *Hagans* to find plaintiff's alleged personal

interest so insubstantial so as not to merit federal jurisdiction).  Abbott, Lilly, and Pfizer do not

contest that private causes of action rooted in the federal antitrust statutes, RICO, 42 U.S.C. §

1983, and the like garner federal question jurisdiction.  Rather, Abbott, Lilly, and Pfizer point to

the Amended Complaint's assertion that the Defendants conspired to harm and even murder Ms.

Van Ornum and her parents to prevent them from practicing natural medicine as evidence of

"bizarre conspiracy theories" best dismissed sua sponte.  (Mot. 10-11, ECF No. 106 (citing

*Watson v. United States*, No. 09–0268, 2009 WL 377136, *1 (D.D.C. Feb. 13, 2009)

(unpublished)).)  However, this Circuit has a history of reading federal claims generously.  *See*

*Prairie Band of Potawatomi Indians v. Pierce,* 253 F.3d 1234, 1240 (10th Cir. 2001) (reviewing

liberal definitions of what constitutes "colorable federal claims"); *see also Coando v. Coastal Oil*

*& Gas Corp.*, 44 F. App'x 389, 395–96 (10th Cir. 2002) (unpublished).  This generosity expands

for *pro se* litigants, "who may lack the legal training necessary to allege any more than facts

sufficient to describe his or her alleged injury." *Coando*, 44 F. App'x at 395–96; *see also*

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1073 (10th Cir. 2008)

(discussing "the solicitous construction due a *pro se* filing").  "[M]ere allegations as to the

presence of an unspecified federal question is generally insufficient to meet this burden."

*Coando*, 44 F. App'x at 396.  The Amended Complaint, in contrast, specifically identifies the

federal questions by name.

Based on this Circuit's liberal reading of "colorable" when determining whether a federal

claim exists and the expansive reading afforded to *pro se* filings, the undersigned

RECOMMENDS the District Judge find subject matter jurisdiction over Ms. Van Ornum's

claims.

### III. WHILE THIS COURT HOLDS PERSONAL JURISDICTION OVER ABBOTT, LILLY, AND PFIZER BASED ON THE ANTITRUST CLAIMS, THE ANTITRUST CLAIMS FAIL TO STATE A CLAIM UPON WHICH THE COURT MAY GRANT RELIEF

#### A. Personal Jurisdiction Exists Over Abbott, Lilly, and Pfizer Based on the Antitrust Claims

As the Plaintiff, Ms. Van Ornum "bears the burden of establishing personal jurisdiction

over the defendant[s]."  *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th

Cir. 1996) (quoting *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984)).

To meet this burden on a motion to dismiss where the Court receives only affidavits and written

materials, Ms. Van Ornum need only make a prima facie showing of personal jurisdiction.  *Id.*

"The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written

materials, facts that if true would support jurisdiction over the defendant[s]."  *OMI Holdings,

Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).  The undersigned takes as true all

"plausible, non-conclusory, and non-speculative" facts and resolves factual disputes in favor of

Ms. Van Ornum.  *Dudnikov*, 514 F.3d at 1070 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-6 (2007)).

Ms. Van Ornum appears *pro se*; thus, the Court must liberally construe her pleadings.   *See id.* at 1073 (acknowledging "solicitous construction due a pro se filing").  However, the Court cannot act as an advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Rules.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) ("[T]his court has repeatedly insisted that *pro se* parties follow the same rules of procedure that govern other litigants.") (quoting *Garrett v. Selby, Connor, Maddux & Janer,* 425 F.3d 836, 840 (10th Cir. 2005)).

A federal court considering whether it has personal jurisdiction over a defendant must decide "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."  *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)).

Ms. Van Ornum alleges that Defendants' class injured her "business and property" and seeks "tremble damages, costs, fees and simple interest" under the Clayton Antitrust Act.  (*See* Am. Compl. 43, ECF No. 98.)  15 U.S.C. § 15(a) provides:

> Any person . . . injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

To facilitate enforcement of the federal antitrust laws, 15 U.S.C. § 22 authorizes expansive venue and service of process on a corporate defendant:

> Any suit, action, or proceeding under the antitrust laws against a corporation may

be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

Thus, the Clayton Act provides for nationwide service of process against defendant corporations in private civil antitrust suits.  *See, e.g.*, *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 422 (2d Cir. 2005) (reading § 22 to permit worldwide service of process in certain circumstances); *In re Auto. Refinishing Paint Antitrust Litig.*, 358  F.3d 288, 293 (3d Cir. 2004) ("It is undisputed that the second clause authorizes nationwide, indeed worldwide, service of process on a defendant corporation in federal antitrust litigation."); *Phone Directories Co. v. Contel Corp.*, 786 F. Supp. 930, 942 (D. Utah 1992) ("[S]ervice of process is authorized by the nationwide service of process provision at § 12 of the Clayton Act.").  Ms. Van Ornum alleges that Abbott, Lilly, and Pfizer are corporations.  (Am. Compl. ¶¶ 62-64, ECF No. 98.)  Ms. Van Ornum makes these allegations under oath.  (Decl. under Penalty of Perjury, ECF No. 99.)  Abbott, Lilly, and Pfizer concede this point.  (Mot. 9, ECF No. 106.)

