## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **SANDRA C.K. VAN ORNUM**, <br><br> Plaintiff, <br><br> v. <br><br> **AMERICAN MEDICAL ASSOCIATION**, et al., <br><br> Defendants. | **REPORT AND RECOMMENDATION: GRANTING INTERMOUNTAIN HEALTHCARE'S MOTION TO DISMISS (ECF No. 189)** <br><br> Case No.  2:14-cv-921-RJS-EJF <br><br> District Judge Robert J. Shelby <br><br> Magistrate Judge Evelyn J. Furse |

Defendant Intermountain Healthcare (IHC) filed the present Motion to Dismiss pro se Plaintiff Sandra C.K. Van Ornum's claims pursuant to Federal Rules of Civil Procedure (Rules) 8(a) and 12(b)(6).  (IHC's Mot. to Dismiss Am. Compl. (Mot.), ECF No. 189.)  Based on the allegations presented in the Amended Complaint, (Am. Compl., ECF No. 98), the undersigned RECOMMENDS the Court[1] determine the District of Utah lacks subject matter jurisdiction over the state law claims against IHC involving the provision of health care services due to Ms. Van Ornum's failure to comply with the prerequisites of the Utah Health Care Malpractice Act.[2]  As to all remaining claims, including the antitrust and Racketeer Influenced and Corrupt Organizations (RICO) claims, the undersigned RECOMMENDS dismissal pursuant to Rule 12(b)(6).

### BACKGROUND

On December 22, 2014, Ms. Van Ornum filed a pro se Complaint against the

---

[1] On January 5, 2015, District Judge Robert J. Shelby referred this case to the undersigned  Magistrate Judge under 28 U.S.C. § 636(b)(1)(B).  (ECF No. 3.)
[2] Pursuant to D.U. Civ. R. 7-1(f), the undersigned finds oral argument unnecessary and will make its recommendation based on the Amended Complaint and written memoranda.

American Medical Association (AMA), American Dental Association (ADA), American Hospital Association (AHA), Monsanto Company (Monsanto), Eli Lilly and Company (Lilly), Pfizer Inc. (Pfizer), Abbott Laboratories (Abbott), Allergan Inc. (Allergan), Hawaii Pacific Health System (Hawaii Pacific), Kuakini Health System (Kuakini), and Dr. William Goodhue (Dr. Goodhue). (ECF No. 1.) The named Defendants filed Motions to Dismiss. (Lilly and Pfizer, ECF No. 9; Hawaii Pacific, ECF No. 14 & 39; AMA, ADA, and AHA, ECF No. 23; Allergan, ECF No. 29; Kuakini, ECF No. 36; Abbott, ECF No. 45; Monsanto, ECF No. 46; Dr. Goodhue, ECF No. 66.) The District Judge granted each Motion to Dismiss for lack of jurisdiction, with the exception of the antitrust claims, which the District Judge dismissed for failure to comply with Rule 8(a) pleading standards. (See Order, ECF 86.)

After dismissing all claims without prejudice, the District Judge offered Ms. Van Ornum the opportunity to amend her Complaint. (Id.) Ms. Van Ornum filed the current operative Complaint (the "Amended Complaint") on May 4, 2016. (ECF No. 98.) The Amended Complaint named all of the original parties and added IHC. (Id.) On October 14, 2016 IHC filed its Motion to Dismiss. (ECF No. 189.) On December 19, 2016, the Court received Ms. Van Ornum's Response, (Mem. in Opp'n to Dkt 189 of IHC Org. & Stay the Stay (Resp.), ECF No. 192), and on January 3, 2017 IHC filed its Reply. (IHC's Reply Mem. in Supp. of Mot. to Dismiss Am. Compl. (Reply), ECF No. 195.)

Ms. Van Ornum's Amended Complaint contains a potpourri of allegations. From what the undersigned can gather, Ms. Van Ornum alleges IHC, acting either independently or as part of the larger, indefinite "Defendants' class," violated numerous constitutional protections and federal statutes. Constitutional violations include: the

2

Privileges and Immunities Clause (14th Amendment), the Due Process Clause (14th Amendment), the Equal Protection Clause (14th Amendment), provisions against slavery and involuntary servitude (13th Amendment), Freedom of Speech (1st Amendment), Freedom of Assembly (1st Amendment), and Freedom of the Press (1st Amendment).