A circuit split continues as to when 15 U.S.C. § 22 authorizes nationwide service of process.  *See* 1B Phillip E. Areeda & Herbert Hovenkamp,  Antitrust Law ¶ 271d (4th ed. 2013) (discussing circuit split); Robert L. Haig, Bus. &  Commercial Litig. in Fed. Cts. § 67:57 (3d ed. 2011) (same).  The undersigned analyzed this split in its Report and Recommendation to Dismiss the AMA, ADA, and AHA and determined that 15 U.S.C. § 22 authorizes nationwide service of process, without considering proper venue.  (Report & Rec. re ECF No. 101 11-12, ECF No. 209.)

Having determined that 15 U.S.C. § 22 authorizes nationwide service of process, the undersigned turns to the final step of personal jurisdiction analysis, "whether exercise of jurisdiction comports with due process."  *Trujillo*, 465 F.3d at 1217 (quoting *Peay*, 205 F.3d at

1209).  Where a plaintiff brings a federal question under a statute providing  nationwide service

of process,

> "the Fifth Amendment requires the plaintiff's choice of forum to be fair and
> reasonable to the defendant."  To defeat federal jurisdiction, a defendant must
> establish that the "chosen forum will make litigation ... gravely difficult and
> inconvenient" or, in other words, the forum district burdens the defendant with
> "constitutionally significant inconvenience."  We look to non-exclusive factors in
> considering whether defendants have met this burden, such as (1) the extent of
> contact with the forum state, (2) the inconvenience of having to litigate in a
> foreign jurisdiction, (3) judicial economy, (4) the probable situs of the discovery
> proceedings, and (5) the nature of the defendant's activities and its impact beyond
> his state's borders.

*Klein v. Cornelius*, 786 F.3d 1310,  1318 (10th Cir. 2015) (quoting *Peay*, 205 F.3d at 1212)

(emphasis added).

Abbott, Lilly, and Pfizer argue that despite nationwide service of process, personal

jurisdiction over them does not comport with due process.  (Mot. 11-13, ECF No. 106.)  Abbott,

Lilly, and Pfizer claim that their operations and principal places of business lie outside Utah.

(Mot. 12, ECF No. 106.)  They further argue that litigating in Utah will not aid judicial economy

or discovery because hardly any of the alleged activity took place in Utah.  (*Id.*)  Abbott, Lilly,

and Pfizer point to, and agree with, the undersigned's earlier Report and Recommendation, which

suggested the probable center of discovery will rest in Hawaii, not Utah.  (*Id.* (citing Report &

Rec. 13, ECF No. 75).)  Defendants additionally argue, "it is impossible to determine from

Plaintiff's Amended Complaint what Plaintiff is claiming Abbott, Lilly and Pfizer did (especially

in Utah)."  (*Id.* at 12.)  Ms. Van Ornum attempts to pull Abbott, Lilly, and Pfizer into the District

of Utah without making any straightforward allegations about what Abbott, Lilly, and Pfizer did

in or relating to Utah, while Defendants disclaim any actions exist.

Nationwide service of process necessarily means corporations will at times have to appear

for a suit outside of the district in which their principle place of business rests.  Abbott, Lilly, and

Pfizer fail to give any explanation as to why litigating outside their residence or principal place of business would prove inconvenient.  (Mot. 11-13, ECF No. 106); *Peay*, 205 F.3d at 1212.  On the other hand, Ms. Van Ornum argues that litigation outside of Utah would highly inconvenience herself, (Am. Compl. ¶ 79, ECF No. 98), but *Peay's* focus rests on the circumstances of the defendant.  *Peay*, 205 F.3d at 1212 (describing defendant's burden).

Abbott, Lilly, and Pfizer identify Hawaii as the probable situs of discovery.  (Mot. 12, ECF No. 106.)  However, circumstances have changed; Ms. Van Ornum's Amended Complaint now includes Intermountain Health Care, Inc. (IHC) as the fourteenth named Defendant.  (Am. Compl. ¶ 70, ECF No. 98.)  In addition, a number of paragraphs address the sale of Defendants' products in Utah that have harmed Ms. Van Ornum physically, financially, and spiritually.  (*Id.* ¶¶ 35, 41, 44.)  While Ms. Van Ornum fails to state exactly to what products she refers, neither Abbott nor Lilly nor Pfizer disclaims selling its products to Ms. Van Ornum or in Utah.  To contest Ms. Van Ornum's sworn allegations, "a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"  *See OMI*, 149 F.3d at 1091 (explaining jurisdictional contest on a motion to dismiss) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985)).  Moreover, the Amended Complaint raises more events than the original Complaint that occur in Utah.  (*See id.* ¶¶ 31, 35, 41, 44, 113, 137, 147-51, 160-62.)  Therefore, Abbott, Lilly, and Pfizer misplace their reliance on the earlier Report and Recommendation's reasoning.

Given these Utah allegations, if Ms. Van Ornum could state a conspiracy claim either under the antitrust statues or under RICO, then bringing all conspirators for a case in one district would serve judicial economy.  However, as explained below Ms. Van Ornum's conspiracy claims fail to state a claim.