Alleged statutory violations include:  18 U.S.C. § 1851 (peonage), 42 U.S.C. § 2000bb-1 (Religious Freedom Restoration Act), 15 U.S.C. § 45 (unfair or deceptive acts or practices (FTC Act § 5a)), 15 U.S.C. § 1-3 (Sherman Antitrust Act), 15 U.S.C. § 15 (Clayton Antitrust Act), 18 U.S.C. § 1959 (violent crimes in aid of racketeering activity), 18 U.S.C. § 1961 (RICO), and 18 U.S.C. § 1958 (use of interstate facilities in murder for hire).

Essentially, Ms. Van Ornum objects to modern medicine, modern agriculture, and modern civilization to the extent these systems run contrary to her "knowledge of our Creator's laws of health."  (Am. Compl. 4, ECF No. 98.)  "Defendants' class" operates a monopolistic force behind these modern systems, maintaining and growing their power at the expense of "our body and its business department."  (Id. at 3.)  Preservation of such a huge monopoly requires innumerable and unending acts; three highlights from Ms. Van Ornum's perspective include the creation of the United States Department of Health, Education, and Welfare in 1953, the passage of "the Obama health reform," and the "IRS penalty laws."  (Id. at 8, 10.)

While Ms. Van Ornum's Amended Complaint only names fourteen specific Defendants, the entire conspiracy consists of "all pharmaceutical and chemical corporations, partnerships, associations, health care providers who are individuals,

group of individuals, facilities, hospital and clinics." (Id. at 3.)  Ms. Van Ornum believes that if this group stopped providing/forcing things like fluoridated water, medical surgeries, pharmaceuticals, and chemically supported agriculture, and if people returned to the practices of health and nutrition supported by her readings of the Old Testament and various other spiritual texts, everyone would live for over 900 years.  (Id. at 3-6.)  According to Ms. Van Ornum, Defendants' class propagates its systems, prevents exercise of true health practices, and in doing so robs people generally, and her parents and herself in particular, of good health and ninety percent of their life expectancy.  (Id. at 3-4, 9.)

## DISCUSSION

IHC offers three grounds for dismissing Ms. Van Ornum's Amended Complaint: (1) the Court lacks subject matter jurisdiction over Ms. Van Ornum's claims, (2) the Amended Complaint violates Rule 8, and (3) the Amended Complaint fails to state a claim upon which the Court can grant relief.  (Mot. 4-9, ECF No. 189.)

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."  Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430–31 (2007) (citing Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 93-102 (1998)).  Before addressing IHC's Rule 12(b)(6) arguments, the undersigned considers whether it has subject matter jurisdiction over Ms. Van Ornum's state claims involving health care services provided by IHC and finds it does not.

I. **THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER STATE CLAIMS AGAINST IHC ALLEGING PERSONAL INJURY FROM PROVISION OF HEALTH CARE SERVICES**

IHC argues that the Court lacks subject matter jurisdiction over Ms. Van Ornum's claims relating to personal injury from health care services because Ms. Van Ornum did not comply with the prelitigation requirements of the Utah Health Care Malpractice Act. (Mot. 7, ECF No. 189.)  Specifically, IHC argues that Ms. Van Ornum failed to provide notice of her intent to litigate before filing the Complaint and furthermore that Ms. Van Ornum did not participate in a mandatory prelitigation review hearing.  (Id. at 7-8 (citing Utah Code Ann. §§ 78B-3-412, 78B-3-416, & 78B-3-418).)  The undersigned finds Ms. Van Ornum does not allege participation in a prelitigation review hearing and RECOMMENDS the District Court dismiss the state claims involving personal injuries from IHC's provision of health care services for lack of subject matter jurisdiction.

Utah's Health Care Malpractice Act (Malpractice Act) gives health care providers procedural protections not afforded to other alleged tortfeasors.  See Carter v. Milford Valley Mem'l Hosp., 2000 UT App 21, ¶ 13, 996 P.2d 1076, 1079 (discussing purpose of Malpractice Act).  To curb malpractice insurance costs, the Act requires claimants to participate in certain prelitigation procedural requirements designed "to expedite early evaluation and settlement of claims."  Labelle v. McKay Dee Hosp. Ctr., 2004 UT 15, ¶¶ 3-4, 89 P.3d 113, 114 (citation omitted).  "Two of the prelitigation procedures created by the Medical Malpractice Act stand out because they have been expressly designated as preconditions to invoking the jurisdiction of the district court:  the notice of intent to commence action, and the prelitigation hearing."  Id. at ¶ 4.