Ms. Van Ornum further believes that litigating in Utah would serve judicial economy because of the efficiency Utah presents – as a *pro se* party, Ms. Van Ornum argues she must travel to the courthouse to file documents with the Court.  (Am. Compl. ¶ 79, ECF No. 98.)  As a *pro se* litigant Ms. Van Ornum may not use the District of Utah's E-filing procedure absent an Order of the Court, which the Court has not given in this case.  DISTRICT OF UTAH CM/ECF AND E-FILING ADMINISTRATIVE PROCEDURES MANUAL 1 (Nov. 10, 2016), http://www.utd.uscourts-.gov/documents/utahadmin proc.pdf.  However, Ms. Van Ornum need not travel to the courthouse to file, as the District permits *pro se* litigants to file by mail.  PRO SE LITIGANT GUIDE 9 (Apr. 2014), http://www.utd .uscourts.gov/forms/prose_guide.pdf (allowing litigants to mail pleading to the clerk's office).  Timely filing by mail will require Ms. Van Ornum to mail her filing before time expires, as filing is only complete upon receipt by the court's clerk.  D.U. Civ. R. 5-1.  The inability to file electronically creates an inconvenience for Ms. Van Ornum, who must use fewer days to draft her filing to mail the document in time.  The District of Hawaii similarly does not allow *pro se* parties to file electronically.  However, the District of Hawaii considers papers filed based on the date of postmark if the party files by mail.  D. Hawaii LR5.  While the undersigned does not take such inconvenience lightly, particularly for a *pro se* litigant, Ms. Van Ornum would actually benefit from a more generous rule about the time of filing in Hawaii.

Abbott, Lilly, and Pfizer omit argument on the *Peay* factors regarding their contacts with Utah, how litigation in Utah would inconvenience them, and the nature of their activities beyond their home state.  Without more, Abbott, Lilly, and Pfizer fail to show "constitutionally significant inconvenience" and fail to demonstrate a Fifth Amendment due process issue.  (*See* Order, ECF No. 86 (noting the Tenth Circuit only finds constitutionally significant

inconvenience in rare instances)). "Certainly, '[i]n this age of instant communication,' and modern transportation, the burdens of litigating in a distant forum have lessened." *Peay*, 205 F.3d at 1213 (quoting *Oxford 1st Corp. v. PNC Liquidation Corp.*, 372 F. Supp. 191, 201 (E.D. Pa. 1974)). The undersigned RECOMMENDS finding personal jurisdiction exists over Abbott, Lilly, and Pfizer based on 15 U.S.C. § 22.

### B. Ms. Van Ornum Fails to State a Cognizable Antitrust Claim Upon Which the Court May Grant Relief

If the District Judge adopts the undersigned's analysis of personal jurisdiction arising from the antitrust statutes, the undersigned nonetheless recommends dismissal of the antitrust claims under Rule 12(b)(6) for failure to state a claim.

The Court construes *pro se* pleadings liberally and holds them to a "less stringent standard." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Garrett,* 425 F.3d at 840 (internal quotation omitted)). A *pro se* plaintiff's claims should survive a Rule 12(b)(6) motion, "despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.* (quoting *Hall*, 935 F.2d at 1110). Regardless, even a *pro se* plaintiff must "'set forth plausible claims' animating the elements of her causes of action." *See Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Whether a plaintiff's claims rise to the threshold of plausible depends on the factual allegations presented within the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall*, 935 F.2d

at 1110.  The Court will disregard legal allegations masquerading as factual allegations.

*Twombly*, 550 U.S. at 554–56 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  If a *pro se* party has not alleged sufficient facts to support a legal theory, courts will not fill in the factual gaps.  *Smith*, 561 F.3d at 1096 (citing *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997)).

Should a plaintiff's original complaint miss "important element[s] that may not have occurred to him," the Court will grant leave to amend.  *Hall*, 935 F.2d at 1110.  After providing an opportunity to amend, a court may properly dismiss with prejudice only upon concluding that further opportunity to amend would prove "futile."  *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010).

The District Judge dismissed all antitrust claims in Ms. Van Ornum's Complaint without prejudice under Rule 12(b)(6) because Ms. Van Ornum's claims failed to comply with Rule 8(a)(2):  "a short and plain statement of the claim showing that the pleader is entitled to relief." (Order 7-9, ECF No. 86.)  Ms. Van Ornum's Amended Complaint fails to solve this problem.

Put in the best possible light, Ms. Van Ornum alleges Abbott, Lilly, and Pfizer belong to a class of Defendants, who conspire to withhold knowledge of the true nature of our bodies, provide harmful food, drink, pharmaceuticals, products, and medical and dental procedures, and lobby to pass laws with the intent of preventing Ms. Van Ornum and her parents from spreading their message of a much longer life possible through alternative means.  (*See* Am. Compl. 8-10, ECF No. 98.)  Through this conspiracy, the Defendants force the general public, including Ms. Van Ornum, to buy unhealthy food, submit to unhealthy medical procedures, take unhealthy medications, and drink unhealthy water that leads to a reduced life expectancy and financially benefits the Defendants.  *Id.*  The Amended Complaint alleges the Defendants' class has imposed

a price ceiling for public produce, health insurance, wholesome herbs, fruits, and water, among other things.  (Am. Compl. ¶ 44, ECF No. 98.)  Further, the Defendants' class has withheld water, herbs, fruits, supplements, medicine, treatments, and procedures from the market.  (*Id.* ¶ 41.)  However, where a complaint makes allegations "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly* 550 U.S. at 570).  The Amended Complaint suffers from exactly this problem.