The Malpractice Act's notice requirement mandates that a claimant provide a

5

potential health care provider defendant notice ninety days in advance of her intent to commence a malpractice action. Utah Code Ann. § 78B-3-412(1). The Malpractice Act defines "health care provider" as "any person, partnership, association, corporation, or other facility or institution who causes to be rendered or who renders health care or professional services as a hospital, health care facility, physician, [etc.] ...." Utah Code Ann. § 78B-3-403(12). The Act further defines a malpractice action as "any action against a health care provider, whether in contract, tort, breach of warranty, wrongful death, or otherwise, based upon alleged personal injuries relating to or arising out of health care rendered or which should have been rendered by the health care provider." Id. at (17). The prelitigation notice provided must include: "(a) a general statement of the nature of the claim; (b) the persons involved; (c) the date, time, and place of the occurrence; (d) the circumstances surrounding the claim; (e) specific allegations of misconduct on the part of the prospective defendant; and (f) the nature of the alleged injuries and other damages sustained." Utah Code Ann. § 78B-3-412(2). The Malpractice Act also requires that, within sixty days of service of notice, the claimant request "prelitigation panel review." Utah Code Ann. § 78B-3-416(2)(a). The prelitigation panel conducts informal, nonbinding proceedings. Id. at (1)(c).

Ms. Van Ornum contends she faxed IHC notice of her intent to commence litigation on March 30, 2015. (See Resp. ¶ 22, ECF No. 192.) While Ms. Van Ornum filed her original Complaint on December 22, 2014, she filed her Amended Complaint (in which she named IHC for the first time) on May 4, 2016, more than ninety days after giving IHC notice. (See Compl., ECF No. 1; Am. Compl., ECF No. 98.) In its Reply, IHC admits receiving the notice but argues the notice failed to allege the details required

by the Malpractice Act.  (See Reply 3-4, ECF No. 195 (citing Utah Code Ann. § 78B-3-412).)  IHC further argues that Ms. Van Ornum failed to request prelitigation review, participate in a review proceeding, or receive a certificate of compliance from a prelitigation panel.  (Id. at 4.)

Ms. Van Ornum's faxed notice may not meet the requirements of section 78B-3-412(2).  However, the undersigned does not reach the question of whether Ms. Van Ornum's notice sufficed under the Malpractice Act because Ms. Van Ornum's Amended Complaint plainly fails to allege compliance with the prelitigation review requirement, and nothing in the briefing suggests she can fix this failing.

A review proceeding must precede Ms. Van Ornum's commencement of litigation for the Court to hold subject matter jurisdiction over Ms. Van Ornum's personal injury claims against IHC.  See McBride-Williams v. Huard, 2004 UT 21 ¶ 12, 94 P.3d 175 (acknowledging "that statutory language creating a 'condition precedent' to commencing an action creates a precondition to suit and that a party's failure to satisfy a precondition results in an adjudication for 'lack of jurisdiction' pursuant to rule 41(b) of the Utah Rules of Civil Procedure"); see also Carter, 2000 UT App at ¶ 13 ("If these requirements are not fully met, the action will be dismissed.").  IHC argues Ms. Van Ornum failed to comply with this requirement, and Ms. Van Ornum does not allege she did or offer argument or evidence (such as a certificate of compliance) to suggest she could amend her Amended Complaint to include allegations of compliance.

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  Hogan v. Winder, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).  Because

compliance with the Malpractice Act's procedures stands as a prerequisite to suit, Ms.

Van Ornum must allege compliance to state a plausible claim relating to personal

injuries stemming from IHC's provision of health care services.  Based on Ms. Van

Ornum's Response, she could perhaps amend her pleading to allege compliance with

the notice requirement but not compliance with the prelitigation proceeding.  The

undersigned concludes that the Court lacks subject matter jurisdiction over Ms. Van

Ornum's personal injury claims arising from IHC's provision of health services.