A private litigant making a civil antitrust claim does so through the Clayton Act, 15 U.S.C. § 15, allowing a private right of action for violation of the Sherman Act, 15 U.S.C. § 1-3. Ms. Van Ornum fails to allege the facts necessary to support antitrust claims.  The keystone of any 15 U.S.C. § 1 claim lies in the demonstration of "an agreement, tacit or express."  *Twombly*, 550 U.S. at 553–54 (2007) (quoting *Theatre Enter., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 542 (1954)).  Independent parallel business behavior may provide admissible circumstantial evidence but standing alone fails to establish an agreement.  *Id.*  The Amended Complaint lacks any allegations connecting Abbott, Lilly, or Pfizer to such an agreement.  The Amended Complaint only mentions these Defendants four times collectively and all in reference to medical treatment or procedures for Ms. Van Ornum's mother, father, or son.  (Am. Compl. ¶¶ 96, 121, 126, 155, ECF No. 98 ("Lilly's penicillin and antibiotic drugs", "Lilly and Pfizer's 'premarin' and 'metro gel-virginal'", Lilly, Pfizer, or Abbott eye drops, and "Abbott's weight height chart.").)  These allegations fail to state the requisite elements of a 15 U.S.C. § 1, lacking any evidence of "an agreement, tacit or express."  *See Twombly*, 550 U.S. at 553-54 (quoting *Theatre Enter.*, 346 U.S. at 542); *Dudnikov*, 514 F.3d at 1070 (noting need to take *plausible*

16

factual allegations as true).  The antitrust claims fail under 15 U.S.C. § 1.[3]

A 15 U.S.C. § 2 claim requires allegations concerning four elements:  (1) the monopoly, (2) the relevant market, (3) the misconduct, and (4) a connection between the misconduct and harm to competition in the relevant market.  *Duty Free Americas, Inc. v. Estee Lauder Co., Inc.*, 797 F.3d 1248, 1262–64 (11th Cir. 2015) (explaining in detail the allegations necessary to state a claim for attempted monopolization under § 2).  Ms. Van Ornum's allegations as to Abbott, Lilly, and Pfizer do not, and cannot, map onto this basic framework.  The Amended Complaint alleges a monopoly between anyone with a hand in modern medicine, agriculture, or health generally, the relevant market includes the whole world, and the harm results from the monopolists' setting a price ceiling and depriving all people of their natural life expectancy of 900 years.  (Am. Compl. ¶¶ 8, 12-13, 44, ECF No. 98.)  The Amended Complaint fails to articulate the product market and fails to explain how she and her parents compete with Abbott, Lilly, and Pfizer.  Again, the extreme implausibility of these claims – the notion of collusion on an impossibly large scale, the assertion that without modern antibiotics, surgery, and nutrition we would live centuries longer – does not allow for a 15 U.S.C. § 2 claim.

A *pro se* plaintiff must "'set forth plausible claims' animating the elements of her causes of action."  *See Burnett*, 706 F.3d at 1236 (quoting *Iqbal*, 556 U.S. at 678).  Further, the undersigned must acknowledge the extreme implausibility that anyone is actively engaged in a conspiracy to reduce human life expectancy from 900 or more years to 100 or fewer years, let alone in a conspiracy this vast.  Ms. Van Ornum falls short of this burden and for the above reasons the undersigned RECOMMENDS the District Judge dismiss Ms. Van Ornum's antitrust

---

[3] 15 U.S.C. § 3 effectively applies 15 U.S.C. § 1 to the District of Columbia and the United States territories.  Thus to the extent Ms. Van Ornum asserts claims under this statute, they suffer from the same plausibility defects as the 15 U.S.C. § 1 antitrust claims.

claims pursuant to Rule 12(b)(6).

## IV. WHILE PERSONAL JURISDICTION OVER ABBOTT, LILLY, AND PFIZER EXISTS BASED ON MS. VAN ORNUM'S RICO CLAIM, THE RICO CLAIM FAILS TO STATE A CLAIM ON WHICH THE COURT CAN GRANT RELIEF

### A. Personal Jurisdiction Exists Over Abbott, Lilly, and Pfizer Based on the RICO Claims

Similar to the antitrust laws, RICO contains a nationwide service of process provision. 18 U.S.C. § 1965(b). Whether Ms. Van Ornum may properly hale Abbott, Lilly, and Pfizer into the District of Utah through RICO's nationwide service of process provision depends on three findings. First, "personal jurisdiction based on minimum contacts [must be] established as to at least one defendant." *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1230-31 (10th Cir. 2006) (quoting *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998)). Second, the plaintiff may serve summons on other defendants outside the district if required by the "ends of justice." *Id.* Once the Court makes these findings, it must proceed with an inquiry under the Fifth Amendment to determine whether exercise of jurisdiction over Abbott, Lilly, and Pfizer "comports with Fifth Amendment due process." *See Cory*, 468 F.3d at 1229 (noting statutory nationwide service of process confers personal jurisdiction, but exercise of that jurisdiction must still meet Fifth Amendment due process requirements).

As to the initial finding, the Amended Complaint alleges IHC, the fourteenth named Defendant and a partner in the RICO conspiracy according to the allegations, is a Utah-based company with its primary place of business and headquarters in Salt Lake City, Utah. (Am. Compl. 17, ECF No. 98.) Therefore, the Court finds minimum contacts exist between at least one Defendant and the District of Utah.

Even with apparent personal jurisdiction over IHC, RICO will only authorize nationwide service of process upon Abbott, Lilly, and Pfizer if the ends of justice so require. 18 U.S.C. §

1965(b).  The undersigned conducted this analysis as to Defendants collectively in its Report and Recommendation to Dismiss Dr. Goodhue.  (Report & Rec. re ECF No. 100 9-13, ECF No. 208.)  In doing so, it found the ends of justice require nationwide service of process.  (*Id.* at 13.)