This conclusion covers all of Ms. Van Ornum's allegations against IHC that

implicate "any action against a health care provider, whether in contract, tort, breach of

warranty, wrongful death, or otherwise, based upon alleged personal injuries relating to

or arising out of health care rendered or which should have been rendered by the health

care provider."  See Utah Code Ann. § 78B-3-403(17) (defining "Malpractice action

against a health care provider").  The subject matter jurisdiction bar extends specifically

to Mrs. Van Ornum's allegations in paragraphs 118 and 119 concerning the medical

care of her grandfather, grandmother, and mother, her allegations in paragraph 147

concerning the medical care of her baby, and her allegations in paragraphs 150 and

162 concerning her own medical care.  (Am. Compl. ¶¶ 118-119, 147, 149-150, 162,

ECF No. 98.)

The Malpractice Act prevents the Court from hearing Ms. Van Ornum's state

claims relating to provision of health care services by a health care provider because

"state law governs the applicability of immunity to state law claims."  See Aspen

Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist., 353 F.3d 832, 837 (10th

Cir. 2003) (quoting Sheth v. Webster, 145 F.3d 1231, 1236 (11th Cir.1998) (regarding

immunity under Colorado Governmental Immunity Act)); <u>see also</u> <u>Erie R. Co. v.</u>
<u>Tompkins</u>, 304 U.S. 64, 78 (1938) (applying "the law of the state" in a diversity
jurisdiction case).

As a state law, the Malpractice Act holds no power over the Court's ability to hear
federal claims against IHC.   "Article III of the Constitution and the statutes enacted by
Congress pursuant thereto" authorize the jurisdiction of federal courts to hear federal
claims.  <u>Bender v. Williamsport Area Sch. Dist.</u>, 475 U.S. 534, 541 (1986).  Therefore, to
the extent Ms. Van Ornum alleges claims under federal statutes, such as the antitrust
provisions or RICO, or claims under the Constitution, such as Due Process or Equal
Protection Clause violations, no subject matter jurisdiction bar arising from the Utah
Malpractice Act operates.

Therefore the undersigned RECOMMENDS the Court dismiss Ms. Van Ornum's
state claims relating to personal injury from health care services provided by IHC for
lack of subject matter jurisdiction.

## II.  ALL REMAINING CLAIMS FAIL UNDER IHC's RULE 12(b)(6) CHALLENGE

### A. Ms. Van Ornum Fails to State a Cognizable Antitrust Claim Against IHC Upon Which the Court May Grant Relief

The closest the Amended Complaint comes to connecting IHC to the broader
antitrust conspiracy is to allege the "Utah defendants destroyed [her] medical and dental
records knowing, willful and purposefully (18 USC § 1592), to obstruct enforcement of
Sherman and Clayton Acts."  (Am. Compl. ¶ 79(4), ECF No. 98.)  This allegation does
not state an antitrust claim again IHC adequately.  Therefore, the undersigned
recommends dismissal of the antitrust claims against IHC under Rule 12(b)(6) for failure
to state a claim.

The Court construes pro se pleadings liberally and holds them to a "less stringent standard." Smith v. United States, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation omitted)).  A pro se plaintiff's claims should survive a Rule 12(b)(6) motion, "despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." Id. (quoting Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)). Regardless, even a pro se plaintiff must "'set forth plausible claims' animating the elements of her causes of action." See Burnett v. Mortg. Elec. Registration Sys., Inc., 706 F.3d 1231, 1236 (10th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Whether a plaintiff's claims rise to the threshold of plausible depends on the factual allegations presented within the complaint. Twombly, 550 U.S. at 570 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").  "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." Hall, 935 F.2d at 1110.  The Court will disregard legal allegations masquerading as factual assertions. Twombly, 550 U.S. at 554–56 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986).  If a pro se party has not alleged sufficient facts to support a legal theory, courts will not fill in the factual gaps. Smith, 561 F.3d at 1096 (citing Whitney v. New Mexico, 113 F.3d 1170, 1173–74 (10th Cir. 1997)).

Should a plaintiff's original complaint miss "important element[s] that may not have occurred to him," the Court will grant leave to amend. Hall, 935 F.2d at 1110.

After providing an opportunity to amend, a court may properly dismiss with prejudice only upon concluding that further opportunity to amend would prove "futile." Gee v. Pacheco, 627 F.3d 1178, 1195 (10th Cir. 2010).