Having made the determination that Ms. Van Ornum may use nationwide service of process, the undersigned must consider whether the Fifth Amendment Due Process Clause permits the Court to exercise personal jurisdiction over Abbott, Lilly, and Pfizer.  *Cory,* 468 F.3d at 1229; *Peay,* 205 F.3d at 1212.  For the same reasons outlined in the antitrust discussion above, (supra 8-13), exercise of personal jurisdiction over Abbott, Lilly, and Pfizer via nationwide service of process comports with due process.  Abbott, Lilly, and Pfizer argue otherwise but do not meet the burden described in *Peay.*  (*Id.*)  Therefore, the undersigned RECOMMENDS finding personal jurisdiction exists over Abbott, Lilly, and Pfizer based on the RICO claims.

### B.  Ms. Van Ornum Fails to State a Cognizable RICO Claim Upon Which the Court May Grant Relief

If the District Judge agrees and finds personal jurisdiction over Abbott, Lilly, and Pfizer arising from Ms. Van Ornum's RICO claims, the Court should nonetheless dismiss the RICO claims against Abbott, Lilly, and Pfizer pursuant to Rule 12(b)(6).

Ms. Van Ornum fails to allege facts sufficient to create any plausible RICO claim.  The Amended Complaint asserts that Abbott, Lilly, and Pfizer, acting in concert with the broad class of Defendants, "commit[ ] continuous and systematic serious injuries and damages to our body and its business department in aid of racketeering activities."  (Am. Compl. ¶ 8, ECF No. 98.)  Defendants' class tricks the public into believing modern agriculture, modern medicine, and chlorination, among other ingenuities, aid health, when in reality these devices take centuries off our natural life span.  (*Id.* at ¶¶ 9-12.)  By purposefully withholding "knowledge of our Creator's laws of health," Defendants force humanity into "peonage."  (*Id.* at ¶ 15.)  The RICO enterprise

stoops to the depths of "murder in aid of racketeering activities and use[s] interstate commerce facilities to commission murder-for-hire." (*Id.* at ¶ 7.)  Concerning these Defendants, the Amended Complaint's assertion that the "Defendants class provide only the dietary intakes, treatments and procedures conclusively proven will cause serious injuries and damages to our bodies and its business departments and did so and do so continuous and systematically between city limits and between any US territory we reside including Utah" comes closer than any other allegation.  (*Id.* at ¶ 35.)

The Amended Complaint relies on a broad and ill-defined "class" of Defendants.  The group involved in the suspected enterprise includes "all pharmaceutical and chemical corporations, partnerships, associations, health care providers who are individuals, group of individuals, facilities, hospital and clinics."  (*Id.* at ¶ 8.)  This fact alone provides grounds to dismiss the RICO claims.  While alleging the existence of an "enterprise" is necessary to state a civil RICO claim, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495–97 (1985) ("A violation of § 1962(c)… requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."); *Boyle v. United States*, 556 U.S. 938, 943–45 (2009) (defining "enterprise"), Ms. Van Ornum sets an impossible task for herself.  No imaginable set of facts exists that Ms. Van Ornum can allege (and Ms. Van Ornum alleges few facts) that would tie together every pharmaceutical company, chemical company, and health care provider into a single enterprise.

Even if Ms. Van Ornum successfully alleged such a massive enterprise, her Amended Complaint fails to establish two other requisite elements:  racketeering activity and a pattern. *See Sedima*, 473 U.S. at 495–97 (identifying "a pattern…of racketeering activity" as a necessary civil RICO element); *see also* 18 U.S.C. § 1962(c).  No factual allegations in the Amended Complaint plausibly suggest Abbott, Lilly, or Pfizer engaged in racketeering activity, let alone a

pattern of such actions.  18 U.S.C. § 1961(a)(1) (listing qualifying "racketeering activit[ies]".). While the Amended Complaint makes some allegations of racketeering activity, none refers to Abbott, Lilly, or Pfizer.  (*See, for example* Am. Compl. ¶¶ 7, 36, 54, 97-98, 109, 119, 167, 179, ECF No. 98 (alleging murder and murder-for-hire).)  The four direct references to these three corporations suggest only that the corporations' products harmed Mr. and Mrs. Kurihara, and Ms. Van Ornum's son.  (Am. Compl. ¶¶ 96, 121, 126, 155, ECF No. 98.)  Product-related torts do not appear on the list of racketeering activities.  *See* 18 U.S.C. § 1961.

Even the relief Ms. Van Ornum seeks lacks plausibility:  "restore back to the people our Creator's laws of health, privilege or immunities, life, liberty and property, nationwide, for the wellbeing of this promised land."  (Am. Compl. ¶ 185, ECF No. 98.)  To assist the Court, a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Rule 8(a), and that statement must be plausible.  *Twombly*, 550 U.S. at 570. Ms. Van Ornum has had multiple opportunities to frame her issues in this manner and has failed to conform to the Rules.  Therefore, the undersigned RECOMMENDS dismissing all RICO and racketeering claims against Abbott, Lilly, and Pfizer for failure to state a claim.