Put in the best possible light, Ms. Van Ornum alleges IHC belongs to a class of Defendants, who conspire to withhold knowledge of the true nature of our bodies, provide harmful food, drink, pharmaceuticals, products, and medical and dental procedures, and lobby to pass laws with the intent of preventing Ms. Van Ornum and her parents from spreading their message of a much longer life possible through alternative means. (See Am. Compl. 8-10, ECF No. 98.) Through this conspiracy, the Defendants force the general public, including Ms. Van Ornum, to buy unhealthy food, submit to unhealthy medical procedures, take unhealthy medications, and drink unhealthy water, all practices leading to a reduced life expectancy for the public and financial benefits to the Defendants. (Id.) The Amended Complaint alleges the Defendants' class imposed a price ceiling for public produce, health insurance, wholesome herbs, fruits, and water, among other things. (Am. Compl. ¶ 44, ECF No. 98.) Further, the Defendants' class withheld water, herbs, fruits, supplements, medicines, treatments, and procedures from the market. (Id. at ¶ 41.)

Where a complaint makes allegations "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting Twombly 550 U.S. at 570). The Amended Complaint suffers from exactly this problem.

A private litigant making a civil antitrust claim does so through the Clayton Act,

15 U.S.C. § 15, allowing a private right of action for violation of the Sherman Act, 15 U.S.C. § 1-3.  Ms. Van Ornum fails to allege the facts necessary to support any antitrust claims.  The keystone of any 15 U.S.C. § 1 claim lies in the demonstration of "an agreement, tacit or express."  <u>Twombly</u>, 550 U.S. at 553–54 (2007) (quoting <u>Theatre Enter., Inc. v. Paramount Film Distrib. Corp.</u>, 346 U.S. 537, 542 (1954)).  Independent parallel business behavior may provide admissible circumstantial evidence but standing alone fails to establish an agreement.  <u>Id.</u>  The Amended Complaint lacks any factual allegations connecting IHC to such an agreement.

The Amended Complaint only mentions IHC directly three times and may obliquely refer to IHC several other times with references to "Utah defendants."  (Am. Compl. ¶¶ 70, 79, 118-119, 147, 149-150, ECF No. 98.)  No mention of IHC, either directly or indirectly, establishes the fundamental elements necessary to develop an antitrust claim.  The first mention of IHC alleges its principle place of business and headquarters in Salt Lake City, Utah.  (<u>Id.</u> at ¶ 70.)  The second mention, while unclear, references IHC's emergency services, professionals at BYU Student Health, the treatment of illness, and the provision of drugs and procedures to Ms. Van Ornum's baby.  (<u>Id.</u> at ¶ 147 ("[IHC and others] continued Defendants' class methodical and repeatable procedures and did accrue her baby's condition to the ear infection, to the condition of sudden infant death in 1989, did use of police to attempt to supersede Ms Van Ornum's withheld consent to anti-seizure drugs and because of such failure held in the condition recognize to accrue to seizures and increase risk of becoming a autistic victim[.]").)  The third allegation regarding IHC, alleges that "[IHC] and professionals use the law to obtain children for CLINICAL STUDIES instead of preventing or aid in prevent

the enforcement of 42 USC § 5106g(5)."  (Am. Compl. ¶ 149, ECF No. 98.)  Section

5106g defines terminology used in a subchapter of the United States Code which

covers federal funding to support state anti-child abuse programs.  See 42 U.S.C. §§

5101-5108 (Subchapter I – General Program).  Section 5106g(5) defines the term

"withholding of medically indicated treatment" from an infant for purposes of the

subchapter.

　　　　The Amended Complaint fails to allege the necessary elements of an antitrust

claim pursuant to 15 U.S.C. § 1.  To state an antitrust claim under 15 U.S.C. § 1, Ms.

Van Ornum must provide factual allegations suggesting agreement "in restraint of trade

or commerce."  Twombly, 550 U.S. at 548–49 (quoting 15 U.S.C. § 1).  To allege an

agreement, Ms. Van Ornum must allege facts suggesting "concerted action," not merely

allegations of "parallel conduct."  Id.; Native Am. Distrib. v. Seneca-Cayuga Tobacco

Co., 546 F.3d 1288, 1297–98 (10th Cir. 2008).  Ms. Van Ornum makes no plausible

factual allegations suggesting an agreement between IHC and anyone to restrain trade

unreasonably in her Amended Complaint.  At times, Ms. Van Ornum's antitrust

allegations couch themselves in the legal lexicon, but they never amount to "more than

labels and conclusions" and thereby fail under Rules 8 and 12(b) to state a 15 U.S.C.