## V.  NO PERSONAL JURISDICTION EXISTS OVER ABBOTT, LILLY, AND PFIZER UNDER UTAH'S LONG-ARM STATUTE

If this Court dismisses Ms. Van Ornum's antitrust and RICO claims, the continued existence of pendant jurisdiction, which could exist if the antitrust or RICO claims remained in the case, becomes suspect.  The Tenth Circuit found abuse of discretion where a district court retained pendant jurisdiction after dismissing an anchor claim prior to trial.  *United States v. Botefuhr*, 309 F.3d 1263, 1274 (10th Cir. 2002).  Here, dismissal of the anchor claims, the antitrust and RICO claims, would occur prior to discovery even beginning.  Therefore, absent another basis for personal jurisdiction, the Court should follow the prudent course and dismiss

the remaining claims without prejudice for lack of jurisdiction. As discussed below, no other basis exists for this Court to exercise personal jurisdiction over Abbott, Lilly, and Pfizer.

Whether the Court holds personal jurisdiction over Abbott, Lilly, and Pfizer absent nationwide service of process, depends on Rule 4(k)(1)(A) and Utah's long-arm statute. *See Dudnikov*, 514 F.3d at 1070 (noting where federal statutes at issue do not provide nationwide service of process, the court considers the law of the forum state). Utah's long-arm statute extends to the limits allowed by due process of law, Utah Code Ann. § 78B-3-201(3); *see Dudnikov*, 514 F.3d at 1070 (noting similar Colorado statute confers maximum jurisdiction permitted by due process), and the inquiry turns on whether the exercise of jurisdiction over Abbott, Lilly, and Pfizer comports with the Fourteenth Amendment's Due Process Clause. *See Klein*, 786 F.3d at 1318 (distinguishing 14th Amendment analysis from 5th Amendment analysis).

Due process requires that, for a court to hold jurisdiction over a nonresident, "minimum contacts between the defendant and the forum State" must exist. *Trujillo*, 465 F.3d at 1217–18 (quoting *Intercon, Inc. v. Bell Atl. Internet Sol., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)). "Because a state's sovereignty is territorial in nature, a defendant's contacts with the forum state must be sufficient such that, notwithstanding its lack of physical presence in the state, the state's exercise of sovereignty over it can be described as fair and just." *Dudnikov*, 514 F.3d at 1070.

A plaintiff may demonstrate Fourteenth Amendment minimum contacts in two ways:

First, a court may exercise *specific* jurisdiction if a "defendant has 'purposefully directed' his activities at residents of the forum . . . *and* the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (citations omitted) (emphasis added). Second, a court may exercise *general* jurisdiction where the defendant's contacts, while not rising to the level of the traditional notion of presence in the forum state, are nonetheless "continuous and systematic." *Trierweiler [v. Croxton & Trench Holing Corp.],* 90 F.3d [1523], 1533 [(10th Cir.

1996)] (quoting *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 416 (1984)).

*Kuenzle*, 102 F.3d at 455.  If the court finds it has either specific or general jurisdiction over a

defendant, the case against that defendant satisfies the "minimum contacts" standard.  *See OMI*

*Holdings*, 149 F.3d at 1090-91.  After a successful finding of minimum contacts, a court must

next analyze whether the exercise of personal jurisdiction over the defendant comports with

"traditional notions of fair play and substantial justice."  *Id.* (quoting *Asahi Metal Indus. Co., Ltd.*

*v. Superior Ct.*, 480 U.S. 102, 113 (1987)).  The undersigned does not reach this final part of the

test.

### 1.  *This Court Lacks Specific Jurisdiction Over Abbott, Lilly, and Pfizer*

A court may assert specific jurisdiction over a defendant where "the defendant has

'purposefully directed' his activities at residents of the forum, and the litigation results from

alleged injuries that 'arise out of or relate to' those activities."  *Burger King*, 471

U.S. at 472 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) & *Helicopteros*,

466 U.S. at 414).  When determining whether a defendant has minimum contacts sufficient to

create specific jurisdiction, courts apply a two-part test.  "[F]irst, … the out-of-state defendant

must have 'purposefully directed' its activities at residents of the forum state, and second, … the

plaintiff's injuries must 'arise out of' defendant's forum-related activities."  *Dudnikov*, 514 F.3d

at 1071 (citing *Burger King*, 471 U.S. at 472).  In analyzing a defendant's "purposefully

directed" activities, courts look for allegations showing (a) "an intentional action" by the

defendant, (b) "expressly aimed at the forum state," (c) with the defendant's "knowledge that the

brunt of the injury would be felt in the forum state."  *Id.* at 1072; *see accord Walden v. Fiore*,

571 U.S. ____, 134 S. Ct. 1115, 1122 (2014).  Specific jurisdiction must arise from "actions by

the defendant and not [from] events that are the result of unilateral actions taken by someone

else."  *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir.

2004).  In addition, a plaintiff's  allegations must demonstrate that the alleged injuries "arise out of" the defendant's forum-related activities by showing a causal link between the defendant's contacts and the injuries at issue.  *Dudnikov*, 514 F.3d at 1078–79.  This factor puts the "specific" into specific jurisdiction.

The undersigned's original Report and Recommendation found Ms. Van Ornum failed to allege any facts capable of suggesting that Abbott, Lilly, and Pfizer had purposefully directed actions towards Utah or that a causal link existed between any such actions and Ms. Van Ornum's alleged injuries.  (Report & Rec. 15-17, ECF No. 75.)  Ms. Van Ornum's Amended Complaint again fails to make sufficient allegations for specific jurisdiction to attach.