§ 1 claim.  (See, for example, Am. Compl. ¶ 1, ECF No. 98 ("[A]t all times Defendants

class act in concert each having a part in their enterprise to commit serious injure and

damage to our body and its business, knowing, willful[,] maliciously and without

justification.")); see also Twombly, 550 U.S. at 555 (describing the requirements of a

well-pled complaint); Native Am. Distrib., 546 F.3d at 1297–98 (requiring "more than

conclusory allegations that a civil conspiracy exists").  Thus, while the Amended

Complaint alleges the Defendants' class acts in concert, it never alleges when they

agreed, where, how, or specifically what they agreed to do.

Moreover, even assuming agreement, the Amended Complaint never alleges an

injury for which the antitrust laws provide recourse.  "[A]n antitrust injury requires 'an

injury of the type the antitrust laws were intended to prevent and that flows from that

which makes defendants' acts unlawful.'"  Cohlmia v. St. John Med. Ctr., 693 F.3d 1269,

1280 (10th Cir. 2012) (quoting Tal v. Hogan, 453 F.3d 1244, 1253 (10th Cir. 2006)).  15

U.S.C. § 1 forbids contracts, trusts, or conspiracies "in restraint of trade or commerce."

Demonstration of injury requires allegation of "a business or property injury."  Cohlmia,

693 F.3d at 1280 (quoting Tal, 453 F.3d at 1257-58).  The Amended Complaint only

ever identifies the "business" of people's bodies and the harm caused to bodies.

Despite using the word "business," these harms only qualify as bodily injuries not

injuries to a business.  Physical injury and reduced life expectancy do not qualify as

injuries to a business or property.  For these reasons, the Amended Complaint's 15

U.S.C. § 1 claims fail.[3]

A 15 U.S.C. § 2 claim requires allegations concerning four elements:  (1) the

monopoly, (2) the relevant market, (3) the misconduct, and (4) a connection between

the misconduct and harm to competition in the relevant market.  Duty Free Americas,

Inc. v. Estee Lauder Co., Inc., 797 F.3d 1248, 1262–64 (11th Cir. 2015) (explaining in

detail the allegations necessary to state a claim for attempted monopolization under §

2).  Ms. Van Ornum's allegations regarding IHC do not, and cannot, map onto this basic

---

[3] 15 U.S.C. § 3 effectively applies 15 U.S.C. § 1 to the District of Columbia and the
United States territories.  Thus to the extent Ms. Van Ornum asserts claims under this
statute, they suffer from the same plausibility defects as the 15 U.S.C. § 1 antitrust
claims.

framework.  The Amended Complaint alleges a monopoly between anyone with a hand in modern medicine, agriculture, or health generally; the relevant market includes the whole world; and the harm results from the monopolists' setting a price ceiling and depriving all people of their natural life expectancy of 900 years.  (Am. Compl. ¶¶ 8, 12-13, 44, ECF No. 98.)  Neither the Amended Complaint nor the allegations included in Ms. Van Ornum's Response articulate the product market or explain how she and her parents compete with IHC.  The extreme implausibility of these claims – the notion of collusion on an impossibly large scale, the assertion that without modern antibiotics, surgery, and nutrition people would live centuries longer – does not allow for a 15 U.S.C. § 2 claim.  Furthermore, the same requirements for antitrust injury apply to § 2 claims, <u>Cohlmia</u>, 693 F.3d at 1280, and thus the claim fails for the same reasons the § 1 claim fails.

A <u>pro se</u> plaintiff must "'set forth plausible claims' animating the elements of her causes of action."  <u>See</u> <u>Burnett</u>, 706 F.3d at 1236 (quoting <u>Iqbal</u>, 556 U.S. at 678).  Ms. Van Ornum falls short of this burden and for the above reasons the undersigned RECOMMENDS the District Judge dismiss Ms. Van Ornum's antitrust claims pursuant to Rule 12(b)(6).

### B. Ms. Van Ornum Fails to State a Cognizable RICO Claim Against IHC Upon Which the Court May Grant Relief

Ms. Van Ornum also implicates IHC in a RICO conspiracy.  (Am. Compl. ¶ 79(4), ECF No. 98.)  The undersigned recommends dismissal of the RICO claims against IHC under Rule 12(b)(6) for failure to state a claim because Ms. Van Ornum fails to allege facts sufficient to create any plausible RICO claim.