In her argument for specific jurisdiction, Ms. Van Ornum hardly proceeds beyond mere recitation of the basic elements.  The Amended Complaint states:

> 78. Ms Van Ornum allege that personal jurisdiction and venue accords with Utah Long Arm Statute (UCA §78b-3-201 (3)) and Fourteenth Amendments due process minimal contact because:
> a) First, nonresident defendants purposefully direct their activities at residents of their forum which consequentially extend outside their territory at residents in Utah, just as if Utah defendants did not conspire with nonresident defendants they would consequentially extend outside of their territory to the benefit of residents of other forum states, and 42 USC §2000bb-1 (b) demonstration relief and pecuniary relief results from alleged injuries that arise out of or relate to those allege multidistrict antitrust racketeering conspiracy activities[.]

(Am. Compl. 19-20, ECF No. 98.)  This paragraph offers no factual allegations to support intentional action by Abbott, Lilly, and Pfizer.  Barebones recitation of the specific jurisdiction standard, apparently assigning the conspiracy as the purposeful action of all named Defendants, fails to suffice.

Ms. Van Ornum references Abbott, Lilly, and Pfizer seven times total.  The first three citations only confirm each's status as a corporation and list principal places of business and headquarters in Illinois, Indiana, and Connecticut respectively.  (Am. Compl. ¶¶ 62-64, ECF No.

98.)  The four citations within the body of the Amended Complaint allege use of Abbott, Lilly, and Pfizer's products in Hawaii.  (Am. Compl. ¶¶ 96, 121, 126, 155, ECF No. 98.); *Dudnikov*, 514 F.3d at 1071.  Without more, Ms. Van Ornum fails to make a prima facie showing of specific jurisdiction over Abbott, Lilly, or Pfizer.

### 2.  *This Court Lacks General Jurisdiction Over Abbott, Lilly, and Pfizer*

Without specific jurisdiction, the undersigned proceeds to analyze the possibility of general jurisdiction.  However, "[b]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quoting *Helicopteros*, 466 U.S. at 416)).  Therefore, Ms. Van Ornum must provide facts capable of establishing contacts more widespread than those necessary for specific jurisdiction.  *See Kuenzle*, 102 F.3d at 458 (quoting *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 146 (10th Cir. 1992)).

*Daimler AG v. Bauman* clarified the parameters of general jurisdiction.  571 U.S. ___, 134 S. Ct. 746 (2014); *see Parlant Tech. v. Bd. of Educ.*, No. 2:12-CV-417-BCW, 2014 WL 4851881, at *4 (D. Utah Sept. 29, 2014) (unpublished).  The Supreme Court noted that courts exercise general ("all-purpose") jurisdiction paradigmatically in those forums where a court would fairly regard an individual or corporate defendant as "at home," such as an individual's state of domicile or a corporation's state of incorporation or principal place of business.  *Daimler*, 134 S. Ct. at 760 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).  Beyond these "paradigm bases" for general jurisdiction, a court can find general jurisdiction over an out-of-state corporate defendant when the corporation maintains affiliations

with the forum state "so continuous and systematic as to render [the corporation] essentially at home in the forum State." *Id.* at 761 (citing *Goodyear*, 564 U.S. at 919).  Courts appropriately require significantly more contacts before finding general jurisdiction than specific because general jurisdiction allows any plaintiff to sue a defendant in that forum for all claims where subject matter jurisdiction exists.  *See id.* at 751 (noting "a court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" (quoting *Goodyear*, 564 U.S. at 919)).

In considering whether a defendant's contacts with the forum suffice to create general jurisdiction where the defendant does not reside, the Tenth Circuit, prior to *Daimler*, considered the following factors:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Kuenzle*, 102 F.3d at 457 (quoting *Trierweiler*, 90 F.3d at 1533).  This list is non-exhaustive.  *See Trierweiler*, 90 F.3d at 1533 ("In assessing contacts with a forum, courts have considered *such factors as* . . .") (emphasis added) (citation omitted); *Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1193 (D. Colo. 1999) (citation omitted) ("[T]he *Trierweiler* factors are neither exhaustive nor necessarily determinative of the general personal jurisdiction inquiry.").

The Amended Complaint concedes that neither Abbott no Lilly nor Pfizer has either its principal place of business or its headquarters in Utah.  (Am. Compl. ¶¶ 62-64, ECF No. 98.) Nonetheless, the Amended Complaint later argues, "non resident's contacts while not rising to the level of the traditional notion of presence in Utah are nonetheless continuous and

systematic." (*Id.* at ¶ 78.)  Mere recitation of legal standards does not equate to factual allegations and does not entitle Ms. Van Ornum to any presumptions.

The Amended Complaint includes only sparse allegations to support Abbott, Lilly, or Pfizer's contacts rising to the level of "continuous and systematic."  In fact, the strongest argument Ms. Van Ornum presents as to why jurisdiction lies in Utah appears in her inverted application of the five-factor *Peay* test.  The *Peay* Test, as discussed above, considers five factors to determine whether a defendant has successfully shown a "constitutionally significant inconvenience" that would result from personal jurisdiction derived from nationwide service of process.  *Peay*, 205 F.3d at 1212.