The Amended Complaint asserts that IHC, acting in concert with the broad class

of Defendants, "commits continuous and systematic serious injuries and damages to our body and its business department in aid of racketeering activities." (Am. Compl. ¶ 8, ECF No. 98.) Defendants' class tricks the public into believing modern agriculture, modern medicine, and chlorination, among other ingenuities, aid health, when in reality these devices take centuries off people's natural life spans. (Id. at ¶¶ 9-12.) By purposefully withholding "knowledge of our Creator's laws of health," Defendants force humanity into "peonage." (Id. at ¶ 15.) The RICO enterprise stoops to the depths of "murder in aid of racketeering activities and use[s] interstate commerce facilities to commission murder-for-hire." (Id. at ¶ 7.)

The Amended Complaint relies on a broad and ill-defined "class" of Defendants. The group involved in the suspected enterprise includes "all pharmaceutical and chemical corporations, partnerships, associations, health care providers who are individuals, group of individuals, facilities, hospital and clinics." (Id. at ¶ 8.) This fact alone provides grounds to dismiss the RICO claims. Certainly, Ms. Van Ornum must allege the existence of an "enterprise" to state a civil RICO claim. See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 495–97 (1985) ("A violation of § 1962(c)… requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."); Boyle v. United States, 556 U.S. 938, 943–45 (2009) (defining "enterprise"). Nonetheless, Ms. Van Ornum sets an impossible task for herself. No imaginable set of facts exists that Ms. Van Ornum can allege (and Ms. Van Ornum alleges few facts) that would tie together every pharmaceutical company, chemical company, and health care provider into a single enterprise.

Even if Ms. Van Ornum successfully alleged such a massive enterprise, her

Amended Complaint fails to establish two other requisite elements:  racketeering activity and a pattern.  See Sedima, 473 U.S. at 495–97 (identifying "a pattern…of  racketeering activity" as a necessary civil RICO element); see also 18 U.S.C. § 1962(c).  No factual allegations in the Amended Complaint plausibly suggest IHC engaged in racketeering activity, much less a pattern of such actions.  18 U.S.C. § 1961(a)(1) (listing qualifying "racketeering activit[ies]").  Although, the Amended Complaint mentions racketeering activity, no allegations explicitly refer to IHC.  (See, for example, Am. Compl. ¶¶ 7, 36, 54, 97-98, 109, 119, 167, 179, ECF No. 98 (alleging murder and murder-for-hire).)  However, two allegations do indirectly refer to IHC, paragraphs 118 and 119 which allege "Utah defendants" engaged in "murder-for-hire crime" against members of Ms. Van Ornum's family.  (Id. at ¶¶ 118-119.)  These paragraphs merely recite a tangle of legal terms – e.g. "Mrs. Kurihara's mother is deprived of due process and so our serious injuries continue to accrue without the equal protection of the laws" – amounting to no "more than labels and [legal] conclusions."  Id. at ¶ 119; see Twombly, 550 U.S. at 555 (describing the requirements of a well-pled complaint).  Absent well-pled factual allegations establishing "racketeering activity", the Amended Complaint earns no presumption that such activity occurred.  Ms. Van Ornum's Response fails to allege any racketeering activity directly on the part of IHC; instead, it revisits IHC's provision of medical services.  (See Resp. ¶ 2 (1) & (6), ECF No. 192.)  Ms. Van Ornum further alleges that IHC, acting in conjunction with "Child Welfare and Protective Services" among others worked to "prohibit the free 'exercise of religion.'"  (Id. ¶¶ 16-17.)  Such allegations do not meet any definition of racketeering activity.

In conclusion, Ms. Van Ornum's allegations fail to establish that IHC participated

in any qualifying RICO activity.  Without plausible allegations animating the elements of a RICO cause of action, Ms. Van Ornum fails to state any RICO claim.  Therefore, the undersigned RECOMMENDS dismissing all RICO and racketeering claims against IHC for failure to state a claim.

### C. The Court Should Dismiss All Remaining Claims Against IHC Pursuant to Rule 12(b)(6)

The District Judge should dismiss the remaining claims Ms. Van Ornum attempts to assert against IHC for failure to state a claim upon which the Court may grant relief. When the Court dismissed Ms. Van Ornum's prior Complaint, it instructed her to comply with the Rule 8(a)'s instructions, which require:  (1) "a short and plain statement of the court's jurisdiction;" (2) "a short and plain statement of the claim showing that the pleader is entitled to relief;" and (3) "a demand for relief sought."  (Order, ECF No. 86.) Additionally, the Court noted, "where there are multiple claims and multiple defendants, Ms. Van Ornum must state her claims in a manner that provides individual defendants fair notice of the claims asserted against them and the grounds upon which these claims rest."  (Id.)