Ms. Van Ornum applies these factors to argue why jurisdiction lies in Utah rather than another location.  Specifically Ms. Van Ornum writes:

> 79. Ms Van Ornum, Mr Kurihara and Mrs Kurihara allege that personal jurisdiction and venue accords with Fifth Amendment minimal constitutional requirement (28 USC §1331) and constitutional significant inconvenience for both Ms Van Ornum and Defendants' class in that:
> 1) Any other forum is gravely difficult and inconvenient for Ms Van Ornum because she has no contact with other forum, other than consequential;
> 2) It has been futile under the circumstantial comparisons;
> 3) judicial economy is practical in this forum concerning the events thus far in that to timely file, she needs to travel to the Courthouse to file;
> 4) Discovery will probably likely occur primarily in Utah where the association and corporate defendants do substantive, continuous and systematic business affairs herein, therefore they will have access to the laboratory tests et seq. for burden of demonstration since Utah defendants destroyed our medical and dental records knowing, willful and purposefully (18 USC §1592), to obstruct enforcement of Sherman and Clayton Acts and Racketeering Influence and Corrupt Organization Act violations (15 USC §§1, 2, 3(a)(b), 15(a); 18 USC §1964(c));
> 5) Hawaii is furtherance and expensive compare to Utah; and
> 6) Hawaii defendants denied due process with equal protection of the law, when Ms Van Ornum was a resident and a non resident in 2012;
> 7) Any defendants' gross income and tax liabilities make traveling and attorney's fee a drop in the bucket compare to Ms Van Ornum's gross

income and tax liabilities[.]

(Am. Compl. ¶ 79, ECF No. 98.)

Although litigation in other venues may well burden Ms. Van Ornum, in terms of time and expense, she misses the point of the minimum contacts due process analysis. For the Court to exercise personal jurisdiction over Abbott, Lilly, and Pfizer, doing so must be "fair and just" to them, not Ms. Van Ornum. *See Dudnikov*, 514 F.3d at 1070 (explaining due process consideration focuses on fairness to the defendant). Because Ms. Van Ornum, as Plaintiff, chooses the forum, the Court can assume its fairness as to her.

Ms. Van Ornum mentions Abbott, Lilly, and Pfizer seven times in the Amended Complaint. (Am. Compl. ¶¶ 96, 121, 126, 155 (referencing use of medical products made by Abbott, Lilly, or Pfizer in Hawaii), ECF No. 98.) At no point does the Amended Complaint connect Abbott, Lilly, or Pfizer to Utah. (*See id.*) Ms. Van Ornum clarifies in her Opposition that the Court has personal jurisdiction over Abbott, Lilly, and Pfizer because they belong to "Defendants' class." (Opp'n 6, ECF No. 129.) Nonetheless, Ms. Van Ornum's reasoning for the Court has why personal jurisdiction over this "class" fails. As discussed above, the undersigned does not accord Ms. Van Ornum's legal conclusions a presumption of truth. Ms. Van Ornum's Opposition appears to argue that this Court has personal jurisdiction because all named Defendants belong to a class that includes co-conspirators in Utah, and "any co-conspirator's act in a district is attributable to the other co-conspirators." (Opp'n 6, 9-10, ECF No. 129 (quoting *Ethanol Ptnrs. Accredited v. Winer, Zucherbrot, Weiss, Brecher*, 635 F. Supp. 15, 18 (E.D. Pa. 1985).) However, the undersigned recommends dismissing the antitrust and RICO claims, mooting this point.

Ms. Van Ornum makes no other specific allegations in the Amended Complaint or in her

Opposition connecting Abbott, Lilly, or Pfizer to Utah.  Absent any showing of business activities "so constant and pervasive" as to make Abbott, Lilly, or Pfizer "at home" in Utah, the undersigned cannot find general jurisdiction over Abbott, Lilly, or Pfizer.  *See Daimler*, 134 S. Ct. at 751 (quoting standard).  Unlike the Fifth Amendment due process inquiry, the burden of the Fourteenth Amendment due process inquiry falls on the plaintiff.  *C.f. Peay*, 205 F.3d at 1212, *with Kuenzle*, 102 F.3d at 456.

In conclusion, for the Court to have personal jurisdiction over Abbott, Lilly, or Pfizer to hear the remaining claims, the Amended Complaint must provide some grounds for a finding of minimum contacts with Utah.  *See OMI Holdings*, 149 F.3d at 1091 (requiring minimum contacts for exercise of personal jurisdiction).  Ms. Van Ornum has failed to allege facts showing specific or general jurisdiction over these claims, therefore the undersigned RECOMMENDS the District Judge grant the Motion to Dismiss as to the remaining claims without prejudice for lack of personal jurisdiction over Abbott, Lilly, and Pfizer.

## RECOMMENDATION

For the reasons stated above, the undersigned RECOMMENDS the Court dismiss Ms. Van Ornum's antitrust and RICO claims against Abbott, Lilly, and Pfizer for failure to state a claim, and dismiss all remaining claims for lack of personal jurisdiction, granting Defendant's Motion to Dismiss, (ECF No. 106).

The Court will send copies of this Report and Recommendation to the parties who the Court hereby notifies of their right to object to the same.  The Court further notifies the parties that they must file any objection to this Report and Recommendation with the Clerk of the Court,  pursuant to 28 U.S.C. § 636(b) and Rule 72(b), within fourteen (14) days of service thereof.  Failure to file objections may constitute waiver of objections upon subsequent review.

DATED this 22d day of March, 2017.

BY THE COURT:

_Evelyn J. Furse_
Evelyn J. Furse
United States Magistrate Judge