Ms. Van Ornum fails to comply with the pleading requirements of Rule 8, rendering her remaining claims insufficient.  With varying degrees of depth, Ms. Van Ornum mentions  "depriv[ations] … of our privileges and immunities," violation of "due process" and "equal protection," "peonage" and "slavery," First Amendment violations, and a litany of other statutes, constitutional provisions, and wrongful acts.  (See Am. Compl. ¶¶ 12, 16, 94, 97-98, 118-119, ECF No. 98.)  To assert a claim against IHC, Ms. Van Ornum must state her claims with specificity, alerting IHC to the particular claims against it and the basis for such assertions.

To take a specific example, the Amended Complaint references due process intermittently, typically as harm wrought by Defendants' class.  In paragraph 93 Ms. Van Ornum writes,

> Defendants class with aid of territorial-based defendants, under color of the law refuse to prevent or aid in preventing the commission of the same and in so doing did and do deprive us of our privileges or immunities as citizens of the United State[s], even our life, liberty or property then continue to cause risk of fatal financial harm to obtain, due process for the equal protection of the laws (42 USC §§1983, 1985, 1986).

(Am. Compl. ¶ 93, ECF No. 98.)

In paragraph 118, Ms. Van Ornum revisits due process:

> Mrs Kurihara's father joins the Church in 1982 and Defendants' class with the aid of Hawaii and Utah defendants in concert refuse to provide him of the knowledge of the science of our Creator's health plan, commits murder-for-hire crime (18 USC 1958) against him in 1985; Mrs Kurihara's father is deprived of due process, so our serious injuries continue to accrue without the equal protection of the laws[.]

(Id. at ¶ 118.)

These selections highlight examples of pleading deficiencies which run throughout the remaining claims.  These passages fail to make clear what interest of the Plaintiffs the due process violations take away, who committed the due process violations, and how the violations occurred.  To allege a due process violation, whether substantive or procedural, a plaintiff must go into some factual detail.  Specifically, for a substantive or procedural due process claim to survive the motion to dismiss stage, the plaintiff must provide allegations that a defendant's action took away a constitutionally protected property or liberty interest.  Teigen v. Renfrow, 511 F.3d 1072, 1078 (10th Cir. 2007).  Ms. Van Ornum omits such allegations from her Amended Complaint.  While a pro se plaintiff may confuse legal theories and still survive a 12(b)(6) motion, the plaintiff

must provide enough plausible factual allegations to animate each element of a claim. Smith, 561 F.3d at 1096 (quoting Hall, 935 F.2d at 1110); Burnett, 706 F.3d at 1236. However, Ms. Van Ornum cannot activate various legal theories by passing reference because these references, without underlying factual allegations, appear merely as legal conclusions.

Ms. Van Ornum cannot maintain generalized allegations of wrongdoing – claimed against a group of Defendants that may include the majority of the modern economy – in the face of a 12(b)(6) motion.  Fair notice requires specificity and details beyond what Ms. Van Ornum submits in her Amended Complaint.  The undersigned concludes that these barebones allegations do not deserve full scrutiny under the 12(b)(6) standard given they do not expressly apply to IHC.  The undersigned RECOMMENDS the Court dismiss all remaining claims against IHC pursuant to Rule 12(b)(6) for failure to state claim.

## RECOMMENDATION

For the reasons stated above, the undersigned RECOMMENDS the Court dismiss Ms. Van Ornum's state law personal injury claims against IHC relating to or arising out of health care services for lack of subject matter jurisdiction.  The undersigned further RECOMMENDS the Court dismiss all other claims against IHC for failure to state a claim, granting IHC's Motion to Dismiss.  (ECF No. 189.)

The Court will send copies of this Report and Recommendation to the parties who the  Court hereby notifies of their right to object to the same.  The Court further notifies the parties  that they must file any objection to this Report and Recommendation with the Clerk of the Court,  pursuant to 28 U.S.C. § 636(b) and Rule 72(b), within fourteen

(14) days of service  thereof.  Failure to file objections may constitute waiver of

objections upon subsequent review.

        DATED this 14th day of July 2017.

                BY THE COURT:

                Evelyn J. Furse
                United States Magistrate Judge